UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ENCOMPASS INSURANCE COMPANY OF MASSACHUSETTS,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH D. GIAMPA, FREDERICK T. GIAMPA, ADVANCED SPINE CENTERS, INC. D/B/A FIRST SPINE REHAB, FUTURE MANAGEMENT CORPORATION, EDWARD KENNEDY, BRIAN J. CULLINEY, D.C. AND JENNIFER McCONNELL, D.C.<br><br>Defendants. | CIVIL ACTION NO.:<br><br>05-11693-RCL |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EX PARTE MOTION FOR ATTACHMENT OF REAL PROPERTY AND EX PARTE MOTION FOR ATTACHMENT BY TRUSTEE PROCESS**

I.    **INTRODUCTION**

This case is brought pursuant to Title 18 U.S.C. §1962, Racketeer Influenced and Corrupt Organizations Act, Mass. Gen. Laws, ch. 93A, the Massachusetts Consumer Protection Act, and Massachusetts common law of fraud and civil conspiracy. The defendants acting in concert participated in a concealed, evolving and continuous scheme and conspiracy to defraud Encompass Insurance Company of Massachusetts (hereinafter "Encompass"). The geographic center of this conspiracy was First Spine Rehab owned and operated by the Giampa chiropractors and Kennedy Brothers. See Affidavit of Mike Bruno.

The objective of this secret, evolving, and continuous conspiracy was to illegally obtain money from the plaintiff through the submission of false medical records and bills (hereinafter "false medical documentation") in connection with alleged motor vehicle

1

accidents. The defendants collected substantial sums of money as payment in connection with such false medical documentation referencing alleged chiropractic treatment that was never rendered and/or was unnecessary, excessive and unrelated to covered claims. The defendants' successfully executed this scheme to defraud by creating such false medical documentation and forwarding same to Encompass and others by way of the United States Mail.

Encompass paid $625,386 in connection with and reliance upon the false medical documentation advanced by defendants. The detailed factual support for Encompass' claims is set forth in Encompass' Complaint, the Affidavit of Michael Bruno and the Affidavit of Michael Frustaci, D.C.

Encompass moves this Court, *ex parte*, to attach the identified real property of the defendants and to attach by Trustee Process the accounts of the defendants held by identified trustees, or those to be later identified, in an amount sufficient to satisfy judgment -- with the exception of those assets necessary to meet defendants' reasonable requirements of daily living and legitimate business expenses.

## II. APPLICABLE LAW

### (1) Standard of Review Regarding Attachment

To prevail on a motion seeking the attachment of real estate, or personal property, Encompass must demonstrate a reasonable likelihood of success on the merits. See Aetna Casualty & Surety Co. v. Rodco Autobody, 138 F.R.D. 328 (D. Mass. 1991) (citing S.P.R.L. v. Imex Co., 473 U.S. 479 (1985); Boston Trading Group, Inc. v. Carter, 561 F. Supp. 1175 (D. Mass 1983)). Pursuant to Mass. R. Civ. P. 4.1 and 4.2, governing real estate attachments and attachments by trustee process, *ex parte* relief is appropriate

2

when plaintiff demonstrates that "the defendant, if notified in advance of attachment of the property [or goods, effects and credits in the hands of a trustee] will convey it . . . or conceal it, or . . . there is immediate danger that the defendant will damage or destroy the property [and/or goods, credits and effects] to be attached," and where there is insufficient liability insurance or no liability insurance available to justify a potential judgment. Mass. R. Civ. P. 4.1(f); Mass. R. Civ. P. 4.2(g); see Digital Equipment Corp. v. Currie Enterprises, 142 F.R.D. 16, 25 (D. Mass. 1992) (finding Massachusetts attachment procedure constitutional in light of the fact that Rule 4.1 requires a finding of one of three exigent circumstances prior to the issuance of an ex-parte attachment); see also Connecticut v. Doehr, 501 U.S. 1(1991) (explaining that where exigent circumstances exist, notice and hearing may be postponed until after attachment).

### III. ARGUMENT

#### A. THE DEFENDANTS HAVE VIOLATED THE FEDERAL RICO STATUTE

In order to state a claim under RICO, plaintiff must allege (1) the existence of an enterprise engaged in interstate commerce, (2) a pattern of racketeering activity, (3) a nexus between the pattern of racketeering activity and the enterprise, and (4) a resulting injury to its business or property. Aetna Casualty & Surety Co. v. Rodco Autobody, 138 F.R.D. 228 (D. Mass. 1991) (citing S.P.R.L. v. Imex Co., 473 US 479 (1985)).

##### (1) Plaintiff Will Prove The Element of Enterprise

Advanced Spine Centers, Inc. d/b/a First Spine Rehab (hereinafter "First Spine"), and Future Management Corporation, are enterprises which affect interstate commerce for purposes of RICO. Moreover, the conspiracy as alleged in the Complaint between the individual RICO defendants constitutes an association-in-fact enterprise. 18 U.S.C.

3

§1961(4). Encompass is incorporated in and a citizen of the Commonwealth of Massachusetts with its principal place of business in Massachusetts. Accordingly, Encompass is an enterprise, the activities which affect interstate commerce.

**(2)    Plaintiff Will Prove A Pattern of Illegal Conduct**

The pattern of racketeering activity element requires two acts of racketeering activity within a ten-year period. 18 U.S.C. §1161(5). Plaintiff has established this element by illustrating the RICO defendants' continuous practice of presenting fraudulent insurance claims. H.J., Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989). This pattern is set out in plaintiff's Complaint and the Affidavits of Michael Bruno and Michael Frustaci filed together herewith, which details with particularity numerous insurance policies, checks, appraisals, reports, requests for information and/or other documents and representations caused to be transmitted by way of the United States Mail in violation of 18 U.S.C. §1341.

In considering whether a plaintiff has plead sufficiently the pattern requirement of a RICO charge, this Court must examine the predicate acts alleged to determine "(1) whether the acts are related; and (2) whether they can be found to amount to or pose a threat of continued criminal activity." National Credit Union Administration Board v. Regine, 749 F. Supp. 401, 406 (D.R.I. 1990). Predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or are otherwise inter-related by distinguishing characteristics and are not isolated events." Id. (quoting H.J., Inc., 492 U.S. at 241).

The continuity requirement under RICO may be demonstrated when the predicate acts form a "closed period of repeated conduct." Regine, 749 F. Supp. at 407. In short,

4

the Court must consider the predicate acts and answer the question whether the predicate acts "amounted to, or posed a threat of, continued criminal activity." Feinstein v. Resolution Trust Corp., 942 F.2d 34, 45 (1st Cir. 1991) (quoting Fleet Credit Corp. v. Sion, 893 F.2d 441, 444 (1st Cir. 1990)).

In the case sub judice, Encompass has amply met this burden. As set forth in its Complaint and supporting Affidavits, the defendants repeatedly engaged in the same or similar conduct: the submission of false and fraudulent insurance claims to obtain money from Encompass to which they were not entitled.

(3)   **Plaintiff Will Prove The Nexus Between The Predicate Acts**

The RICO defendants' pattern of falsifying insurance claims documents and transmitting the false documents, claims information and other misrepresentations by way of the U.S. Mail, was related to and in connection with the operation of Advanced Spine Centers, Inc. d/b/a First Spine Rehab, Future Management Corporation, and Encompass. Therefore, plaintiff has satisfied the "nexus" prong of the RICO test. See State Farm Mutual Automobile Ins. Co. v. Rosenfield, 683 F. Supp. 106 (E.D. Pa. 1988) (explaining that it is only when the predicate acts are not related to the enterprise that the nexus element is missing).

(4)   **Plaintiff Will Prove Its Damages**

As a result of this ongoing conspiracy, plaintiff in reliance upon defendants' false medical documentation was induced to pay $625,386.00 to the various participants in this conspiracy. In addition, plaintiff has incurred legal fees and costs in an effort to investigate and detect this fraudulent activity. Therefore, plaintiff has met the "resulting injury" prong of the RICO test. See Aetna Casualty & Surety Co. v. Rodco Autobody,

138 F.R.D. 328 (D. Mass. 1991). In addition, there is potentially greater liability on the part of the RICO defendants as they are jointly and severally liable in this action. Aetna Casualty & Surety Co. v. P & B Autobody, 43 F.3d 1546 (1st Cir. 1994).

For the foregoing reasons, Encompass has shown a reasonable likelihood of success on its claim that Joseph D. Giampa, Frederick T. Giampa, and Edward Kennedy have violated the Federal RICO Statute.

### B. DEFENDANTS HAVE ENGAGED IN COMMON-LAW FRAUD AND CIVIL CONSPIRACY

Success on a claim for common-law fraud requires a showing of material misrepresentations by defendants reasonably relied upon by the plaintiff to its detriment. The defendants may be held responsible not only for outright untrue statements, but also for giving misleading or partial information or half-truths. See Kannavos v. Annino, 356 Mass. 42 (1969). A civil conspiracy claim requires a showing of a combination of two or more persons to achieve unlawful ends or lawful ends by unlawful means. See generally, Jurgens v. Abraham, 616 F.Supp. 1381, 1386 (D. Mass. 1985); Payton v. Abbott Labs, 512 F.Supp. 1030 (D. Mass. 1981); Restatement (Second) of Torts §876(a)(b) (1977). Further, where two or more persons act in concert or combination, each will be jointly or severally liable for the tort. See New England Foundation Co. v. Reed, 209 Mass. 556 (1911).

The Complaint and supporting Affidavits of Michael Bruno and Michael Frustaci, D.C. establish that each of the elements of the tort of fraud and civil conspiracy are reasonably likely to be established by plaintiff at trial. With regard to the fraud counts, the defendants created false and fraudulent medical documentation for chiropractic treatment not rendered, not warranted and/or not necessary. Encompass paid hundreds of

thousands of dollars to First Spine in reasonable reliance upon the misrepresentations of the defendants contained in the fraudulent and deceptive First Spine treatment records and invoices. The Complaint and Affidavits also establish that plaintiff has a reasonable likelihood of success on the civil conspiracy claim. The defendants combined to achieve unlawful ends -- obtaining insurance proceeds from plaintiff, which the defendants had no right to receive.

### C.   DEFENDANTS HAVE VIOLATED MASS. GEN. LAWS CH. 93A

Pursuant to the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§2 and 11, liability attaches for "unfair and deceptive" acts or practices in the conduct of trade or commerce where such conduct would "raise an eyebrow" of one inured to the "rough and tumble" of the business world. Levings v. Forbes & Wallace, Inc., 8 Mass. App. Ct. 498 (1979).

By virtue of defendants' effort to defraud Encompass, they have violated Chapter 93A and are subject to multiple damages.

### D.   ENCOMPASS HAS DEMONSTRATED A REASONABLE LIKELIHOOD OF SUCCESS ON THE MERITS

Encompass has made a strong initial showing that the defendants engaged in a complex, evolving, continuous and successful scheme and conspiracy to defraud it of insurance proceeds by obtaining payment for fraudulent insurance claims. This suit is the result of a long and expensive investigation by the Special Investigations Unit of Encompass. This investigation unearthed numerous instances of fraudulent and deceptive conduct engaged in by the defendants in violation of both federal and state law, and concealed from plaintiff by the defendants. The defendants have obtained substantial sums of money for claims paid by plaintiff based on defendants' creation and submission

of false and fraudulent chiropractic invoices, documents and misrepresentations upon which plaintiff reasonably relied.

Plaintiff is aware of no policies of insurance which provide coverage for such willful and intentional acts. See Affidavit of Michael Bruno. In addition, both the Racketeer Influenced and Corrupt Organizations Act and Mass. Gen. Laws ch. 93A provide that plaintiff is entitled to multiple damages when defendants' fraudulent conduct is proven at trial. There exists a reasonable likelihood that plaintiff will recover Judgment in an amount equal to or greater than the assets belonging to the defendants.

**(1)** **Exigent Circumstances**

Encompass has made a sufficient showing of exigent circumstances as required by Rules 4.1 and 4.2 of the Massachusetts Rules of Civil Procedure to permit the granting of the requested relief ex parte. See Digital Equipment Corporation v. Currie Enterprises, 142 F.R.D. 16, 25 (D. Mass. 1992) (holding that Massachusetts procedure passes constitutional muster as enunciated in Connecticut v. Doehr, 501 U.S. 1, 111 S.Ct. 2105 (1991)).

Encompass has met its obligation to demonstrate exigency by the following evidence and/or circumstances:

- Encompass has learned that property in which defendant Edward Kennedy has a substantial interest and located at 13 Kidder Road, Chelmsford, Massachusetts is scheduled to be sold on August 18, 2005. Michael Bruno Affidavit, ¶65 and Tab 12;

- A receiver has been appointed and Ordered, by the Massachusetts Middlesex Superior Court in the case entitled Edward Kennedy v. James Kennedy, Docket

No. MICV2005-01458 to (1) oversee the sale of the 13 Kidder Road Realty Trust assets; (2) sell the 13 Kidder Road property; (3) sell the assets of Kennedy Professional Supply and Robert T. Kennedy, Inc.; (4) liquidate the accounts receivable of Kennedy Professional Supply and Robert T. Kennedy, Inc., entities in which Edward Kennedy owns a 50% beneficial interest.

- At least one (and possibly two) named defendants have recently relocated outside Massachusetts;

- An unnamed co-conspirator recently filed for bankruptcy protection;

- The history of fraudulent activity set forth with particularity in plaintiff's Complaint and supporting Affidavits demonstrate that the defendants have engaged in criminally sanctionable activity by stealing money under false pretenses from plaintiff and other insurers via the submission of false medical documentation;

- Encompass has certified its knowledge that no insurance exists to satisfy judgment;

- The defendants' fraudulent conduct suggests that if the equitable relief requested is not granted, defendants will do everything within their power to conceal, dissipate, convey, sell, destroy or secret their assets, including any goods, credits and/or effects in the possession and control of the Trustee; and/or transfer any in-state or out-of-state real property;

- Accordingly, there is an immediate danger that the defendants will further transfer, alienate, and/or secret any and all real and personal property if they are provided advance notice of plaintiff's instant requests for relief.

Encompass respectfully submits that it has made a sufficient showing that exigent circumstances exist to warrant the relief requested ex parte. See Aetna Cas. & Sur. Co. v. Rodco Autobody, 138 F.R.D. 328, 331-332 (D. Mass. 1991) (insurance fraud case); Shamrock, Inc. v. F.D.I.C., 629 N.E.2d 344 (Mass. App. Ct. 1994).

IV. **CONCLUSION**

For the reasons set forth above, Encompass' Motions for Ex Parte Attachment of Real Property and for Attachments by Trustee Process should be allowed.

Respectfully Submitted
*Encompass Insurance Company,*
By Its Attorneys,

Richard D. King, Jr., BBO No.: 638142
Nathan A. Tilden, BBO No.: 647076
David O. Brink, BBO No.: 547370
SMITH & BRINK, P.C.
122 Quincy Shore Drive
Quincy, MA 02171
Tel: (617) 770-2214

Dated: August 16, 2005