UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ENCOMPASS INSURANCE COMPANY OF
MASSACHUSETTS

    Plaintiff,

v.

JOSEPH D. GIAMPA, FREDERICK T.
GIAMPA, ADVANCED SPINE CENTERS
INC. d/b/a FIRST SPINE REHAB, FUTURE
MANAGEMENT CORPORATION, EDWARD
KENNEDY, BRIAN J. CULLINEY, D.C. and
JENNIFER McCONNELL, D.C.

    Defendants.

Civil Action No. 05-CV-11693-RCL

## AFFIDAVIT OF BRIAN J. CULLINEY

I, Brian J. Culliney, being duly sworn, do hereby depose and state:

1. I have personal knowledge of the facts stated herein.

2. I reside at 3 Kayla Drive, Westford, Massachusetts.

3. My wife, Nancy, and I own this property.

4. Earlier this year, we decided to sell this property and move to a different neighborhood in Westford.

5. On July 12, 2005, we executed a Purchase and Sale Agreement to sell our property at 3 Kayla Drive. (See Purchase and Sale Agreement dated July 12, 2005 attached hereto).

6. On July 19, 2005, we entered a Purchase and Sale Agreement to purchase property at 3 Gifford Drive, Westford, Massachusetts. (See Purchase and Sale Agreement dated July 19, 2005 attached hereto).

7. The closing on both properties is scheduled to occur on Monday, August 22, 2005.

663126_1

8. Yesterday, I was served with the above-captioned Complaint naming me as a Defendant.

9. I am an employee of First Spine Rehab, another defendant in this matter.

10. Yesterday, I also discovered that the Plaintiff moved for an Ex Parte Real Estate Attachment against my property, which was allowed by this Court, and that Attachment was recorded on August 17, 2005.

11. If this Real Estate Attachment is not dissolved, I understand that we will not be able to go forward with either closing on Monday, August 22, 2005.

12. As a result, I will be subject to the following consequences:

    a. The buyers of my property may sue me for specific performance;

    b. My wife and I may lose our $41,000 deposit because without the proceeds from the sale of 3 Kayla Drive, we cannot purchase the property at 3 Gifford Drive; and

    c. We may lose our rate lock for the mortgage at 3 Gifford Drive.

13. In 1998, Smith and Brink , P.C. representing another insurance company filed suit against me and other defendants in this Court.

14. As a result, I was forced into bankruptcy. However, that matter in which Smith and Brink was seeking approximately 2 million dollars was eventually settled for $4,000.

15. Nevertheless, the attorneys from Smith and Brink continued to harass me when they sought to ask me questions regarding that settled lawsuit during a deposition in another matter in which I was third-party fact witness.

16. My attorney suspended the deposition and moved for a protective order, which was allowed by the Massachusetts Superior Court.

Signed under the pains and penalties of perjury this 19th day of August 2005.


_____
Brian J. Culliney

663126_1

AUG-19-2005 09:54 PM   BRIAN CULLINEY                9785990004                    P.02
                                                  6174399556

8. Yesterday, I was served with the above-captioned Complaint naming me as a Defendant.

9. I am an employee of First Spine Rehab, another defendant in this matter.

10. Yesterday, I also discovered that the Plaintiff moved for an Ex Parte Real Estate Attachment against my property, which was allowed by this Court, and that Attachment was recorded on August 17, 2005.

11. If this Real Estate Attachment is not dissolved, I understand that we will not be able to go forward with either closing on Monday, August 22, 2005.

12. As a result, I will be subject to the following consequences:

    a. The buyers of my property may sue me for specific performance;

    b. My wife and I may lose our $41,000 deposit because without the proceeds from the sale of 3 Kayla Drive, we cannot purchase the property at 3 Gifford Drive; and

    c. We may lose our rate lock for the mortgage at 3 Gifford Drive.

13. In 1998, Smith and Brink, P.C. representing another insurance company filed suit against me and other defendants in this Court.

14. As a result, I was forced into bankruptcy. However, that matter in which Smith and Brink was seeking approximately 2 million dollars was eventually settled for $4,000.

15. Nevertheless, the attorneys from Smith and Brink continued to harass me when they sought to ask me questions regarding that settled lawsuit during a deposition in another matter in which I was third-party fact witness.

16. My attorney suspended the deposition and moved for a protective order, which was allowed by the Massachusetts Superior Court.

Signed under the pains and penalties of perjury this 19th day of August, 2005.

_____
Brian J. Culliney

JAN 21 1996 18:41                                                            PAGE.02

08/18/2005 15:46   9785899412         ERA WESTFORD              PAGE 02
JUL-08-2005 10:04   A. JUSTIN McCARTHY, P.C.   978 692 5476   P.02/09

## STANDARD FORM
## PURCHASE AND SALE AGREEMENT

From the Office of:
ERA Morrison
61 Central Square
Chelmsford, MA 01824

This ~~8th~~ 12TH day of July, 2005

**1. PARTIES AND MAILING ADDRESSES** *(fill in)*

Brian J. Culliney & Nancy A. Culliney
3   Kayla Drive                              Westford   MA   01886
hereinafter called the SELLER, agrees to SELL and

Anthony Neville Sequeira and Lynette Sequeira
6   Baron Park Lane Apartment 30             Burlington MA   01803
hereinafter called the BUYER or PURCHASER, agrees to BUY, upon the terms hereinafter set forth, the following described premises:

3   Kayla Drive                              Westford   MA   01886

**2. DESCRIPTION** *(fill in and include title reference)*

Land and buildings located at 3 Kayla Drive, Westford, MA., on 23,609 of of land (more or less). As further described at the Middlesex North Registry of Deeds Book 10637 Page 263.

**3. BUILDINGS, STRUCTURES, IMPROVEMENTS, FIXTURES** *(fill in or delete)*

Included in the sale as a part of said premises are the buildings, structures, and improvements now thereon, and the fixtures belonging to the SELLER and used in connection therewith including, if any, all wall-to-wall carpeting, drapery rods, automatic garage door openers, venetian blinds, window shades, screens, screen doors, storm windows and doors, awnings, shutters, furnaces, heaters, heating equipment, stoves, ranges, oil and gas burners and fixtures appurtenant thereto, hot water heaters, plumbing and bathroom fixtures, garbage disposers, electric and other lighting fixtures, mantels, outside television antennas, fences, gates, trees, shrubs, plants and, ONLY IF BUILT IN, refrigerators, air conditioning equipment, ventilators, dishwashers, washing machines and dryers; and ~~range, dishwasher~~ a microwave and window treatments
but excluding

**4. TITLE DEED** *(fill in)*
*Include here by specific reference any restrictions, easements, rights and obligations in party walls not included in (b), leases, municipal and other liens, other encumbrances, and make provision to protect SELLER against BUYER's breach of SELLER's covenants in leases, where necessary.*

Said premises are to be conveyed by a good and sufficient quitclaim deed running to the BUYER, or to the nominee designated by the BUYER by written notice to the SELLER at least seven days before the deed is to be delivered as herein provided, and said deed shall convey a good and clear record and marketable title thereto, free from encumbrances, except

(a) Provisions of existing building and zoning laws;
(b) ~~Existing rights and obligations in party walls which are not the subject of any agreement;~~
(c) Such taxes for the then current year as are not due and payable on the date of the delivery of such deed;
(d) Any liens for municipal betterments assessed after the date of this agreement;
(e) Easements, restrictions and reservations of record, if any, so long as the same do not prohibit or materially interfere with the current use of said premises: as a single family residence
*(f) None

**5. PLANS**

If said deed refers to a plan necessary to be recorded therewith the SELLER shall deliver such plan with the deed in form adequate for recording or registration.

**6. REGISTERED TITLE**

In addition to the foregoing, if the title to said premises is registered, said deed shall be in form sufficient to entitle the BUYER to a Certificate of Title of said premises, and the SELLER shall deliver with said deed all instruments, if any, necessary to enable the BUYER to obtain such Certificate of Title.

**7. PURCHASE PRICE** *(fill in); space is allowed to write out the amounts if desired*

The agreed purchase price for said premises is $560,000.00

Five Hundred and Sixty Thousand

dollars, of which

$    27,500.00  have been paid as a deposit this day and
$       500.00  received as binder with offer on 6/12/2005
$   532,000.00  are to be paid at the time of delivery of the deed in cash, or by certified, cashier's, treasurer's or bank check(s). *and recording
$_____
$   560,000.00  TOTAL

COPYRIGHT © 1979, 1984, 1986, 1987, 1988, 1991.
Rev. 1999
GREATER BOSTON REAL ESTATE BOARD
Form ID: BA181


EQUAL HOUSING OPPORTUNITY

All rights reserved. This form may not be copied or reproduced in whole or in part in any manner whatsoever without the prior express written consent of the Greater Boston Real Estate Board.

This form was created by Kyra Shattuck using e-FORMS. e-FORMS is copyright protected and may not be used by any other party.

AUG 18 2005 16:58                    9785899412           PAGE.02

|   |   |   |
|---|---|---|
| PERFORMANCE; DELIVERY OF DEED (fill in) | Such deed is to be delivered at 12 o'clock P. M. on the 22nd day of August 20 05, at the office of the closing attorney or Registry of Deeds, unless otherwise agreed upon in writing. It is agreed that time is of the essence of this agreement. | |
| 9. POSSESSION and CONDITION of PREMISE (attach a list of exceptions, if any) | Full possession of said premises free of all tenants and occupants, ~~except as herein provided~~ is to be delivered at the time of the delivery of the deed, said premises to be then (a) in the same condition as they now are, reasonable use and wear thereof excepted, and (b) not in violation of said building and zoning laws, and (c) in compliance with the provisions of any instrument referred to in clause 4 hereof. The BUYER shall be entitled personally to enter said premises prior to the delivery of the deed in order to determine whether the condition thereof complies with the terms of this clause. | |
| 10. EXTENSION TO PERFECT TITLE OR MAKE PREMISES CONFORM (Change period of time if desired) | If the SELLER shall be unable to give title or to make conveyance, or to deliver possession of the premises, all as herein stipulated, or if at the time of the delivery of the deed the premises do not conform with the provisions hereof, then ~~any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto, unless~~ the SELLER shall use reasonable efforts to remove any defects in title, or to deliver possession as provided herein, or to make the said premises conform to the provisions hereof, as the case may be, in which event the SELLER shall give written notice thereof to the BUYER at or before the time for performance hereunder, and thereupon the time for performance hereof shall be extended for a period of thirty calendar days. | |
| 11. FAILURE TO PERFECT TITLE OR MAKE PREMISES CONFORM, etc. | If at the expiration of the extended time the SELLER shall have failed so to remove any defects in title, deliver possession, or make the premises conform, as the case may be, all as herein agreed, or if at any time during the period of this agreement or any extension thereof, the holder of a mortgage on said premises shall refuse to permit the insurance proceeds, if any, to be used for such purposes, then any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto. | |
| 12. BUYER's ELECTION TO ACCEPT TITLE | The BUYER shall have the election, at either the original or any extended time for performance, to accept such title as the SELLER can deliver to the said premises in their then condition and to pay therefore the purchase price without deduction, in which case the SELLER shall convey such title, except that in the event of such conveyance in accord with the provisions of this clause, if the said premises shall have been damaged by fire or casualty insured against, then the SELLER shall, unless the SELLER has previously restored the premises to their former condition, either | |
|   | (a) pay over or assign to the BUYER, on delivery of the deed, all amounts recovered or recoverable on account of such insurance, less any amounts reasonably expended by the SELLER for any partial restoration, or | |
|   | (b) if a holder of a mortgage on said premises shall not permit the insurance proceeds or a part thereof to be used to restore the said premises to their former condition or to be so paid over or assigned, give to the BUYER a credit against the purchase price, on delivery of the deed, equal to said amounts so recovered or recoverable and retained by the holder of the said mortgage less any amounts reasonably expended by the SELLER for any partial restoration. | |
| 13. ACCEPTANCE OF DEED | The acceptance of a deed by the BUYER or his nominee as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed. | |
| 14. USE OF MONEY TO CLEAR TITLE | To enable the SELLER to make conveyance as herein provided, the SELLER may, at the time of delivery of the deed, use the purchase money or any portion thereof to clear the title of any or all encumbrances or interests, provided that all instruments so procured are recorded ~~simultaneously with the delivery of said deed~~ in accordance with standard conveyancing practices | |
| 15. INSURANCE *Insert amount (list additional types of insurance and amounts as agreed) | Until the delivery of the deed, the SELLER shall maintain insurance on said premises as follows: | |
|   | Type of Insurance | Amount of Coverage |
|   | (a) Fire and Extended Coverage | $ — |
|   | (b) All risk of loss remains with seller until conveyance | same as presently insured |

This form was created by KYMN SHATTUCK using e-FORMS. e-FORMS is copyright protected and may not be used by any other party.    e-FORMS
COPYRIGHT © 1979, 1984, 1986, 1987, 1988, 1991 GREATER BOSTON REAL ESTATE BOARD. All rights reserved.

**16. ADJUSTMENTS**
(list operating expenses, if any, or attach schedule)

~~Collected rents, mortgage interest, water and sewer use charges,~~ operating expenses (if any) according to the schedule attached hereto or set forth below, and taxes for the then current fiscal year, shall be apportioned and fuel value shall be adjusted, as of the day of performance of this agreement and the net amount thereof shall be added to or deducted from, as the case may be, the purchase price payable by the BUYER at the time of delivery of the deed. ~~Uncollected rents for the current rental period shall be apportioned if and when collected by either party.~~                                                   AW
                                                                                                         B

**17. ADJUSTMENT OF UNASSESSED AND ABATED TAXES**

If the amount of said taxes is not known at the time of the delivery of the deed, they shall be apportioned on the basis of the taxes assessed for the preceding fiscal year, with a reapportionment as soon as the new tax rate and valuation can be ascertained; and, if the taxes which are to be apportioned shall thereafter be reduced by abatement, the amount of such abatement, less the reasonable cost of obtaining the same, shall be apportioned between the parties, provided that neither party shall be obligated to institute or prosecute proceedings for an abatement unless herein otherwise agreed.

**18. BROKER'S FEE**
(fill in fee with dollar amount or percentage; also name of Brokerage firm(s))

A Broker's fee for professional services of
is due from the SELLER to ERA Morrison Real Estate      as per listing agreement
but not otherwise                                       at consummation of sale,

the Broker(s) herein, ~~but if the SELLER pursuant to the terms of clause 21 hereof retains the deposits made hereunder by the BUYER, said Broker(s) shall be entitled to receive from the SELLER an amount equal to one-half the amount so retained or an amount equal to the Broker's fee for professional services according to this contract, whichever is the lesser.~~

**19. BROKER(S) WARRANTY**
(fill in name)

The Broker(s) named herein ERA Morrison RE/Zip Realty
warrant(s) that the Broker(s) is (are) duly licensed as such by the Commonwealth of Massachusetts.

**20. DEPOSIT**
(fill in name)

All deposits made hereunder shall be held in escrow by       ERA Morrison Real Estate
as escrow agent subject to the terms of this agreement and shall be duly accounted for at the time for performance of this agreement. In the event of any disagreement between the parties, the escrow agent shall retain all deposits made under this agreement pending instructions mutually given in writing by the SELLER and the BUYER.
Unless otherwise agreed upon all interest on monies held in escrow will be donated to charity

**21. BUYER's DEFAULT; DAMAGES**

If the BUYER shall fail to fulfill the BUYER's agreements herein, all deposits made hereunder by the BUYER shall be retained by the SELLER as liquidated damages ~~unless within thirty days after the time for performance of this agreement or any extension hereof, the SELLER otherwise notifies the BUYER in writing,~~ and this shall be Seller's sole remedy at law and in equity.

**22. RELEASE BY HUSBAND OR WIFE**

The SELLER's spouse hereby agrees to join in said deed and to release and convey all statutory and other rights and interests in said premises.

**23. BROKER AS PARTY**

The Broker(s) named herein join(s), in this agreement and become(s) a party hereto, insofar as any provisions of this agreement expressly apply to the Broker(s), and to any amendments or modifications of such provisions to which the Broker(s) agree(s) in writing.

**24. LIABILITY OF TRUSTEE, SHAREHOLDER, BENEFICIARY, etc.**

If the SELLER or BUYER executes this agreement in a representative or fiduciary capacity, only the principal or the estate represented shall be bound, and neither the SELLER or BUYER so executing, nor any shareholder or beneficiary of any trust, shall be personally liable for any obligation, express or implied hereunder.

**25. WARRANTIES AND REPRESENTATIONS**
(fill in); if none, state "none"; if any listed, indicate by whom each warranty or representation was made

The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this agreement or previously made in writing, except for the following additional warranties and representations, if any, made by either the SELLER or the Broker(s):

NONE

This form was created by LYNN BEATTUCK using e-FORMS. e-FORMS is copyright protected and may not be used by any other party.    FORMS
COPYRIGHT © 1979, 1984, 1986, 1987, 1988, 1991 GREATER BOSTON REAL ESTATE BOARD  All rights reserved

| | |
|---|---|
| CONTINGENCY CLAUSE (omit if not provided for in Offer to Purchase) | ...to help finance the acquisition of said premises, the BUYER shall apply for a conventional bank or other institutional mortgage loan of $ 416,000 at prevailing rates, terms and conditions. If despite the BUYER's diligent efforts a commitment for such loan cannot be obtained on or before August 5, 20 05 notice to the SELLER and/or the Broker(s), as agent(s) for the SELLER, prior to the expiration of such time, whereupon any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto. In no event will the BUYER be deemed to have used diligent efforts to obtain such commitment unless the BUYER submits a complete mortgage loan application conforming to the foregoing provisions on or before preapproved , 20 . |
| 27. CONSTRUCTION OF AGREEMENT | This instrument, executed in multiple counterparts, is to be construed as a Massachusetts contract, is to take effect as a sealed instrument, sets forth the entire contract between the parties, is binding upon and enures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be cancelled, modified or amended only by a written instrument executed by both the SELLER and the BUYER. If two or more persons are named herein as BUYER their obligations hereunder shall be joint and several. The captions and marginal notes are used only as a matter of convenience and are not to be considered a part of this agreement or to be used in determining the intent of the parties to it. |
| 28. LEAD PAINT LAW | The parties acknowledge that, under Massachusetts law, whenever a child or children under six years of age resides in any residential premises in which any paint, plaster or other accessible material contains dangerous levels of lead, the owner of said premises must remove or cover said paint, plaster or other material so as to make it inaccessible to children under six years of age. |
| 29. SMOKE DETECTORS | The SELLER shall, at the time of the delivery of the deed, deliver a certificate from the fire department of the city or town in which said premises are located stating that said premises have been equipped with approved smoke detectors in conformity with applicable law. |
| 30. ADDITIONAL PROVISIONS | The initialed riders, if any, attached hereto, are incorporated herein by reference. See Addendum A attached hereto and incorporated herein by reference. |

FOR RESIDENTIAL PROPERTY CONSTRUCTED PRIOR TO 1978, BUYER MUST ALSO HAVE SIGNED
LEAD PAINT "PROPERTY TRANSFER NOTIFICATION CERTIFICATION"

NOTICE: This is a legal document that creates binding obligations. If not understood, consult an attorney.

SELLER Brian V. Culliney    BUYER Anthony Neville Sequeira
Taxpayer ID/Social Security No. _____    Taxpayer ID/Social Security No. _____

SELLER (or Spouse) Nancy A. Culliney    BUYER Lynette Sequeira
Taxpayer ID/Social Security No. _____    Taxpayer ID/Social Security No. _____

BROKER(S)

This form was created by LNM MATRIX using e-FORMS. e-FORMS is copyright protected and may not be used by any other party.
COPYRIGHT © 1979, 1984, 1986, 1987, 1988, 1991 GREATER BOSTON REAL ESTATE BOARD All rights reserved.

08/18/2005  15:48   9785899412                ERA WESTFORD              978 692 5476    PAGE  06
                                                                                        P.06/09

Addendum A
to Purchase and Sale Agreement
by and between

Brian J. Cullinay and Nancy A. Cullney, as Sellers
and
Anthony Neville Sequeira and Lynette Sequeira, as Buyers

Dated: July __12__, 2005

Property Address: 3 Kayla Drive, Westford, MA

Regardless of any language to the contrary, the aforesaid Purchase and Sale Agreement and riders or amendments thereto are hereby amended by incorporating therein the following terms and conditions, and in the event of any inconsistent terms or conditions, the following provisions shall apply:

1. FINANCING. As used in Paragraph 26 of the Purchase and Sale Agreement, the term "Commitment" shall mean a commitment subject to no conditions or contingencies other than the completion of the usual closing formalities, satisfactory title, and responding to Lender's requests for documentation. As used therein the term "diligent efforts" shall mean the Buyers are obligated to apply to no more than one institutional lender.

2. TITLE. It is understood and agreed by the parties that the premises shall not be in conformity with the Title provisions of this Agreement unless:

    a. all building, structures and improvements, including but not limited to, any driveways, garages, septic systems, leaching fields and cesspools, swimming pools, tennis courts, fences, and all means of access to the premises, shall be located completely within the boundary lines of said premises and shall not encroach upon or under the property of any other person or entities;

    b. no building, structure or improvement of any kind belonging to any other person or entity shall encroach upon or under said premises;

    c. the premises shall abut a public way or private way to which Buyers shall have both pedestrian and vehicular access, and if a private way, that such private way in turn has satisfactory access to a public way; which public way is duly laid out or accepted as such by the city or town in which said premises are located;

    d. the premises are equipped with all necessary utilities, including without implied limitation, electricity, private or municipal water, public sewer or septic tank, and oil storage tank, if necessary;

    e. all improvements located on the premises have been constructed in accordance with any recorded covenants governing the same, and, if required by said covenants, a recordable certificate of compliance is delivered at closing or has been previously recorded in the Registry of Deeds;

    f. buyers' survey or mortgage plot plan indicates that no structure or improvement situated upon the premises violates the zoning ordinances or by-laws of the municipality in which the premises are located or the provisions of M.G.L. Ch. 40A, unless such structures or improvements are validly nonconforming in accordance with said ordinances, by-laws and general laws;

AUG 18 2005 17:00                                       9785899412        PAGE.06

g. any and all Wetlands Orders of Condition of record for said Lot to be released by the recording of Certificate(s) of Compliance; and

h. the premises are not located within a HUD Flood Hazard Zone requiring the Buyers' purchase of Flood Insurance, or within any locally designated wetlands area.

3. TITLE INSURANCE DOCUMENTS. At the closing the Sellers shall execute and deliver to any title insurance company insuring the premises to any Buyers and/or any lender granting mortgage financing to the Buyers with respect to the premises an affidavit with respect to: (a) mechanics' or materialmen's liens with regard to the premises sufficient in form and substance to enable the title insurance company to delete its standard ALTA exception for such liens; (b) bills which could become liens pursuant to Chapter 551 of the Acts of 1980 (Municipal Lighting Plants Real Estate Tax Liens) have been paid; and (c) there being no parties in possession of or entitled to possession of the premises. In addition, the Sellers hereby agree to sign and deliver, at the time of performance, such affidavits, documents and certificates as may be reasonably required by the lending institution which is providing the purchase money mortgage funds to the Buyers for this transaction.

4. PAYOFF OF SELLERS MORTGAGE(S). If requested by the closing attorney, the Sellers agree to provide the closing attorney with the account numbers of all mortgages on the premises and with the Sellers' written consent directed to such mortgage lenders authorizing the release of pay-off balances to such attorney.

5. INSURABILITY OF TITLE. The Buyers' performance hereunder is conditioned upon title to the premises being insurable for the benefit of the Buyers on a standard American Land Title Association form insurance policy currently in use by a title insurance company licensed to do business in the Commonwealth of Massachusetts, at normal premium rates, subject only to those printed exceptions to title normally included in the "jacket" to such form and to the exceptions set forth in Paragraph 4 of this Agreement.

6. UREA FORMALDEHYDE FOAM. The Sellers represent and warrant that they have taken reasonable steps to determine whether Urea Formaldehyde Foam Insulation (UFFI) is present in any dwelling on the premises, and there is no such insulation in any such dwelling. At or before the closing, the Sellers will execute a statement to the foregoing effect in accordance with the provisions of M.G.L. ch. 167 sec. 47 if the same is requested by any lending institution providing mortgage funds for the purchase of the premises.

7. EXTENSION TO PERFECT TITLE: Notwithstanding the provisions of Paragraph 10 of the Purchase and Sale Agreement, if the Sellers are unable to perform at the time for delivery of the Deed, or if at such time the premises do not conform with the provisions of this Agreement, the time for performance shall be extended pursuant to the provisions of said Paragraph 10, but not past the date on which the Buyers' financing commitment would expire, unless such commitment is renewed by the Buyers on rates and terms no less favorable to the Buyers than the prior rates and terms and at no cost to Buyers for such renewal. Buyers agree to use best efforts to so extend.

8. INTENTIONALLY DELETED

9. INTEGRATION. Any and all prior memoranda or agreements among the parties, including any Offers to Purchase, are hereby superseded and shall have no further force or effect.

10. MAINTENANCE OF GROUNDS. The Sellers agree to maintain the lawn, shrubbery and exterior grounds of the premises during the term of this agreement in a manner consistent with that which they have been kept to date.

11. ACCESS. The Buyers, shall upon reasonable advance notice and at reasonable times, have the right of access to the premises for arranging financing and other reasonable purposes. Any such access shall be in the presence of the Sellers' agent. Said access shall not exceed four (4) times.

12. WARRANTIES AND REPRESENTATIONS. The Sellers warrant and represent to the Buyers:

    a. The Sellers have not received notice that the premises is in violation of any federal, state or local environmental, sanitary, health or safety statute, ordinance, code, by-law, rule or regulation;

    b. The Sellers have no knowledge of any underground fuel storage tank located on the premises.

The provisions of this paragraph shall survive the delivery of the deed hereunder.

13. CONDITION OF THE PREMISES. Sellers agree that at the date of delivery of the deed, the premises shall be delivered to Buyers in "broom clean" condition and free of all personal property, personal effects and debris and free of all tenants and occupants. All appliances and systems shall be in operating condition at the time of closing. All warranties from the manufacturers for appliances and other systems to be transferred to Buyers at closing. Sellers shall deliver to the Buyers at closing all manuals and instructions for the appliances included in the sale, including, but not limited to, all manuals and instructions for the security system.

14. HAZARDOUS SUBSTANCES. To the best of the Sellers' knowledge, there are no articles or substances on or near the premises which are toxic or hazardous. Sellers warrant that Sellers have complete and unencumbered ownership of all fixtures, fittings and equipment in the premises. Sellers warrant to the best of their knowledge that there are no underground storage tanks located on the premises.

15. FIRE DAMAGE. Notwithstanding anything herein to the contrary, in the event of the damage or destruction of or to the premises by fire, vandalism or other casualty, or in the event of a taking of all or a part of the premises by eminent domain, then at Buyers' option, this agreement may be terminated and all funds paid hereunder by Buyers shall be immediately refunded to Buyers.

16. NON-FOREIGN CERTIFICATION. Sellers shall execute and deliver at or prior to closing a written certification of non-foreign status under the Foreign Investment in Real Property Act (Section 1445 of the Internal Revenue Code). The Sellers warrant that Sellers are not a non-resident alien for the purpose of this Act and that no withholding of any tax is required as part of this sale, or if required that such tax has been or shall be paid at the time of closing.

17. BROKERS. The Buyers and Sellers represent and warrant to one another that neither has contacted any real estate broker in connection with the transaction other than ERA Morrison Real Estate and ZIP Realty, that neither was directed to the other as a result of any services or facilities of any other real estate broker. Each agrees to indemnify and hold harmless the other from and against all claims for any brokerage commission on account of this transaction by any person who established by court action a right to such commission arising out of his dealings with the other. This paragraph shall survive delivery of the deed hereunder.

18. TITLE V:  The Sellers shall comply with the Title V requirements and provide the inspection report or Board of Health Certificate of Compliance where required by Title V. Any areas of landscaping disturbed as a result of Title V inspection and/or repairs shall be restored to original grading and landscaped condition existing prior to said inspection and/or repair work.

19. HOME INSURANCE POLICY. This agreement is contingent upon the Buyers being able to purchase a homeowners insurance policy containing fire, casualty and liability coverage, together with other standard provisions and coverage acceptable to the Buyers' mortgage lender from a nationally recognized insurance company with an "A" or better rating at the normal premium charged by like companies for the requested amount and type of coverage.

20.   The Sellers shall give to the Buyers at closing a $500.00 closing cost credit.

21.   This Agreement is not contingent upon the Seller's finding suitable housing.

22.   REPAIRS. Prior to closing the Seller shall cause the following repairs to be made at the Seller's expense. All repairs shall be made in a professional workmanlike manner and by licensed professionals (where so required). The Seller shall provide to Buyer the paid invoices for the repairs and Buyer shall have the right to re-inspect these items to insure that the repairs have been completed to the Buyer's satisfaction. The repairs are as follows:
   a   missing covers for electric power sockets on the outside of the house shall be installed;
   b   broken window glass in attic shall be replaced;
   c   torn carpet on the staircase shall be fixed;

23.   Buyer acknowledges that the financing contingency and the purchase of said property is not contingent upon the sale of any real estate presently owned by the Buyer.

BUYERS:

_____
Anthony Neville Sequeira

_____
Lynette Sequeira

SELLERS:

_____
Brian J. Culliney

_____
Nancy A. Culliney

**STANDARD FORM**
**PURCHASE AND SALE AGREEMENT**

From the Office of:
Bula, Alphen & Santos, PC
200 Littleton Road
Westford, MA 01886
(978) 692-3107
(978) 692-5454

This ___19th___ day of ___July___, 20_05_

1. **PARTIES AND MAILING ADDRESSES**
   *(fill in)*

   Raymond A. Shulstad and Victoria A. Shulstad of 3 Clifford Drive, Westford, MA 01886

   hereinafter called the SELLER, agrees to SELL and

   Brian J. Culliney and Nancy A. Culliney of 3 Kayla Drive, Westford, MA 01886

   hereinafter called the BUYER or PURCHASER, agrees to BUY, upon the terms hereinafter set forth, the following described premises:

   3 Clifford Drive, Westford, MA 01886

2. **DESCRIPTION**
   *(fill in and include title reference)*

   For property description, please see deed recorded with Middlesex North District Registry of Deeds at Book 11832, Page 134.

3. **BUILDINGS, STRUCTURES, IMPROVEMENTS, FIXTURES**
   *(fill in or delete)*

   Included in the sale as a part of said premises are the buildings, structures, and improvements now thereon, and the fixtures belonging to the SELLER and used in connection therewith including, if any, all wall-to-wall carpeting, drapery rods, automatic garage door openers, venetian blinds, window shades, screens, screen doors, storm windows and doors, awnings, shutters, furnaces, heaters, heating equipment, stoves, ranges, oil and gas burners and fixtures appurtenant thereto, hot water heaters, plumbing and bathroom fixtures, garbage disposers, electric and other lighting fixtures, mantels, outside television antennas, fences, gates, trees, shrubs, plants and, ONLY IF BUILT IN, refrigerators, air conditioning equipment, ventilators, dishwashers, washing machines and dryers; and  window treatments

   but excluding  refrigerator in garage and washer and dryer

4. **TITLE DEED**
   *(fill in)*
   *Include here by specific reference any restrictions, easements, rights and obligations in party walls not included in (b), leases, municipal and other liens, other encumbrances, and make provision to protect SELLER against BUYER's breach of SELLER's covenants in leases, where necessary.*

   Said premises are to be conveyed by a good and sufficient quitclaim deed running to the BUYER, or to the nominee designated by the BUYER by written notice to the SELLER at least seven ____calendar____ days before the deed is to be delivered as herein provided, and said deed shall convey a good and clear record and marketable title thereto, free from encumbrances, except
   (a) Provisions of existing building and zoning laws;
   (b) Existing rights and obligations in party walls which are not the subject of written agreement;
   (c) Such taxes for the then current year as are not due and payable on the date of the delivery of such deed;
   (d) Any liens for municipal betterments assessed after the date of this agreement;
   (e) Easements, restrictions and reservations of record, if any, so long as the same do not prohibit or materially interfere with the current use of said premises;
   (f)

5. **PLANS**

   If said deed refers to a plan necessary to be recorded therewith the SELLER shall deliver such plan with the deed in form adequate for recording or registration.

6. **REGISTERED TITLE**

   In addition to the foregoing, if the title to said premises is registered, said deed shall be in form sufficient to entitle the BUYER to a Certificate of Title of said premises, and the SELLER shall deliver with said deed all instruments, if any, necessary to enable the BUYER to obtain such Certificate of Title.

7. **PURCHASE PRICE**
   *(fill in); space is allowed to write out the amounts if desired*

   The agreed purchase price for said premises is

   Eight hundred twenty thousand and 00/100

   dollars, of which
   $        60,000.00  have been paid as a deposit this day and
   $         1,000.00  have been paid with the Offer
   $       779,000.00  are to be paid at the time of delivery of the deed in cash, or by certified, cashier's, treasurer's or bank check(s)  or attorney's IOLTA account check
   $
   $       820,000.00  TOTAL

08/18/2005 16:01  9785899412                ERA WESTFORD                       PAGE 05
JUL-18-2005 17:27    A. JUSTIN McCARTHY, P.C.          978 692 5476    P.03/10

| | | |
|---|---|---|
| 8. TIME FOR PERFORMANCE; DELIVERY OF DEED (fill in) | Such deed is to be delivered at 3:00 o'clock P. M. on the 22nd day of August 2005, at the Middlesex North Registry of Deeds, unless otherwise agreed upon in writing. It is agreed that time is of the essence of this agreement. | |
| 9. POSSESSION and CONDITION of PREMISE (attach a list of exceptions, if any) | Full possession of said premises free of all tenants and occupants, except as herein provided, is to be delivered at the time of the delivery of the deed, said premises to be then (a) in the same condition as they now are, reasonable use and wear thereof excepted, and (b) not in violation of said building and zoning laws, and (c) in compliance with the provisions of any instrument referred to in clause 4 hereof. The BUYER shall be entitled personally to enter said premises prior to the delivery of the deed in order to determine whether the condition thereof complies with the terms of this clause. | |
| 10. EXTENSION TO PERFECT TITLE OR MAKE PREMISES CONFORM (Change period of time if desired). | If the SELLER shall be unable to give title or to make conveyance, or to deliver possession of the premises, all as herein stipulated, or if at the time of the delivery of the deed the premises do not conform with the provisions hereof, ~~then any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto, unless~~ the SELLER shall use reasonable efforts to remove any defects in title, or to deliver possession as provided herein, or to make the said premises conform to the provisions hereof, as the case may be, in which event the SELLER shall give written notice thereof to the BUYER at or before the time for performance hereunder, and thereupon the time for performance hereof shall be extended for a period of thirty calendar days. | |
| 11. FAILURE TO PERFECT TITLE OR MAKE PREMISES CONFORM, etc. | If at the expiration of the extended time the SELLER shall have failed so to remove any defects in title, deliver possession, or make the premises conform, as the case may be, all as herein agreed, or if at any time during the period of this agreement or any extension thereof, the holder of a mortgage on said premises shall refuse to permit the insurance proceeds, if any, to be used for such purposes, then any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto. | |
| 12. BUYER's ELECTION TO ACCEPT TITLE | The BUYER shall have the election, at either the original or any extended time for performance, to accept such title as the SELLER can deliver to the said premises in their then condition and to pay therefore the purchase price without deduction, in which case the SELLER shall convey such title, except that in the event of such conveyance in accord with the provisions of this clause, if the said premises shall have been damaged by fire or casualty insured against, then the SELLER shall, unless the SELLER has previously restored the premises to their former condition, either | |
| | (a) pay over or assign to the BUYER, on delivery of the deed, all amounts recovered or recoverable on account of such insurance, less any amounts reasonably expended by the SELLER for any partial restoration, or | |
| | (b) if a holder of a mortgage on said premises shall not permit the insurance proceeds or a part thereof to be used to restore the said premises to their former condition or to be so paid over or assigned, give to the BUYER a credit against the purchase price, on delivery of the deed, equal to said amounts so recovered or recoverable and retained by the holder of the said mortgage less any amounts reasonably expended by the SELLER for any partial restoration. | |
| 13. ACCEPTANCE OF DEED | The acceptance of a deed by the BUYER or his nominee as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed. | |
| 14. USE OF MONEY TO CLEAR TITLE | To enable the SELLER to make conveyance as herein provided, the SELLER may, at the time of delivery of the deed, use the purchase money or any portion thereof to clear the title of any or all encumbrances or interests, provided that all instruments so procured are recorded simultaneously with the delivery of said deed. **or as is customary in the local conveyancing community.** | |
| 15. INSURANCE *Insert amount (list additional types of insurance and amounts as agreed) | Until the delivery of the deed, the SELLER shall maintain insurance on said premises as follows: | |
| | Type of Insurance | Amount of Coverage |
| | (a) Fire and Extended Coverage | *$ AS PRESENTLY INSURED |
| | (b) | |

JAN 21 1996 02:01                              9785899412            PAGE. 05

**16. ADJUSTMENTS** (list operating expenses, if any, or attach schedule)

~~Collected rents, mortgage interest,~~ water and sewer use charges, ~~operating expenses (if any) according to the schedule attached hereto or set forth below,~~ and taxes for the then current fiscal year, shall be apportioned and fuel value shall be adjusted, as of the day of performance of this agreement and the net amount thereof shall be added to or deducted from, as the case may be, the purchase price payable by the BUYER at the time of delivery of the deed. ~~Uncollected rents for the current rental period shall be apportioned if and when collected by either party.~~

**17. ADJUSTMENT OF UNASSESSED AND ABATED TAXES**

If the amount of said taxes is not known at the time of the delivery of the deed, they shall be apportioned on the basis of the taxes assessed for the preceding fiscal year, with a reapportionment as soon as the new tax rate and valuation can be ascertained; and, if the taxes which are to be apportioned shall thereafter be reduced by abatement, the amount of such abatement, less the reasonable cost of obtaining the same, shall be apportioned between the parties, provided that neither party shall be obligated to institute or prosecute proceedings for an abatement unless herein otherwise agreed.

**18. BROKER's FEE** (fill in fee with dollar amount or percentage; also name of Brokerage firm(s))

A Broker's fee for professional services of 2.5%
is due from the SELLER to ERA Morrison upon recording of the Deed and not otherwise.

~~the record herein, but if the SELLER pursuant to the terms of clause 21 hereof retain the deposits made hereunder by the BUYER, said Broker shall be entitled to receive from the SELLER an amount equal to one-half the amount so retained or an amount equal to the Broker's fee for professional services according to this contract, whichever is the lesser.~~ [marked DELETE DELETE]

**19. BROKER(S) WARRANTY** (fill in name)

The Broker(s) named herein ERA Morrison
warrant(s) that the Broker(s) is (are) duly licensed as such by the Commonwealth of Massachusetts.

**20. DEPOSIT** (fill in name)

All deposits made hereunder shall be held in escrow by   Balas, Alphen & Santos, P.C.
as escrow agent subject to the terms of this agreement and shall be duly accounted for at the time for performance of this agreement. In the event of any disagreement between the parties, the escrow agent shall retain all deposits made under this agreement pending instructions mutually given in writing by the SELLER and the BUYER.

**21. BUYER's DEFAULT; DAMAGES**

If the BUYER shall fail to fulfill the BUYER's agreements herein, all deposits made hereunder by the BUYER shall be retained by the SELLER as liquidated damages ~~[illegible struck text]~~ which shall be Seller's sole and exclusive right at law or in equity.

**22. RELEASE BY HUSBAND OR WIFE**

The SELLER's spouse hereby agrees to join in said deed and to release and convey all statutory and other rights and interests in said premises.

**23. BROKER AS PARTY**

The Broker(s) named herein join(s) in this agreement and become(s) a party hereto, insofar as any provisions of this agreement expressly apply to the Broker(s), and to any amendments or modifications of such provisions to which the Broker(s) agree(s) in writing.

**24. LIABILITY OF TRUSTEE, SHAREHOLDER, BENEFICIARY, etc.**

If the SELLER or BUYER executes this agreement in a representative or fiduciary capacity, only the principal or the estate represented shall be bound, and neither the SELLER or BUYER so executing, nor any shareholder or beneficiary of any trust, shall be personally liable for any obligation, express or implied, hereunder.

**25. WARRANTIES AND REPRESENTATIONS** (fill in); if none, state "none"; if any listed, indicate by whom each warranty or representation was made

The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this agreement or previously made in writing, except for the following additional warranties and representations, if any, made by either the SELLER or the Broker(s):
NONE

26. **MORTGAGE CONTINGENCY CLAUSE** (omit if not provided for in Offer to Purchase)

In order to help finance the acquisition of said premises, the BUYER shall apply for a conventional bank or other institutional mortgage loan of $ 410,000.00 at prevailing rates, terms and conditions. If despite the BUYER's diligent efforts a commitment for such loan cannot be obtained on or before August 5th, 20 05 the BUYER may terminate this agreement by written notice to the SELLER and/or the Broker(s), as agent(s) for the SELLER, prior to the expiration of such time, whereupon any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto. In no event will the BUYER be deemed to have used diligent efforts to obtain such commitment unless the BUYER submits a complete mortgage loan application conforming to the foregoing provisions on or before July 18th, 20 05.

27. **CONSTRUCTION OF AGREEMENT**

This instrument, executed in multiple counterparts, is to be construed as a Massachusetts contract, is to take effect as a sealed Instrument, sets forth the entire contract between the parties, is binding upon and enures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be cancelled, modified or amended only by a written instrument executed by both the SELLER and the BUYER. If two or more persons are named herein as BUYER their obligations hereunder shall be joint and several. The captions and marginal notes are used only as a matter of convenience and are not to be considered a part of this agreement or to be used in determining the intent of the parties to it.

28. **LEAD PAINT LAW**

The parties acknowledge that, under Massachusetts law, whenever a child or children under six years of age resides in any residential premises in which any paint, plaster or other accessible material contains dangerous levels of lead, the owner of said premises must remove or cover said paint, plaster or other material so as to make it inaccessible to children under six years of age.

29. **SMOKE DETECTORS**

The SELLER shall, at the time of the delivery of the deed, deliver a certificate from the fire department of the city or town in which said premises are located stating that said premises have been equipped with approved smoke detectors in conformity with applicable law.

30. **ADDITIONAL PROVISIONS**

The initialed riders, if any, attached hereto, are incorporated herein by reference.

Please see Addendum "A" attached hereto and incorporated herein as an integral part of this P&S.

* The Buyer acknowledges and agrees that this Purchase and Sale Agreement is not contingent upon the Buyer selling its current residence or any other real estate. Accordingly, the mortgage contingency paragraph above shall not be a basis for voiding this agreement and shall not apply if the reason for inability to obtain financing is due in any part to the Buyer not selling his current residence or any other real estate.

See Addendum "B" attached hereto and incorporated herein.

FOR RESIDENTIAL PROPERTY CONSTRUCTED PRIOR TO 1978, BUYER MUST ALSO HAVE SIGNED LEAD PAINT "PROPERTY TRANSFER NOTIFICATION CERTIFICATION"

NOTICE: This is a legal document that creates binding obligations. If not understood, consult an attorney.

SELLER Raymond A. Shulstad
Taxpayer ID/Social Security No. 424 58 4035

SELLER (or Spouse) Victoria A. Shulstad
Taxpayer ID/Social Security No. 267682408

BUYER Brian J. Culliney
Taxpayer ID/Social Security No. _____

BUYER Nancy A. Culliney
Taxpayer ID/Social Security No. _____

EXTRA PAGE. 001



JUL-18-2005 17:28      A. JUSTIN McCARTHY, P.C.      978 692 5476    P.06/10

## ADDENDUM A TO PURCHASE AND SALE AGREEMENT

This Addendum amends and is incorporated into a Purchase and Sale Agreement dated the ___19th___ day of July, 2005 by and between Raymond A. Shultstad and Victoria A. Shultstad ("Sellers") and Brian J. Culliney and Nancy A. Culliney ("Buyers") regarding premises known as: 3 Gifford Drive, Westford, Middlesex County, Massachusetts ("Premises").

Regardless of any language to the contrary, the aforesaid Purchase and Sale Agreement and riders or amendments thereto are hereby amended by incorporating therein the following terms and conditions, and in the event of any inconsistent terms or conditions, the following provisions shall prevail:

1. The deed and other documents required by this Agreement are to be delivered and the balance of the purchase price paid at the date and time of closing and at the place of closing. Unless the closing takes place at the appropriate Registry of Deeds, all documents and funds are to be delivered in escrow subject to prompt rundown of title and recording or registration. Unless otherwise agreed, Seller's attorney may disburse the funds if no report has been received by close the business day on the day of the delivery of the deed.

2. Any matter or practice arising under or relating to this Agreement which is the subject of a title standard or a practice standard of the Real Estate Bar Association shall be governed by said standard to the extent applicable.

3. Buyer hereby consents to the full deposit to be paid under this Agreement as liquidated damages in the event of breach by the Buyer regardless of Seller's actual damages and regardless of the ultimate selling price of the premises to a third party.

4. In the event the Buyer's deposit check(s) is/are returned for insufficient funds or in the event that the Purchase & Sale Agreement calls for installment deposit payments and one or more of said deposits is not paid on the date specified, Seller may elect to terminate this Agreement by providing notice of such election to Buyer and upon such election, the Agreement shall become void without further recourse by either party.

5. Paragraph 10 of the P & S is amended by adding: "However, Seller shall not be obligated to spend over $1,000.00 to remove such defects in title, which sum is exclusive of amounts due to seller's Mortgagee(s)."

6. Condition of the premises: The premises is sold "as is" and there are no warranties or representations by the Seller, express or implied, as to the physical condition, quality of construction, workmanship, fitness for a particular purpose or any other matter regarding the premises. Buyer acknowledges having been given the opportunity to conduct any and all inspections, including without limitation a home inspection, and is satisfied with the condition of the property. The provisions of this paragraph shall survive the closing and delivery of the deed. "AS IS" defined as the condition of said property on the date of the home inspection.

7. Notices: All notices required hereunder shall be deemed to have been duly given if in writing and mailed by first class mail, certified mail, return receipt requested; all charges prepaid or delivered in hand or transmitted by telecopier, addressed to Buyer or Seller at their respective addresses designated above and

Marina I. Cardoso, Attorney, 200 Littleton Road, Westford, MA 01886 fax number: 978-692-5454. In the case of the Buyer, a copy thereof to A. Justin McCarthy, 285 Littleton Road, Westford, MA 01886 978-692-3211 Fax: 978-692-5476. Notices shall be deemed to have been properly served if delivered or sent to the principal or the alternate party designated in this paragraph.

8. Brokers: The Buyers and Seller represent and warrant to one another that neither has contacted real estate broker(s) in connection with the transaction and neither was directed to the other as result of any services or facilities of any real estate broker other than ERA Morrison. Each agrees to indemnify and hold harmless the other from and against all claims for any brokerage commission on account of this transaction by any person who established by court action a right to such a commission arising out of his dealings with the other outside of the Brokers named herein. This paragraph shall survive delivery of the deed hereunder.

9. Attorney Representation: Balas, Alphen & Santos, PC has been asked to represent the Seller in the drafting of this purchase and sale agreement and represents only the interests of the Seller. Buyer and Seller acknowledge that each has been advised that Buyer and Seller should have separate counsel and Buyer acknowledges having been afforded the opportunity to consult with Buyer's own counsel prior to signing this purchase and sale agreement.

Executed as a sealed instrument the day and date first above written.

SELLERS:

_Raymond A. Shultstad_
Raymond A. Shultstad

_Victoria A. Shultstad_
Victoria A. Shultstad

BUYERS:

_Brian J. Culliney_
Brian J. Culliney

_Nancy A. Culliney_
Nancy A. Culliney

fnina/marina/P&S/Shultstad – sale addendum

08/18/2005 16:01  9785899412           ERA WESTFORD                    PAGE  09
    JUL-18-2005 17:29      A. JUSTIN McCARTHY, P.C.        978 692 5476    P.08/10

## ADDENDUM B

RE:     3 Gifford Drive, Westford, Massachusetts

SELLER: Raymond A. Shulstad and Victoria A. Shulstad

BUYER:  Brian J. Culliney and Nancy A. Culliney

1. Notwithstanding anything to the contrary in the Purchase and Sale Agreement to which this Addendum has been attached, Section 8 is hereby modified to provide that the time and location of delivery of the deed on the day stated in paragraph 8 of the Purchase and Sale Agreement may be changed as reasonably required by Buyer's attorney, time still being of the essence of this Agreement.

2. Notwithstanding anything to the contrary in the Purchase and Sale Agreement to which this Addendum has been attached, Section 10 is hereby modified to provide that the extension to perfect title or to make the premises conform shall be a period of thirty (30) days or three (3) business days prior to the expiration of the Buyer's mortgage commitment, whichever date shall occur first.

3. Seller shall cooperate with the Buyer in obtaining mortgage financing by permitting representatives of prospective mortgagee entry upon the premises for inspection and appraisal purposes, and by permitting land surveyors or engineers entry upon the premises to plot boundary lines and take measurements and Seller shall also provide to the extent available such information as may be reasonably required by such prospective mortgagee or its representatives.

   Seller shall allow Buyer access to the premises for inspection and measurements at reasonable times and upon reasonable notice, provided that such access shall be in the presence of Seller or Seller's Agent.

4. The premises shall be delivered to the Buyer in broom clean condition, with all personal property not included in the sale having been removed. All utility systems and appliances shall be in the same working order at the time of delivery of the deed as at the time of inspection.

   The Seller shall also deliver to Buyer at closing all keys and electric garage door openers, if any to the Buyer. The Seller shall also provide all manuals, warranties, service contracts or other documents for the components of the structure, personal property and appliances, if any, in the possession or under the control of the Seller.

5. Seller or Seller's agent under a written Power of Attorney agrees to deliver to the Buyer such affidavits, documents and certificates as may be customarily and

reasonably requested by the Buyer's mortgagee, its attorney, or Buyer's attorney, including the following: (i) an affidavit to Buyer and Buyer's title insurance company certifying that there are no parties in possession of the premises, that all municipal liens including water, sewer and electricity have been paid, and that no work has been done on the premises which would entitle anyone to claim a mechanic's or materialmen's lien with respect to the premises; (ii) Internal Revenue Code, Section 1099B Form and W-9 Form; and (iii) an affidavit that there is no known urea formaldehyde foam insulation on or in the premises; and (iv) certifying as to the financial terms of the Purchase and Sale Agreement; (v) Seller shall execute and deliver to Buyer a "non-foreign certificate" stating that the Seller is not a "foreign person" as defined by the Federal Foreign Investment in Real Property Tax Act (the "Act").

6. Between the date hereof and the closing, Seller shall maintain and service the premises and its appurtenances at the same level of effort and expense as Seller has maintained or serviced the premises for Seller's own account prior to this Agreement.

7. Buyer's obligations hereunder are contingent upon the availability (at normal premium rates) of an owner's title insurance policy without exceptions other than the standard printed exceptions contained in the ALTA form currently in use, and those exceptions set forth in Paragraph 4 of this Agreement.

8. It is understood and agreed by the parties that the premises shall be in compliance with the provisions of this Agreement only if:

   a) All buildings, structures and improvements, including but not limited to, any driveways, garages, septic systems and cesspools, and all means of access to the premises, shall be located completely within the boundary lines of said premises and shall not encroach upon or under the property of any other person or entities;

   b) No building, structure or improvement of any kind belonging to any other person or entity shall encroach upon or under said premises;

   c) The premises shall abut a public way or a private way to which Buyer shall have both pedestrian and vehicular access, and if a private way, that such private way in turn has satisfactory access to a public way; which public way is duly laid out or accepted as such by the City or Town where the premises are located.

   d) The premises are not located within a HUD Flood Hazard Zone requiring the Buyer's purchase of Flood Insurance.

9. Seller represents that to the best of Seller's knowledge and belief, there is no

08/18/2005 16:01  9785899412                    ERA WESTFORD                           PAGE 11
JUL-18-2005 17:30       A. JUSTIN McCARTHY, P.C.              978 692 5476      P.10/10

underground oil tank on premises. This Paragraph shall survive delivery of the deed.

10. If said property is serviced by a septic system then Pursuant to Title V, Seller shall have the on-site wastewater system (the "septic system") which serves the property inspected by a licensed professional in connection with the transfer of the property. Within 10 days of the execution of this Agreement, Seller shall provide to Buyer a conformed copy of the "Subsurface Sewage Disposal System Inspection Form" on file with the municipal Board of Health. Should the form indicate that the system is a "failed system" or a "nonconforming system" as defined by said Title 5, at Buyer's option, this Agreement shall be null and void and without recourse to either party and all deposits shall be promptly returned to Buyer.

11. This agreement supersedes all prior agreements and other understandings between the parties and represents the complete and full agreement of the parties hereto except as this Agreement is modified or altered by written agreement signed by the parties hereto. All prior offers and agreements between the parties with respect to the transactions contemplated hereby and any such prior offers or agreements shall be null and void.

12. Prior to delivery of the deed hereunder, the Sellers shall complete at their own expense and in a good, substantial and workmanlike manner, using contractors regularly engaged in performing such work the following work and shall provide proof of same at closing.

   GFI outlet in front of house to be repaired.
   All outlets to be in proper working order.
   Wiring in main panel to be corrected, if necessary, as determined by a licensed electrician.
   Leak in air conditioning unit to be repaired.

_Victoria A Shulstad_
Seller
SS# 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

_Raymond A Shulstad_
Seller
SS# 424 58 4735

_____
Buyer
SS#

_____
Buyer
SS#

TOTAL P.10

JAN 21 1996 02:04                                          9785899412      PAGE.11