## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ENCOMPASS INSURANCE COMPANY OF MASSACHUSETTS, <br><br> Plaintiff/Counterclaim Defendant, <br><br> v. <br><br> JOSEPH D. GIAMPA, FREDERICK T. GIAMPA, ADVANCED SPINE CENTERS, INC. d/b/a FIRST SPINE REHAB, FUTURE MANAGEMENT CORPORATION, FUTURE MANAGEMENT BUSINESS TRUST, EDWARD KENNEDY, BRIAN J. CULLINEY, D.C., and JENNIFER MCCONNELL, D.C., <br><br> Defendants/Counterclaim Plaintiffs. | ) <br> ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION NO.  05-11693 RCL <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

### PLAINTIFF/COUNTERCLAIM DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS OMNIBUS MOTION TO DISMISS DEFENDANTS/COUNTERCLAIM PLAINTIFFS' COUNTERCLAIMS

Respectfully submitted,

ENCOMPASS INSURANCE COMPANY OF MASSACHUSETTS

By its Attorneys,

Kevin J. Lesinski (BBO #554140)
Jay B Kesten (BBO #655634)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
Telecopier:    (617) 946-4801

Dated:  February 20, 2007

## TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT .................................................................................................................3

I.    DEFENDANTS' CLAIMS ARE BARRED BY THE LITIGATION PRIVILEGE...........3

    A.    The Fact That Encompass Filed Claims Against Defendants
        Is Not Actionable, Nor Can Defendants Bring Suit Based On
        The Allegations Contained Therein. ...................................................................3

    B.    The Statements In The Press Release Are Also Protected By The
        Absolute Litigation Privilege. ...........................................................................4

II.   THE COUNTERCLAIMS MUST ALSO BE DISMISSED FOR FAILURE
    TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. ..........................6

    A.    Defendants' Lanham Act Claims Are Fatally Flawed. ......................................7

        1.    Defendants Lack Standing To Bring Their Lanham Act Claims....................7

        2.    Defendants Have Not Plead That The Press Release
            Is Either False Or Misleading. ...................................................................9

    B.    Defendants' Defamation Claims Must Be Dismissed. .....................................10

        1.    Defendants Have Not – Because They Cannot – Plead That
            Any Of The Statements In The Press Release Are False................................11

        2.    Defendants Have Not Plead A Single Fact To Suggest That
            Encompass Was Negligent In Issuing The Press Release. ...........................12

    C.    Defendants' Tortious Interference Claims Must Be Dismissed. .......................12

        1.    Defendants Have Failed To Identify The So-Called Business
            Relationships With Its Patients, Prospective Patients, And Other
            Insurers, Or To Allege Encompass Knew Of Such Relationships..................13

        2.    Defendants Have Also Failed To Plead Any Facts Supporting An
            Inference That Encompass Intended To Interfere With Defendants'
            Purported Business Relationships.................................................................14

    D.    Defendants' 93a Claims Must Also Be Dismissed. ..........................................15

CONCLUSION..............................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

*Albright v. Morton*,
 321 F. Supp. 2d 130 (D. Mass. 2004) *aff'd* 410 F.3d 69 (1st Cir. 2005) ...............11, 12, 15

*Andresen v. Diorio*,
 349 F.3d 8 (1st Cir. 2003)...............................................................................................12

*Blanchette v. Cataldo*,
 734 F.2d 869 (1st Cir. 1984)........................................................................................4, 5

*Boxcar Media, LLC v. Redneckjunk, LLC*,
 345 F. Supp. 2d 76 (D. Mass 2004) ..........................................................................13, 14

*Burke v. Town of Walpole*,
 2003 WL 23327539 (D. Mass. 2004) ...............................................................................11

*Conditioned Ocular Enhancements*,
 458 F. Supp. 2d 704 (N.D. Ill. 2006) .................................................................................9

*Correllas v. Viveiros*,
 410 Mass. 314 (1991) .........................................................................................................3

*DM Research, Inc. v. College of Am. Pathologists*,
 170 F.3d 53 (1st Cir. 1999)...............................................................................6, 7, 12, 15

*Desrochers v. Tiax, LLC*,
 2003 WL 21246150 (Mass. Super. May 1, 2003)............................................................14

*Dulgarian v. Stone*,
 420 Mass. 843 (1995) .......................................................................................................15

*Grossman v. Perry*,
 1999 WL 1318984 (Mass. Super. Apr. 15, 1999)..............................................................5

*Hampshire Paper Corp. v. Highland Supply Corp.*,
 2002 WL 31114120 (D. N.H. Sep. 23, 2002) ....................................................................8

*Hill v. Herald-Post Publishing Co.*,
 877 S.W.2d 774 (Tex. App. 1993), ...................................................................................6

*Kelley v. Bonney*,
 221 Conn. 549 (1992) .........................................................................................................6

*Kibbe v. Potter*,
  196 F. Supp. 2d 48 (D. Mass. 2002) .............................................................................3, 11

*L.S. Heath & Son, Inc. v. AT&T Information Sys., Inc.*,
  9 F.3d 561 (7th Cir. 1993) .........................................................................................8, 9

*Laser Labs, Inc. v. ETL Testing Laboratories, Inc.*,
  29 F. Supp. 2d 21 (D. Mass. 1998) ...........................................................................13, 14

*Leavitt v. Bickerton*,
  855 F. Supp. 455 (D. Mass. 1994) ...............................................................................3, 4

*Lucas ex rel. Lucas v. Newton Wellesley Hosp.*,
  2001 WL 834618 (Mass. Super. July 20, 2001) ..........................................................3, 4

*MPC Containment Sys., Ltd. v. Moreland*,
  2006 WL 2331148 (N.D. Ill. Aug. 10, 2006) ...................................................................9

*Motzkin v. Trustees of Boston University*,
  938 F. Supp. 983 (D. Mass. 1996) ............................................................................3, 4, 5

*Pestube Sys., Inc. v. HomeTeam Pest Defense, LLC*,
  2006 WL 1441014 (D. Ariz. May 24, 2006) ....................................................................9

*Platten v. HG Bermuda Exempted Ltd.*,
  437 F.3d 118 (1st Cir. 2006)..........................................................................................15

*Podiatrist Assoc., Inc. v. La Cruz Azul De Puerto Rico, Inc.*,
  332 F.3d 6 (1st Cir. 2003)............................................................................................6, 8

*Powell v. Stevens*,
  2004 WL 1047451 (Mass. Super. May 3, 2004)...............................................................3

*Proctor & Gamble Co. v. Haugen*,
  222 F.3d 1262 (10th Cir. 2000) .......................................................................................8

*Prokop v. Cannon*, 7 Neb. App. 334, 343 (1998) .....................................................................6

*Savers Property & Casualty Ins. Co. v. Admiral Ins. Agency, Inc.*,
  2000 WL 33223227 (Mass. Super. Oct. 16, 2000) .........................................................15

*Seven-Up Co. v. Coca-Cola Co.*,
  86 F.3d 1379 (5th Cir. 1996) ...........................................................................................8

*Spencer Companies, Inc. v. Chase Manhatten Bank, N.A.*,
  81 B.R. 194 (D. Mass 1987) ...........................................................................................14

- iii -

*Stanfield v. Osborne Indus., Inc.*,
    52 F.3d 867 (10th Cir. 1995) ........................................................................8, 9

*Sullivan v. Birmingham*,
    11 Mass. App. Ct. 359 (1981)...........................................................................3

*U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*,
    360 F.3d 220 (1st Cir. 2004)................................................................6, 13, 16

*UniQuality, Inc. v. Infotronix, Inc.*,
    974 F.2d 918 (7th Cir. 1992) ............................................................................9

*Volunteer Firemen's Ins. Svs., Inc. v. McNeil and Co., Inc.*,
    221 F.R.D. 388 (W.D.N.Y. 2004).....................................................................9

*Walsh v. Town of Lakeville*,
    431 F. Supp. 2d 134 (D. Mass. 2006) .............................................................11

*Zortman v. Bildman*,
    1999 WL 1318948 (Mass. Super. Mar. 5, 1999) ...........................................4, 5

BO1 15827260.1

## PRELIMINARY STATEMENT

Defendants'[1] counterclaims – alleging defamation, tortious interference, and violations of

the Lanham Act, 15 U.S.C. § 1125(a) (the "Lanham Act") and M.G.L. c. 93A, § 11 ("93A") –

are a transparent, and wholly meritless, attempt to retaliate against Encompass for bringing suit

in this case. Defendants' claims are based exclusively on two facts: (1) that Encompass filed suit

in this case; and (2) that Encompass issued a press release, dated August 18, 2005 (the "Press

Release"), which merely states that Encompass had filed suit against Defendants and briefly

describes those claims with direct quotations from the publicly-available complaint.[2] Simply

put, these activities are protected by the absolute litigation privilege and <u>are not actionable</u>.

Even setting aside this insurmountable legal obstacle, each of Defendants' Counterclaims

must be dismissed for failure to state a claim upon which relief can be granted. Despite bringing

claims for defamation, <u>none</u> of the Counterclaims allege that any of the statements made in the

Press Release were false. Also conspicuously absent from the Counterclaims – especially in

light of their defamation and tortious inference and 93A claims – are any <u>factual</u> allegations that

would support even the most tenuous inference that Encompass' actions were undertaken in bad

faith, negligently, recklessly or with the intent to interfere with any of Defendants' contracts or

business relations. To the contrary, it is undisputed that:

- Encompass undertook an exhaustive, six-month investigation of their claims,
  including witness interviews and extensive document review. <u>See</u> Giampa
  Counterclaim, ¶¶ 7-8 and n. 2;

---

[1] Three separate counterclaims were filed: one by Joseph D. Giampa, Frederick T. Giampa and Advanced Spine Centers, Inc. (the "Giampa Counterclaim"); one by Edward Kennedy (the "Kennedy Counterclaim"); and one by Brian J. Culliney and Jennifer McConnell ("the Culliney Counterclaim") (collectively, the "Counterclaims"). Where feasible, Plaintiff will address these claims collectively – where certain pleading defects are not found in each Counterclaim, it will be so noted herein.

[2] The Press Release is attached as an exhibit to the Counterclaims, and has been appended hereto as Exhibit 1 for the Court's convenience.

- Encompass' claims – which are stated in over one hundred and fifty (150) pages of minute detail – were not only filed in good faith, but have <u>all</u> survived motions to dismiss. <u>See</u> Clerk's Notes and Electronic Orders, dated June 5, 2006 and November 13, 2006, denying Defendants' Motions to Dismiss. Indeed, as to Plaintiffs' fraud claims, this Court held that the claims satisfied the <u>heightened pleading standard</u> of Rule 9(b) motion to dismiss. <u>See, e.g.,</u> Electronic Order dated November 13, 2006 ("the plaintiff has satisfied the heightened pleading requirements of Rule 9(b)."); and

- This Court has already found that Encompass has demonstrated a reasonable likelihood of success on the merits of its claims. <u>See, e.g.,</u> Docket Nos. 11 and 12 (granting *ex parte* motions for attachments of real property and by trustee process); <u>see also</u> Fed.R.Civ.P. 64 and Mass.R.Civ.P. 4.1 and 4.2.[3]

Finally, Defendants (chiropractors, chiropractic business entities and the owners of those entities) lack standing to bring their Lanham Act claims as they have not – and cannot – plead any competitive injury because Encompass (an insurance company) is not their competitor. For these reasons, and as set forth in detail below, the Court should dismiss each and every Counterclaim with prejudice.

---

[3] In fact, the Court has subsequently increased the attachments to nearly $1.9 million. <u>See, e.g.,</u> Docket No. 52.

## ARGUMENT

**I.    DEFENDANTS' CLAIMS ARE BARRED BY THE LITIGATION PRIVILEGE.**

**A.    The Fact That Encompass Filed Claims Against Defendants Is Not Actionable, Nor Can Defendants Bring Suit Based On The Allegations Contained Therein.**

It is black letter law that in Massachusetts, "[s]tatements made in the course of a judicial proceeding which pertain to that proceeding are, of course, absolutely privileged ..." Motzkin v. Trustees of Boston University, 938 F.Supp. 983, 1000 (D. Mass. 1996) (quoting Correllas v. Viveiros, 410 Mass. 314 (1991)); see also Kibbe v. Potter, 196 F.Supp. 2d 48, 75 n. 25 (D. Mass. 2002) ("an absolute privilege protects any allegedly defamatory statements made in the institution or conduct of a litigation ..."); Powell v. Stevens, 2004 WL 1047451, at *6 (Mass. Super. May 3, 2004) ("it is well settled that statements (oral or written) made by a party or witness in the institution and during the course of judicial proceedings are absolutely privileged.").

The litigation privilege is an absolute bar to all civil liability. See Lucas ex rel. Lucas v. Newton Wellesley Hosp., 2001 WL 834618, at *3 (Mass. Super. July 20, 2001) (noting that absolute privilege was "a complete defense not only to claims of libel and intentional infliction of emotional distress, but to any civil liability based on allegations contained in the complaint."); Leavitt v. Bickerton, 855 F.Supp 455, 458 (D. Mass. 1994) ("[a] privilege which protected an individual from liability for defamation would be of little value if the individual were subject to liability under a different theory of tort."); Correllas, 410 Mass. at 324 (same); Lucas, 2001 WL 834618, at * 3 (same).[4]

---

[4] The litigation privilege may not bar claims for abuse of process and/or malicious prosecution. See, e.g., Sullivan v. Birmingham, 11 Mass. App. Ct. 359, 368 n. 8 (1981). However, Defendants have not – because they cannot – bring

Accordingly, Giampa Counterclaim Count I – based exclusively on the fact that Encompass filed suit against Defendants – must be dismissed out of hand.  Further, to the extent that the remaining Counterclaims are premised on Encompass' filing suit, or the allegations contained within Encompass' claims, those claims must also be dismissed.  See Motzkin, 938 F.Supp. at 1000 (dismissing defamation claim and holding that "[t]o the extent that [Plaintiff] seeks to allege a cause of action for defamation based upon [defendant's] public filings with this court, such a claim is barred by the absolute privilege applicable to statements made in the course of litigation..."); Blanchette v. Cataldo, 734 F. 2d 869, 877 (1st Cir. 1984) (noting that absolute privilege applicable to tortious interference claims).

## B.    The Statements In The Press Release Are Also Protected By The Absolute Litigation Privilege.

Defendants' claims premised on the issuance of the Press Release are similarly barred.  The absolute privilege also extends to out-of-court statements – such as the Press Release – when such statements are "relevant or pertinent to a judicial proceeding."  See Leavitt, 855 F.Supp. at 458 (holding that "[i]t is also clear that the privilege applies to statements made outside the courtroom"); Zortman v. Bildman, 1999 WL 1318948, at *8 (Mass. Super. Mar. 5, 1999) ("statements ... are absolutely immune from all civil liability where such statements are relevant or pertinent to a judicial proceeding"); Lucas, 2001 WL 834618, at *2 (absolute privilege attaches "so long as the challenged remarks are relevant or pertinent to the judicial proceedings.").  Massachusetts courts give broad construction to the requirements of relevance and/or pertinence.  Leavitt, 855 F.Supp. at 458 (holding that "[t]o be privileged, a statement need only be made in the course of judicial proceedings and be, in some way, related to those

---

these claims because Encompass' lawsuit was not only filed in good faith, but survived motions to dismiss under Fed.R.Civ.P. 12(b)(6) and 9(b). Indeed, in acknowledgment of that fact, the Giampas withdrew their abuse of process claim. Compare Docket No. 51 at Count I with Giampa Counterclaim (Docket No. 90).

- 4 -

proceedings"); see also Blanchette, 734 F. 2d at 877 ("[t]he statements must be 'pertinent to the proceedings' to come within the privilege, but this requirement is to be broadly construed."); Zortman, 1999 WL 1318948, at *8 (for privilege to attach, statement "must have some reference to the subject matter of the proposed or pending litigation although it need not be strictly relevant to any issue involved in it …").

The Press Release readily falls within these broadly-construed boundaries. It is undisputed that the Press Release – dated August 18, 2005 – was issued after Encompass filed suit in this matter on August 16, 2005. Compare Docket No. 1 with Exhibit 1. Thus, although an out-of-court statement, the Press Release was issued "in the course of judicial proceedings." Moreover, by its very terms, the Press Release is "related" to those proceedings. Indeed, the Press Release simply states the claims filed, identifies the party, and then quotes briefly from the publicly available allegations of the complaint without any editorial comment as to the merit of those claims. See Exhibit 1. Therefore, the remainder of Defendants' Counterclaims, which are all premised on the issuance of the Press Release, must fail as well. See Motzkin, 938 F.Supp. at 1000 (holding that litigation privilege barred claim that alleged that defendant had defamed plaintiff "by filing as a public record in the Court confidential materials … and by leaking distorted information to the press").

In an analogous circumstance, the Massachusetts Superior Court granted a Rule 12(b)(6) motion to dismiss, holding that "a plaintiff does not commit an abuse of process by publicizing the allegations in the complaint or by providing the complaint to a newspaper" because such action is "well on the side of privilege." Grossman v. Perry, 1999 WL 1318984, at *1 (Mass. Super. Apr. 15, 1999). In Grossman, the Court based its decision, in part, on the fact that Rule 3.6(b)(2) of the Massachusetts Rules of Professional Conduct "specifically permit an attorney to

- 5 -

state the information contained in a public record, such as a complaint." This holding applies

with equal force here because the statements made in the Press Release (insofar as they pertain to

Defendants at all ) are simply repetitions of matters already within the public record, such as the

fact that claims were filed against Defendants and allegations of the complaint reproduced

verbatim.[5]

## II. THE COUNTERCLAIMS MUST ALSO BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

To survive a motion to dismiss, a complaint must "allege a factual predicate concrete

enough to warrant further proceedings." DM Research, Inc. v. College of Am. Pathologists, 170

F.3d 53, 55 (1st Cir. 1999) (emphasis in original); U.S. ex rel. Karvelas v. Melrose-Wakefield

Hosp., 360 F.3d 220, 240 (1st Cir. 2004) (holding that "even under the liberal pleading

requirements of Rule 8(a), a plaintiff must "set forth factual allegations, either direct or

inferential, respecting each material element necessary to sustain recovery under some actionable

legal theory"); see also Podiatrist Assoc., Inc. v. La Cruz Azul De Puerto Rico, Inc., 332 F.3d 6,

18-9 (1st Cir. 2003). Put differently, "while the plaintiff's facts must be accepted as alleged, this

does not automatically extend to bald assertions, subjective characterizations and legal

conclusions." DM Research, 170 F.3d at 55; see also Karvelas, 360 F.3d at 240 ("Simply

parroting the language of a statutory cause of action, without providing some factual support, is

not sufficient to state a claim."). As illustrated in detail below, these judicial admonitions are

---

[5] Other jurisdictions also hold that merely transmitting the allegations of a publicly available complaint to the media is not actionable because such statements are shielded by the privilege. See, e.g., Prokop v. Cannon, 7 Neb. App. 334, 343 (1998) ("[T]rue or not, we find that statements made to the news media were well within the privilege"); Hill v. Herald-Post Publishing Co., 877 S.W.2d 774, 783 (Tex. App. 1993) (holding that "mere delivery of pleadings in pending litigation to members of the news media does not amount to a publication outside of the judicial proceedings, resulting in a waiver of the absolute privilege" and explaining that "harm resulting to the defamed party by delivering a copy of the suit or motion in a pending proceeding to the news media could demonstratively be no greater than it would be if the news media reporters got a tip from someone or found the pleadings on their own"), aff'd in part and rev'd in part on other grounds, 891 S.W.2d 638 (Tex. 1994); Kelley v. Bonney, 221 Conn. 549, 576-7 (1992) ("Publication to the media of material that the media was independently entitled to view, however, cannot provide a basis for a claim of defamation.").

particularly applicable to Defendants' Counterclaims, which simply regurgitate the elements of the various claims asserted and are not supported by any factual predicate whatsoever. In sum, each of Defendants' Counterclaims is based on their surmise – and nothing more – that Encompass filed suit and issued its Press Release in bad faith; however, standing alone, this conjecture is not enough as a matter of law to withstanding a motion to dismiss even liberal notice-pleading standard of Rule 8. See DM Research, 170 F.3d at 55 (cautioning that "conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition").

### A.      Defendants' Lanham Act Claims Are Fatally Flawed.

The Giampa and Culliney (but not Kennedy) Counterclaims purport to set forth claims under the Lanham Act, 15 U.S.C. § 1125(a) for "false and misleading" statements made "in commercial advertising or promotion." Giampa Counterclaim, ¶44 (Count VI); Culliney Counterclaim, ¶ 34 (Count V). Defendants' claims fail for two independent reasons: first, Defendants must – but cannot – satisfy the threshold inquiry of competitive injury; and second, Defendants have failed to allege – nor can they – that any of Encompass' so-called "false and misleading" statements were, in fact, false.

### 1.      Defendants Lack Standing To Bring Their Lanham Act Claims.

In order to obtain standing to bring a claim under this provision of the Lanham Act, Defendants must, but have not, allege competitive injury. Specifically, for the purposes of the Lanham Act, to fall within the category of "commercial advertising or promotion" a statement must: (a) constitute commercial speech; (b) made with the intent of influencing potential customers to purchase the speaker's goods or services; (c) by a speaker who is a competitor of

the plaintiff; and (d) disseminated to the consuming public in such a way as to constitute 'advertising' or 'promotion.' Podiatrist Assoc., 332 F.3d at 19 (emphasis added); see also Hampshire Paper Corp. v. Highland Supply Corp., 2002 WL 31114120, at *4 (D. N.H. Sep. 23, 2002) ("[t]o satisfy the standing requirement to maintain [Section 1125] claim, the plaintiff must allege commercial injury based upon a misrepresentation about a product, and also that the injury was 'competitive,' i.e., harmful to the plaintiff's ability to compete with the defendant." (internal quotations omitted, emphasis added); Proctor & Gamble Co. v. Haugen, 222 F.3d 1262, 1273-4 (10th Cir. 2000) (holding that in order for representation to constitute commercial advertising or promotion, they must be made "by a defendant who is in commercial competition with plaintiff"); Seven-Up Co. v. Coca-Cola Co., 86 F.3d 1379, 1384 (5th Cir. 1996) (same); Stanfield v. Osborne Indus., Inc., 52 F.3d 867, 873 (10th Cir. 1995) ("[T]o have standing for a [Lanham Act] false advertising claim, the plaintiff must be a competitor of the defendant and allege a competitive injury."); L.S. Heath & Son, Inc. v. AT&T Information Sys., Inc., 9 F.3d 561, 575 (7th Cir. 1993) ("In order to have standing to allege a false advertising claim, however, the plaintiff must assert a discernible competitive injury.").

Defendants have failed entirely to make any allegation of competitive injury and it is apparent from the face of the pleadings that Defendants can make no such allegation. Encompass – a division of The Allstate Corporation – is an insurance company that, among other things, writes automobile policies. See, e.g., SAC, ¶¶ 5, 6, 8-10; Giampa Counterclaim, ¶ 4; Exhibit 1. The Giampa and Culliney Counterclaimants, on the other hand, are all engaged in the business of chiropractic care. See, e.g., SAC, ¶¶ 14, 16-17 (and corresponding Answers admitting those allegations in pertinent part). Accordingly, Defendants lack standing to bring Lanham Act claims because they are not now, nor have they ever been, in competition with

- 8 -

Encompass. Stanfield, 52 F.3d at 873 (holding that plaintiff lacked standing to bring Lanham

Act claim where "plaintiff is not now, nor has he ever been, in competition with defendants");

L.S. Heath, 9 F.3d at 575 (holding that "[b]ecause [plaintiff] is not in the computer business and

thus is not a competitor of AT & T, [plaintiff] does not have standing to raise the false

advertising claim").

>            **2.    Defendants Have Not Plead That The Press Release Is**
>                    **Either False Or Misleading.**

Defendants' Lanham Act claims also fail because each of the statements contained

therein is demonstrably true on the face of the record, and Defendants have not plead – because

they cannot – how or why any such statements are "misleading." As to Defendants, the Press

Release[6] merely states that:

> • Encompass has brought suit against Joseph Giampa and Frederick Giampa
>
> for fraud, civil conspiracy, and violations of the RICO Act and the MCPA. See
>
> Exhibit 1. This is demonstrably true – Encompass filed suit on August 16, 2005,
>
> and the Complaint included each of the claims listed above. See Docket No. 1, ¶¶
>
> 90-106, 118-127, 128-131 and 132-138;

---

[6] To the extent that Defendants' claim is not based on the Press Release, it must be dismissed for failure to satisfy the heightened pleading requirements of Rule 9(b). Conditioned Ocular Enhancements, 458 F.Supp.2d 704,709 (N.D. Ill. 2006); MPC Containment Sys., Ltd. v. Moreland, 2006 WL 2331148, at *2 (N.D. Ill. Aug. 10, 2006) (dismissing Lanham Act claims for failure to satisfy Rule 9(b)); Pestube Sys., Inc. v. HomeTeam Pest Defense, LLC, 2006 WL 1441014, at *5 (D. Ariz. May 24, 2006) (dismissing Lanham Act claims where – as here – complaint contained only "unidentified alleged fraud or misleading material descriptions of facts knowingly misrepresenting the nature, characteristics, or qualities of Defendant's products"); Volunteer Firemen's Ins. Svs., Inc. v. McNeil and Co., Inc., 221 F.R.D. 388, 393-4 (W.D.N.Y. 2004) (dismissing false advertising claims for failure to satisfy Rule 9(b)). Specifically, aside from the Press Release, none of the Counterclaims allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." MPC Containment, 2006 WL 2331148, at *2 (holding that the "absence of any necessary detail renders the pleading deficient"); Uni*Quality, Inc. v. Infotronix, Inc., 974 F.2d 918, 923 (7th Cir. 1992) ("the plaintiff must plead the 'who, what, when, and where' of the alleged fraud").

- Encompass also filed suit against Brian Culliney and Jennifer McConnell. See Exhibit 1. This is also demonstrably true. See Docket No. 1, ¶¶ 13-14, 118-140;

- Encompass is seeking $1.8 million in damages. See Exhibit 1. This is patently true on the face of the Complaint – Encompass alleged damages "in excess of $600,000" (Docket No. 1, ¶ 89) and sought recovery of treble damages under many of its theories of liability (Docket No. 1, pp. 28-29); and

- The instant lawsuit alleges that Defendants "engaged in a scheme to defraud insurance companies, including Encompass Insurance by submitting false, fraudulent and inflated chiropractic invoices containing excessive charges" and "demanding payment for excessive and/or non-existent and/or unwarranted chiropractic treatment through their chiropractic clinic." See Exhibit 1. This is simply a verbatim recitation of the introduction to Encompass' Complaint. Docket No. 1, ¶ 1.[7]

Accordingly, Defendants' Lanham Act claims must also be dismissed for failure to allege any actually false or misleading statements made by Encompass.

**B.    Defendants' Defamation Claims Must Be Dismissed.**

Each of the Counterclaims purports to state a claim for defamation, based exclusively on the statements contained in the Press Release. See Giampa Counterclaim, ¶ 33; Kennedy Counterclaim, ¶ 13; Culliney Counterclaim, ¶ 13. To survive a motion to dismiss, Defendants must plead facts tending to demonstrate that: (1) the Press Release contained a false statement of and concerning them; (2) the Press Release was capable of damaging the their reputations in the

---

[7] The Press Release does, however, omit the parenthetical definition "(hereinafter "Encompass")." Compare Exhibit 1 with Docket No. 1, ¶ 1.

- 10 -

community; (3) Encompass was at fault because it negligently published the Press Release (or
did so with actual knowledge of falsity); and (4) the Press Release actually caused the
Counterclaim Plaintiffs to suffer economic harm.  See Albright v. Morton, 321 F.Supp.2d. 130,
134 (D. Mass. 2004) *aff'd* 410 F.3d 69 (1st Cir. 2005).  The Counterclaims are all fatally flawed
because they fail to plead adequately that any of the statements in the Press Release were false,
or that Encompass was negligent (or otherwise at fault) in issuing those statements.

### 1.    Defendants Have Not – Because They Cannot – Plead That Any Of The Statements In The Press Release Are False.

"The lodestar of Massachusetts defamation law is the axiom that truth is an absolute
defense to defamation."  Walsh v. Town of Lakeville, 431 F.Supp 2d. 134, 153 (D. Mass. 2006).
Thus, it is well settled in Massachusetts that "to survive a motion to dismiss … a defamation
plaintiff must plead … the falsity of those [impugned] statements."  Kibbe, 196 F.Supp. 2d at
74-5; Burke v. Town of Walpole, 2003 WL 23327539, at *11 (D. Mass. 2004) (same); see also
Albright, 321 F.Supp. 2d at 134.  Fatal to their claims, none of the Defendants' Counterclaims
allege the falsity of any of the statements made in the Press Release.  See Giampa Counterclaim,
*passim*; Kennedy Counterclaim, *passim*; Culliney Counterclaim, *passim*.[8]  Indeed, as illustrated
in Section II (A)(ii), *supra*, no such averment is possible because each of the statements in the
Press Release is demonstrably true.  Accordingly, each of these claims must be dismissed.
Burke, 2003 WL 23327539, at *11 (dismissing defamation claim for failure to plead publication
of false and defamatory statement).

---

[8] Admitting their inability even to allege falsity, the Kennedy and Culliney Counterclaims state only that the Press
Release "grossly exaggerated both the nature of this case and the amount in controversy." Kennedy Counterclaim, ¶
7; Culliney Counterclaim, ¶ 8. This is simply not true. The Press Release accurately lists the claims in this case
(indeed, it omits mention of the tortious interference claim) and asserts that there is approximately $1.8 million at
issue – a fact confirmed by this Court. See Docket Nos. 35 (increasing amount of attachment to nearly $1.9 million
as to Defendant Culliney), 52 and 53 (same, as to Defendants Joseph and Frederick Giampa).

### 2.    Defendants Have Not Plead A Single Fact To Suggest That Encompass Was Negligent In Issuing The Press Release.

Defendants' defamation claims must also be dismissed for failure to plead <u>any</u> facts tending to show that Encompass was negligent in issuing its Press Release. <u>See</u> <u>Andresen v. Diorio</u>, 349 F. 3d 8, 17 (1st Cir. 2003); <u>Albright</u>, 321 F.Supp.2d, at 134. While each of the Counterclaims includes the legal conclusion that Encompass was "negligent in issuing [its] press release" (<u>see</u> Giampa Counterclaim, ¶ 35, Kennedy Counterclaim, ¶ 15, Culliney Counterclaim, ¶ 15), not a single fact is plead to support this bare allegation. On the contrary, as illustrated in detail above, the record reflects that: (i) prior to filing suit, Encompass engaged in an <u>exhaustive</u> investigation; (ii) Encompass stated <u>all</u> of its claims in sufficient detail to withstand a motion to dismiss; and (iii) this Court has already found that Encompass has demonstrated a likelihood of success on the merits of its claims. <u>See</u> Preliminary Statement, *supra*. For this reason as well, Defendants' defamation claims must be dismissed. <u>Andresen</u>, 349 F. 3d at 17 (affirming dismissal of claims where "no facts suggesting negligence or deliberate falsehood by [defendants] are alleged"); <u>see also</u> <u>DM Research</u>, 170 F.3d at 55 (holding that the court need not accept as true bald assertions, subjective characterizations and legal conclusions).

### C.    Defendants' Tortious Interference Claims Must Be Dismissed.

Each of the Counterclaims purports to set forth a claim for tortious interference with business relations. All of the Defendants assert that Encompass has interfered with their business relationships with certain of the other defendants. <u>See</u> Giampa Counterclaim, ¶¶ 21-25; Kennedy Counterclaim, ¶¶ 17-21;[9] Culliney Counterclaim, ¶¶ 17-21. The Giampa and Culliney

---

[9] Defendant Kennedy alleges only that "[b]y publishing a defamatory press release, Encompass has caused the performance of the agreement between Kennedy and Future Management." <u>See</u> Kennedy Counterclaim, ¶ 19. It is unclear to Encompass how causing the parties to perform their agreements could possibly be "interference" and such a claim should be dismissed out of hand.

Counterclaims also assert that Encompass has interfered with their business relationships with certain unnamed "patients, prospective patients, and other insurers." See Giampa Counterclaim, ¶¶ 26-31; Culliney Counterclaim, ¶¶ 22-27.

To state a claim for tortious interference, Defendants must allege facts that, if true, would demonstrate: (1) a business relationship or contemplated contract of economic benefit; (2) the defendant's knowledge of such a relationship; (3) the defendant's intentional and improper interference with it; and (4) the plaintiff's loss of advantage directly resulting from the defendant's conduct. See Laser Labs, Inc. v. ETL Testing Laboratories, Inc., 29 F.Supp. 2d 21, 23 (D. Mass. 1998). Defendants have failed to satisfy this basic pleading requirement and, instead, have impermissibly parroted the bare elements of this claim, unsupported by any factual assertions. Karvelas, 360 F.3d at 240 ("Simply parroting the language of a statutory cause of action, without providing some factual support, is not sufficient to state a claim.")

As to their "patients, prospective patients, and other insurers" claims, Defendants have failed even to identify which purported business relationships are at issue and, similarly, have failed to allege that Encompass knew of such relationships. Further, Defendants have failed to plead any facts – as they must – supporting an inference that Encompass actually intended to interfere with Defendants' purported business relationships.

>    1.    **Defendants Have Failed To Identify The So-Called Business Relationships With Its Patients, Prospective Patients, And Other Insurers, Or To Allege Encompass Knew Of Such Relationships.**

As a threshold matter, to state a claim for tortious interference, Defendants must allege that Encompass knew of the relationships with which it putatively interfered. See Laser Labs, 29 F.Supp. 2d at 23; Boxcar Media, LLC v. Redneckjunk, LLC, 345 F.Supp. 2d 76, 78 (D. Mass 2004). Defendants' "patients, prospective patients or other insurers" claims must be dismissed

- 13 -

because the Counterclaims do not even identify which relationships are at issue, much less aver

that Encompass knew of the existence of those un-named business arrangements.  See Boxcar

Media, 345 F.Supp. 2d at 78 (dismissing tortious interference claim where complaint failed to

"specify what business relationship was affected [or] whether the [opposing party] knew about

any such relationship").

> **2.    Defendants Have Also Failed To Plead Any Facts
> Supporting An Inference That Encompass Intended To
> Interfere With Defendants' Purported Business
> Relationships.**

The gravamen of a tortious interference claim is that a party not only interfered with a

contract or relationship, but actually intended to interfere.  Spencer Companies, Inc. v. Chase

Manhatten Bank, N.A., 81 B.R. 194, 204 (D. Mass 1987) ("[w]ithout an intent to interfere, there

can be no liability"); see also Laser Labs, 29 F.Supp. 2d at 23; Desrochers v. Tiax, LLC, 2003

WL 21246150, at *6 (Mass. Super. May 1, 2003).  The Counterclaims are utterly devoid of any

factual allegations suggesting that Encompass filed suit in this case (or issued the Press Release)

with the intent of interfering with Defendants' intra-corporate business relationships, or putative

relationships with their un-named "patients, prospective patients or other insurers."  Setting aside

the fact that the Counterclaims fail to identify the business relationships at issue, each of the

Counterclaims allege only that Encompass was "negligent" or "reckless" as to the potential

effect of the Press Release.  See Giampa Counterclaim, ¶ 35, Kennedy Counterclaim, ¶ 15,

Culliney Counterclaim, ¶ 15.  Even if true – and, as illustrated above, this legal conclusion is

completely undermined by the factual record – such an allegation is simply not enough, as a

matter of law, to survive a motion to dismiss.  Spencer Companies, 81 B.R. at 204 (dismissing

tortious interference claim for failure to allege adequately intent to interfere and stating that "there can be no liability since a negligent interference is not actionable").[10]

### D.    Defendants' 93a Claims Must Also Be Dismissed.

Each of the Counterclaims also purports to set forth a 93A claim. The Kennedy and Culliney Counterclaims premise their 93A claim exclusively on the issuance of the Press Release. See Kennedy Counterclaim, ¶ 24; Culliney Counterclaim, ¶ 30. However, "where allegedly defamatory statements do not support a cause of action for defamation, they also do not support a cause of action under G.L. c. 93A." Albright v. Morton, 321 F.Supp. 2d at 141-2 (granting motion to dismiss); Dulgarian v. Stone, 420 Mass. 843, 853 (1995) (affirming dismissal of claims). As illustrated above, Defendants' defamation claims based on the Press Release must be dismissed as barred by the litigation privilege and/or for failure to state a claim. Accordingly, the Kennedy and Culliney 93A Counterclaims must fail as well.

The Giampa Counterclaim mirrors the above claims (and must be dismissed for the same reason), but also alleges that "[b]y filing a frivolous lawsuit and attaching [Defendants'] personal residences, all for ulterior motives, Encompass has engaged in unfair and deceptive acts or practices." Giampa Counterclaim, ¶ 39. First, as a matter of law, "[t]he filing of a lawsuit … is not the use or employment of an unfair method of competition or an unfair or deceptive act," nor is it a "marketplace transaction." Savers Property & Casualty Ins. Co. v. Admiral Ins. Agency, Inc., 2000 WL 33223227, at *3 (Mass. Super. Oct. 16, 2000) (holding that "[defendant's] c. 93A

---

[10] Defendants have also failed to plead – as they must – any facts demonstrating that the alleged interference was accomplished with improper motive or by improper means. See Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 130 (1st Cir. 2006). Instead, each of the Counterclaims simply contains the conclusory statement that "Encompass's interference is wrongful in means and/or motive." Giampa Counterclaim, ¶ ¶ 24, 30; Kennedy Counterclaim, ¶ 20; Culliney Counterclaim, ¶ 20. This is not enough, as a matter of law. DM Research, 170 F.3d at 55 (cautioning that "conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition")

- 15 -

counterclaim – predicated as it is solely on the filing by [plaintiff] of this lawsuit – cannot survive.") Accordingly, the Giampas' 93A Counterclaim must be dismissed.

Second, the Giampa Counterclaim does not plead a single fact in support of their conclusory allegations other than to speculate (on information and belief) that Encompass' investigation "failed to reveal fraudulent conduct." Giampa Counterclaim, ¶ 11. This unsupported surmise does not satisfy even the liberal pleading requirements of Rule 8. See Karvelas, 360 F.3d at 240 ("even under the liberal pleading requirements of Rule 8(a), a plaintiff must set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."). In fact, contrary to the Giampas' unsupported, conclusory allegations, the record illustrates that not only did Encompass file suit in good faith, the claims at issue survived a Rule 9(b) motion to dismiss, and this Court has already determined that Encompass has shown a reasonable likelihood of success on its claims. See Clerk's Notes and Electronic Orders, dated June 5, 2006 and November 13, 2006; Docket Nos. 11 and 12. For this reason, too, the Giampas' 93A counterclaim must be dismissed.

- 16 -

## **CONCLUSION**

For the reasons set forth above, this Court should dismiss each the Counterclaims in their

entirety and with prejudice.

Respectfully submitted,
ENCOMPASS INSURANCE COMPANY OF
MASSACHUSETTS
By its Attorneys,


/s/ Kevin J. Lesinski
Kevin J. Lesinski (BBO # 554140)
Jay B Kesten (BBO #  655634)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane
Suite 300
Boston, MA 02210-2028
Telephone:      (617) 946-4800
Telecopier:      (617) 946-4801


DATED:  February 20, 2007

<u>**CERTIFICATE OF SERVICE**</u>

I, Kevin J. Lesinski, hereby certify that on this 20th day of February, 2007, this **Memorandum of Law in Support of Motion to Dismiss Defendants/Counterclaim Plaintiffs' Counterclaims** was filed through the CM/ECF and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

\_\_\_\_\_/s/ Kevin J. Lesinski\_\_\_\_

Kevin J. Lesinski

# EXHIBIT 1



# NEWS

### FOR IMMEDIATE RELEASE

Contact:     Bill Mellander
             (847) 402-5600

## Boston Area Chiropractors Named In Million-Dollar Fraud Case

LOWELL, Mass., August 18, 2005 --- Owners and employees of First Spine and Rehab, a Lowell Massachusetts chiropractic clinic, have been named as defendants in a $1.8 million fraud lawsuit --- the result of a six-month investigation led by Encompass Insurance Company of Massachusetts.

According to court documents, Joseph Giampa, Frederick Giampa and Edward Kennedy are accused of violating the Racketeer Influenced and Corrupt Organizations Act (RICO), the Massachusetts Consumer Protection Act and engaging in common law fraud and civil conspiracy.

Encompass filed suit in the U.S. District Court for the District of Massachusetts against the Giampas, Kennedy, as well as Brian Culliney, Jennifer McConnell, the company First Spine and Rehab of Lowell and Future Management Corporation.

According to the suit, the Giampas and other chiropractors in the Lowell clinic allegedly "engaged in a scheme to defraud insurance companies, including Encompass Insurance by submitting false, fraudulent and inflated chiropractic invoices containing excessive charges" and "demanding payment for excessive and/or non-existent and/or unwarranted chiropractic treatment through their chiropractic clinic."

Court documents say the Giampas are chiropractors who operate First Spine and Rehab in Lowell as well as more than 60 other clinics throughout New England and across the United States, including Florida, Oklahoma, Connecticut, Rhode Island, South Carolina, New Hampshire, Pennsylvania, Illinois and Virginia.

Special Investigators for Allstate Insurance Company, which operates Encompass Insurance, led the investigation. Encompass is represented by the law firm of Smith & Brink, P.C. in Quincy.

"Insurance fraud is not a victimless crime – it costs consumers thousands of dollars every year through higher premiums," said Edward Moran, Allstate assistant vice-president for Special Investigations. "Encompass and the other Allstate companies are committed to providing competitively priced products to our customers -- fighting fraud is essential to that commitment."

# NEWS

page 2

Since 2001, Allstate companies have received more than $55 million in court judgments. Moran states, "these judgments against criminals range from individuals to sophisticated organized crime syndicates." In addition to financial victories, Allstate and Encompass SIU work closely with local, state, and federal authorities for criminal investigation and prosecution – resulting in arrests around the country, taking criminals off the street.

Insurance industry estimates put the overall yearly price tag for fraud at more than $80 billion dollars.

Encompass Insurance is a division of The Allstate Corporation (NYSE: ALL) devoted exclusively to independent agents, selling automobile, homeowner and related insurance to one million customers through a network of more than 2,700 independent insurance agents. Allstate is the exclusive administrator of Encompass personal automobile and home insurance policies issued by the insurance affiliates of CNA Financial Corporation.

The Allstate Corporation is the nation's largest publicly held personal lines insurer. Widely known through the "You're In Good Hands With Allstate®" slogan, Allstate helps individuals in approximately 17 million households protect what they have today and better prepare for tomorrow through approximately 13,600 exclusive agencies and financial professionals in the U.S. and Canada. Customers can access Allstate products and services such as auto insurance and homeowners insurance through Allstate agencies, or in select states at allstate.com and 1-800 Allstate®. Encompass℠ and Deerbrook® Insurance brand property and casualty products are sold exclusively through independent agents. Allstate Financial Group provides life insurance, supplemental accident and health insurance, annuity, banking and retirement products designed for individual, institutional and worksite customers that are distributed through Allstate agencies, independent agencies, financial institutions and broker-dealers.

###