## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ENCOMPASS INSURANCE COMPANY OF MASSACHUSETTS, )<br><br>)<br>Plaintiff/Counterclaim Defendant, )<br><br>)<br>v. )<br><br>)<br>JOSEPH D. GIAMPA, FREDERICK T. )<br>GIAMPA, ADVANCED SPINE CENTERS, )<br>INC. d/b/a FIRST SPINE REHAB, FUTURE )<br>MANAGEMENT CORPORATION, FUTURE )<br>MANAGEMENT BUSINESS TRUST, )<br>EDWARD KENNEDY, BRIAN J. )<br>CULLINEY, D.C., and JENNIFER )<br>MCCONNELL, D.C., )<br><br>)<br>Defendants/Counterclaim Plaintiffs. )<br>) | CIVIL ACTION NO.  05-11693 RCL |

## PLAINTIFF/COUNTERCLAIM DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS OMNIBUS MOTION TO DISMISS DEFENDANTS/COUNTERCLAIM PLAINTIFFS' COUNTERCLAIMS

Respectfully submitted,

ENCOMPASS INSURANCE COMPANY OF
MASSACHUSETTS

By its Attorneys,


Kevin J. Lesinski (BBO #554140)
Jay B Kesten (BBO #655634)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:     (617) 946-4800
Telecopier:    (617) 946-4801

Dated:  April 26, 2007

## TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ............................................................................................................................3

I.    DEFENDANTS' COUNTERCLAIMS ARE ALL BARRED BY THE
      ABSOLUTE LITIGATION PRIVILEGE. .............................................................................3

      A.    Encompass' Issuance Of The Press Release Falls Well
            Within The Scope of Massachusetts' Litigation Privilege. ....................................3

      B.    The Authority Cited By Defendants Does Not Support
            Their Position.........................................................................................................7

II.   THE COUNTERCLAIMANTS LACK STANDING TO BRING
      THEIR LANHAM ACT CLAIM. .......................................................................................9

      A.    The Express Purpose of the Lanham Act is to Remedy
            Unfair Competition. ..............................................................................................10

      B.    Competitive Injury Is A Necessary Prerequisite To Plaintiffs'
            False Advertising Claim. .......................................................................................11

III.  THE COUNTERCLAIMANTS HAVE STILL FAILED TO STATE
      A CLAIM FOR DEFAMATION OR TORTIOUS INTERFERENCE..........................................16

      A.    Defendants' Defamation Claims Cannot Be Saved. ..............................................16

            1.    The Press Release Contains No False Statements. ....................................16

            2.    Defendants Have Not Satisfied Their Burden Of Pleading
                  That Encompass Was At Fault...................................................................18

      B.    Defendants Have Not Properly Plead Their Tortious
            Interference Claims................................................................................................19

CONCLUSION.........................................................................................................................21

# TABLE OF AUTHORITIES

## CASES

Page(s)

Alphamed Pharms. Corp. v. Arriva Pharms., Inc.,
    391 F. Supp. 2d 1148 (S.D. Fla. 2005) ...........................................................................12

Andresen v. Diorio,
    349 F.3d 8 (1st Cir. 2003) ..............................................................................................18

Asay v. Hallmark Cards, Inc.,
    594 F.2d 692 (8th Cir. 1979) ...........................................................................................9

Assoc. General Contractors of California, Inc. v. California State Council of Carpenters,
    459 U.S. 519 (1983)........................................................................................................12

Blanchette v. Cataldo,
    734 F.2d 869 (1st Cir. 1984)............................................................................................4

Boxcar Media, LLC v. Redneckjunk, LLC,
    345 F. Supp. 2d 76 (D. Mass 2004) ...............................................................................19

Burke v. Town of Walpole,
    2003 WL 23327539 (D. Mass. Aug. 5, 2004) ................................................................16

Cashmere & Camel Hair Manufacturers Institute v. Saks Fifth Avenue,
    284 F.3d 302 (1st Cir. 2002).............................................................................13, 14, 15

Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.,
    165 F.3d 221 (3d Cir. 1998)......................................................................................11, 12

Davidson v. Cao,
    211 F. Supp. 2d 264 (D. Mass. 2002) ..................................................................6, 7, 8, 9

Educadores Puertoriquenos En Acci On v. Hernandez,
    367 F.3d 61 (1st Cir. 2004)............................................................................................18

Ford v. NYLCare Health Plans of the Gulf Coast, Inc.,
    301 F.3d 329 (5th Cir. 2002) .........................................................................................12

Frazier v. Bailey,
    957 F.2d 920 (1st Cir. 1992)............................................................................................9

Friedman v. Boston Broadcasters, Inc.,
    402 Mass. 376 (1988) ....................................................................................................17

BO1 15840902.3

Gillette Co. v. Norelco Consumer Prods. Co.,
 946 F. Supp. 115 (D. Mass. 1996) ................................................................13

Grossman v. Perry,
 1999 WL 1318984 (Mass. Super. Apr. 15, 1999) ....................................5, 6, 8

H.B. Halicki v. United Artists Communications, Inc.,
 812 F.2d 1213 (9th Cir. 1987) ...........................................................10, 11, 14

Hampshire Paper Corp. v. Highland Supply Corp.,
 2002 WL 31114120 (D. N.H. Sep. 23, 2002) ...........................................11, 13

Hoar v. Wood,
 3 Metcalf 193 (Mass. 1841) ...................................................................3

Jack Russell Terrier Network of Northern California v. American Kennel Club, Inc.,
 407 F.3d 1027 (9th Cir. 2005) ...............................................................12

L.S. Heath & Son, Inc. v. AT&T Information Sys., Inc.,
 9 F.3d 561 (7th Cir. 1993) ....................................................................12

Leavitt v. Bickerton,
 855 F. Supp. 455 (D. Mass. 1994) .......................................................3, 4, 9

Lucas ex rel. Lucas v. Newton Wellesley Hosp.,
 2001 WL 834618 (Mass. Super. July 20, 2001) ...................................9

Maday v. Toll Bros. Inc.,
 72 F. Supp. 2d 599 (E.D. Va. 1999) ....................................................11

Made In The USA Foundation v. Phillips Foods, Inc.,
 365 F.3d 278 (4th Cir. 2004) ...........................................................11, 12

Milford Power Ltd. P'ship v. New England Power Co.,
 918 F. Supp. 471 (D. Mass. 1996) ......................................................6, 8

Motzkin v. Trustees of Boston University,
 938 F. Supp. 983 (D. Mass. 1996) .......................................................5, 6

New Colt Holding Corp. v. RJG Holdings of Florida,
 312 F. Supp. 2d 195 (D. Conn. 2004) ..................................................15

Neyvas v. Morgan,
 309 F. Supp. 2d 673 (E.D. Pa. 2004) ...................................................12

- iii -

Paul v. Davis,
424 U.S. 693 (1976)................................................................................................17

Penobscot Indian Nation v. Key Bank of Maine,
112 F.3d 538 (1st Cir. 1997).................................................................................9

Pignons S.A. de Mecanique de Precision v. Polaroid Corp.,
657 F.2d 482 (1st Cir. 1983)...............................................................................13

Podiatrist Assoc., Inc. v. LA Cruz Azul De Puerto Rico, Inc.,
332 F.3d 6 (1st Cir. 2003)............................................................12, 13, 14, 16

Powell v. Stevens,
2004 WL 1047451 (Mass. Super. May 3, 2004)..................................3, 4, 5, 6, 8

Proctor & Gamble Co. v. Amway Corp.,
242 F.3d 539 (5th Cir. 2001) ..............................................................................11

Rosenfeld v. W.B. Saunders,
728 F. Supp. 236 (S.D.N.Y. 1990)......................................................................16

Sedona Corp. v. Ladenburg Thalmann & Co, Inc.,
2005 WL 1902780 (S.D.N.Y Aug. 9, 2005)........................................................19

Seven-Up Co. v. Coca-Cola Co.,
86 F.3d 1379 (5th Cir. 1996) ...............................................................................12

Spencer Companies v. Chase Manhatten Bank, N.A.,
81 B.R. 194 (D. Mass 1987)................................................................................20

Sriberg v. Raymond,
370 Mass. 105 (1974) ...........................................................................................3

Stanfield v. Osborne Indus., Inc.,
52 F.3d 867 (10th Cir. 1995) ...............................................................................12

Storage Technology Corp. v. Custom Hardware Engineering & Consulting, Ltd.,
2006 WL 1766434 (D. Mass. Jun. 28, 2006)......................................................13

Sullivan v. Birmingham,
11 Mass. App. Ct. 359 (1981)...........................................................................5, 9

Superior Constr. Inc. v. Linnerooth,
103 N.M. 716 (1986) .............................................................................................4

- iv -

Telecon Int'l America, Ltd. v. AT&T Corp.,
    280 F.3d 175 (2d Cir. 2001)...........................................................................12

The Gentle Wind Project v. Garvey,
    2004 WL 1946448 (D. Me. Sept. 2, 2004) ...........................................13, 14

Thorn v. Reliance Van Company, Inc.,
    736 F.2d 929 (3d Cir. 1984)..........................................................................16

Town & Country Motors, Inc. v. Bill Dodge Auto Group, Inc.,
    115 F. Supp. 2d 31 (D. Me 2000) ..........................................................13, 14

Trump Taj Mahal Assoc. v. Construzioni Aeronautiche Giovanni Agust, S.p.A.,
    761 F. Supp. 1143 (D.N.J. 1991) ..................................................................19

Waits v. Frito-Lay, Inc.,
    978 F.2d 1093 (9th Cir. 1992) .......................................................................11

Wilchcombe v. Teevee Toons, Inc.,
    2007 WL 294247 (N.D. Ga. Jan. 26, 2007).................................................12

Zortman v. Bildman,
    1999 WL 1318959 (Mass. Super. Mar. 5, 1999) ............................................4

## MISCELLANEOUS

Callmann, Unfair Competition, Trademarks and Monopolies,
    § 209 (1981 ed., 1986 supp.) ...................................................................….10

18 James Wm. Moore et al., Moore's Federal Practice, ¶ 134.02[1][d] (3d ed. 1999) ..................7

Plaintiff/Counterclaim Defendant Encompass Insurance Company of Massachusetts ("Encompass" or "Plaintiff") respectfully submits this reply memorandum of law in further support of its motion to dismiss all claims against it pursuant to Rules 8, 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Procedure.[1]

## PRELIMINARY STATEMENT

Defendants/Counterclaimants' ("Defendants") Opposition makes clear that all of their claims are premised exclusively on the fact that after Encompass filed suit in this case, it issued a plain, straightforward Press Release that: (a) stated that it had filed suit against defendants; (b) itemized the claims in the case and the approximate amount of damages it was seeking; and (c) quoted certain allegations, verbatim, from the publicly filed complaint.  The Press Release also contained a boilerplate statement (which did not refer to or in any other way implicate the Defendants in this case) that Encompass was committed to investigating and prosecuting insurance fraud, and illustrating Encompass' recent successes in that regard.  As to Defendants, the Press Release contained no statements of fact that were not already public by way of the complaint, nor did the Press Release make any editorial comments on the merits of Encompass' claims.  Accordingly, the Press Release is protected by the absolute litigation privilege and Defendants claims are barred.

Defendants' attempts to rebut this argument fail as a matter of law.  Because the Press Release is purely derivative of the admittedly privileged allegations in Encompass' complaint, the true gravamen of Defendants' claims is that Encompass' claims themselves are frivolous and/or that the suit was filed in bad faith.  However, as illustrated in Encompass' opening brief,

---

[1] References herein to Encompass' Memorandum of Law in Support of its Omnibus Motion to Dismiss Defendants/Counterclaim Plaintiffs' Counterclaims shall be in the form "Pl. Mem. at ___."  References herein to the Joint Opposition of Defendants/Counterclaim Plaintiffs to Plaintiff/Counterclaim Defendant's Omnibus Motion to Dismiss Counterclaims shall be in the form "Opp. Br. at ___."

the Counterclaims are devoid of any facts whatsoever that would support Defendants' baseless assertions. To the contrary, not only were Encompass' claims filed in good faith, this Court has already found that Encompass has demonstrated a likelihood of success on the merits of their claims. See Pl. Mem. at 1-2. As a result of this glaring defect in Defendants' pleadings, the case law cited by Defendants in support of their argument that the absolute privilege should not apply is easily distinguished.

Wholly apart from, and in addition to, the litigation privilege, each of Defendants' claims fails for independent reasons. Defendants' Lanham Act claims must be dismissed for failure to plead any competitive injury (because there is none) and therefore Defendants lack standing to bring such claims. Defendants' attempts to argue that there is no such threshold requirement ignores the mountain of precedent in this Circuit and every other circuit to have addressed the issue. Indeed, as illustrated below, Defendants appear to have confused the issue of prudential standing (which requires a putative plaintiff to plead a competitive injury) with the substantive elements of a Lanham Act false advertising claim.

Defendants' defamation claims fail because they have not – and cannot – plead that any of the statements in the Press Release are false, or that Encompass was negligent (or otherwise at fault) in issuing the Press Release.[2]

Finally, Defendants' tortious interference claims fail because although they that Encompass interfered with "thousands" of their business relationships with patients and other insurers, Defendants do not identify a single one in their Counterclaims, nor do they allege – as they must – that Encompass knew of the relationships at issue.

---

[2] This defect is also fatal to Defendants' Lanham Act claim.

## ARGUMENT

### I.     DEFENDANTS' COUNTERCLAIMS ARE ALL BARRED BY THE ABSOLUTE LITIGATION PRIVILEGE.

#### A.     Encompass' Issuance Of The Press Release Falls Well Within The Scope of Massachusetts' Litigation Privilege.

The contours of the litigation privilege under Massachusetts law are well settled.  The privilege, which is an absolute bar to civil liability, attaches to any out-of-court statements made by a party so long as they are relevant or pertinent to a judicial proceeding.  See, e.g., Powell v. Stevens, 2004 WL 1047451, at *6 (Mass. Super. May 3, 2004) ("An absolute privilege provides a complete defense … so long as the challenged remarks are relevant or pertinent to the judicial proceedings."); Sriberg v. Raymond, 370 Mass. 105, 108 (1974) ("statements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding are absolutely privileged provided such statements relate to that proceeding."); Leavitt v. Bickerton, 855 F.Supp. 455, 458 (D. Mass. 1994) ("the privilege applies to statements made outside the courtroom.").[3]

Defendants do not dispute the foregoing statement of the law, nor do they argue that the Press Release (which merely states that suit had been filed, enumerates the parties and claims, and quotes briefly from the allegations of the complaint without editorial comment as to the merits of those claims) is not related to, relevant to, or pertinent to this case.  See Opp. Br. at 5-7.  Instead, Defendants attempt to save their claims by arguing that this Court should adopt a "bright line exception to the litigation privilege" where the admittedly privileged and public allegations of a complaint are subsequently republished to the media.  Id. at 6-7.  This argument should be

---

[3] This doctrine has existed, virtually unchanged, since the Supreme Judicial Court's decision in Hoar v. Wood, 3 Metcalf 193, 197 (Mass. 1841) ("[t]he question, therefore, in such cases is not whether the words spoken are true, not whether they are actionable in themselves, but whether they were spoken in the course of judicial proceedings, and whether they were relevant and pertinent to the cause or subject of inquiry.")

rejected as improperly narrowing Massachusetts law and because none of the cases cited by Defendants mandates this novel approach.

As a threshold matter, this Court, the First Circuit, and Massachusetts state courts have all consistently held that the requirements of relevance or pertinence must be broadly construed. See, e.g., Blanchette v. Cataldo, 734 F.2d 869, 877 (1st Cir. 1984) ("[t]he statements must be 'pertinent to the proceedings' to come within the privilege, but this requirement is to be broadly construed."); Leavitt, 855 F.Supp. at 457 (applying Massachusetts law and noting with approval the "broad standard of relevancy"); Zortman v. Bildman, 1999 WL 1318959, at *10 (Mass. Super. Mar. 5, 1999) (holding that requirement of relevancy or pertinency is broadly construed). Moreover, like many other jurisdictions, Massachusetts has recently acknowledged the policy that the privilege should attach to a republication, without more, of allegations filed in a public action.  See Powel, 2004 WL 1047451, at *8 (citing cases).

These principles are reflected in the three decisions most closely analogous to the Counterclaims at bar.  In Powell, the Court dismissed a slander of title claim, holding that the filing of a *lis pendens* memorandum detailing the allegations of a publicly filed complaint – like the Press Release, a document putting third parties on notice of the claims in the case – was absolutely privileged.  Powell, 2004 WL 1047451, at *6-9.  Noting that the issue was a matter of first impression, the Court was persuaded by cases from other jurisdictions holding that the republication of pleadings should be subject to the absolute litigation privilege.  Id. at 6-7 ("[i]t is therefore merely a republication of the pleadings filed in the pending judicial proceeding and it should enjoy the same absolute privilege accorded those proceedings.") (citing Superior Constr. Inc. v. Linnerooth, 103 N.M. 716, 719-20 (1986)).  In so holding, the Court rejected the argument – identical to Defendants' here – that the filing of a *lis pendens* was not "necessary or

relevant" to the underlying judicial proceeding because it was an affirmative and optional private

act.  Id.  Recognizing that in cases of simple republication, the statements at issue are wholly

derivative of the allegations of the underlying pleadings, the Powell Court bolstered its

conclusion by noting that aggrieved parties could still file abuse of process and/or malicious

prosecution claims in appropriate circumstances.  Id., at *9-10.[4]

In Grossman v. Perry, 1999 WL 1318984 (Mass. Super. Apr. 15, 1999), the Court

dismissed an abuse of process claim where the plaintiff alleged that the defendants' primary

motivation for serving their complaint was to garner publicity unfavorable to plaintiff, and that

"before the complaint was even served, [Defendant] delivered a copy to the *Nantucket Inquirer*

*and Mirror* so that a front-page article would appear in that newspaper reporting its allegations."

Id., at *1 (emphasis added).  The Grossman Court explicitly refused to set forth a "bright-line"

test, but held that the impugned conduct was protected by the privilege.  Id. ("[w]e may despair

of drawing a line with mathematical exactness, but we have no doubt that the present case is well

on the side of privilege.").  The Court premised its conclusion, in part, on an acknowledgment of

the pre-existing public nature of the statements at issue, stating that:

> a plaintiff does not commit an abuse of process by publicizing the allegations in
> the complaint or by providing the complaint to a newspaper … Since all
> complaints, unless impounded, are available for review by the public, the hope for
> publicity is not some ulterior purpose for which [process] was not designed or
> intended.

Id.

Finally, in Motzkin v. Trustees of Boston University, 938 F.Supp. 983 (D. Mass. 1996),

this Court dismissed plaintiff's claim that "[Defendant] defamed [Plaintiff] … by filing as a

public record in the Court confidential materials not subject to impoundment and by leaking

---

[4] Accord Sullivan v. Birmingham, 11 Mass. App. Ct. 359, 368 n. 8 (1981) (noting that there is sound logic for
refusing to recognize the absolute privilege as barring an action for malicious prosecution or abuse of process).

distorted information to the press." Id. at 1000 (dismissing claim based on absolute litigation privilege).

Ultimately, these cases teach that there is no "bright-line" exception to the litigation privilege in cases where, without more, a party causes the republication of allegations in publicly available pleadings. Indeed, this conclusion is confirmed by one of the cases cited by Defendants, in which the Court explicitly "decline[d] to make a definitive legal ruling as to whether either privilege is applicable to [counter-defendant] Milford's news release…" Milford Power Ltd. P'ship v. New England Power Co., 918 F.Supp. 471, 486 (D. Mass. 1996).[5] On the contrary, as illustrated by Powell and Milford, an aggrieved party is not without remedy if – unlike Defendants here – they can plead facts that would bring a party's conduct within the realm of an abuse of process and thereby outside the absolute privilege. Compare Milford, 918 F.Supp. at 486-7 (declining to set forth a bright-line rule, but denying motion to dismiss where complaint alleged facts demonstrating that Milford had published news release with an intent to extort, thus taking republication outside privilege and also stating claim for abuse of process) with Grossman, 1999 WL 1318984, at *1 (holding privilege applicable where complaint failed to state claim for abuse of process). Not only have Defendants failed to plead any facts that would bring this case into the same realm as Davidson, infra and Milford, they amended their counterclaims to retract a previously filed abuse of process claim in light of the fact that each and every claim asserted by Encompass survived this Court's scrutiny under Rules 9(b) and 12(b)(6). See Pl. Mem. at 3-4, n. 4.[6] Accordingly, Defendants' claims should be barred by the privilege.

---

[5] In Milford, defendants/counterclaimants alleged that prior to filing suit, plaintiffs' vice-president had written a memo outlining the "hardball advantages" available to plaintiff and threatening to "make this [dispute] a public relations nightmare." Milford, 918 F.Supp. at 486.

[6] As previously noted, in connection with Encompass' motions for attachments of real property and by trustee process, this Court has also found that Encompass has demonstrated a reasonable likelihood of success on the merits of its claims. Pl. Mem. at 2 and n.3.

BO1 15840902.3

**B.     The Authority Cited By Defendants Does Not Support Their Position.**

Defendants do not attempt to rebut or distinguish the holdings of the cases cited above, but instead aver that case at bar is controlled by this Court's decision in <u>Davidson v. Cao</u>, 211 F.Supp. 2d 264 (D. Mass. 2002).  Opp. Br. at 5-7.  Defendants' reliance on that case, however, is misplaced because the alleged circumstances in <u>Davidson</u> could not be farther from the allegations in the instant case.[7]  In <u>Davidson</u>, during pre-litigation attempts to settle the parties' patent inventorship disputes, plaintiff Abbott Laboratories ("Abbott") threatened to "publicly embarrass and humiliate the [defendant] individual scientists and Children's Hospital" if their demands were not met.  <u>Davidson</u>, 211 F.Supp. 2d at 272, 284-5, 289.[8]  When defendants did not accede to these demands, plaintiffs publicly filed a complaint alleging defendants had breached their contract with plaintiffs.  However, the purportedly binding "contract" that plaintiffs attached to their complaint was in fact an altered version of a draft agreement that plaintiffs had redacted to remove defendants' counsel's revisions and mark-ups, and which had never been delivered to plaintiffs by defendants at the time it was purportedly executed in 1995.  <u>Id.</u> at 268-9.[9]  Plaintiffs then not only distributed the complaint (along with the improperly redacted contract) to the media, but also <u>discussed the allegations in the lawsuit with the press.</u>  <u>Id.</u> at 272.[10]

_____

[7] In any event, as noted in <u>Davidson</u>, the application of the litigation privilege is governed by Massachusetts, not federal, law.  <u>Id.</u>, at 275 n. 19.  Thus, the decision in that case is not binding on this Court.  <u>See</u>, <u>e.g.</u>, 18 James Wm. Moore et al., *Moore's Federal Practice* ¶ 134.02[1][d] (3d ed. 1999) (decision of federal district court judge is not binding precedent in same judicial district).

[8] It was also alleged that Abbott fraudulently concealed the true inventor of the patent from the Patent and Trademark Office, and then attempted to use that claim to force defendants, by threats of public embarrassment and damage to their reputations, to name plaintiff Davidson as an inventor on the patent. <u>Davidson</u>, 211 F.Supp. 2d at 284.

[9] Indeed, plaintiffs had only received a copy of the marked-up agreement during subsequent confidential settlement discussions in 1998, and their attachment of that document (and others) to the publicly filed complaint breached the parties' confidentiality agreements.  <u>Davidson</u>, 211 F.Supp. 2d at 271-2, 279.

[10] While the <u>Davidson</u> decision does not state, with specificity, the nature of those discussions between plaintiffs and the media, it is fair to presume that those conversations strayed beyond merely repeating the allegations of the complaint verbatim.

Based on these allegations and the documents in the record, the <u>Davidson</u> court not only refused to dismiss defendants' defamation counterclaims, but also upheld their abuse of process claim (<u>Id</u>. at 287-9) and virtually invited defendants to conduct discovery and then file a motion to dismiss plaintiffs' claims for fraud on the court. <u>Id.</u> at 278-80 ("[t]he fact that a motion is the proper means to raise the [fraud on the court] argument, however, does not detract from the merits of the CMCC defendants' contentions … [t]he facts set forth in the counterclaim, if true, fall within the range of conduct which, in this circuit, may amount to a fraud on the court.").

The allegations of the Counterclaims at bar do not even come close to the egregious misconduct (both pre-suit and during the initiation of litigation) at issue in <u>Davidson</u>. Aside from the conclusory "information and belief" averment that Encompass had no good faith basis upon which to bring this lawsuit (<u>see</u>, <u>e.g.</u>, Giampa Counterclaim, ¶ 12) – which has been rebutted by this Court's own holdings on Defendants' motion to dismiss and Encompass' applications for attachments – no similar facts have been pled here. Moreover, unlike <u>Davidson</u>, there is no allegation here that Encompass actually discussed the lawsuit with news media, or took any action whatsoever beyond issuing the Press Release.

Finally, <u>Davidson</u> is comfortably within the bounds of the Massachusetts authority holding that for a republication to fall outside the scope of the litigation privilege, the complainant must allege conduct akin to an abuse of process, such as plaintiffs' actions in <u>Davidson</u> and <u>Milford</u>, but unlike the conduct alleged in this case. <u>See</u>, <u>e.g.</u>, <u>Powell</u>, 2004 WL 1047451, at *9-10; <u>Grossman</u> 1999 WL 1318984, at *1. Defendants have cited no authority whatsoever to support their postulation that merely republishing the admittedly privileged allegations of a complaint that withstood motions to dismiss pursuant to Rules 9(b) and 12(b)(6),

standing alone, falls outside the scope of the litigation privilege.[11]  The remainder of the cases

cited by Defendants are simply inapposite, as none of them addresses the issue at bar – *i.e.*,

whether the issuance of a Press Release detailing the allegations of a complaint falls outside the

litigation privilege.[12]  Accordingly, and for the reasons set forth in Encompass' opening brief,

this Court should hold that the statements in the Press Release are protected by the litigation

privilege and dismiss the Counterclaims in their entirety.  See <u>Lucas ex rel. Lucas v. Newton</u>

<u>Wellesley Hosp.</u>, 2001 WL 834618, at *3 (Mass. Super. July 20, 2001) (absolute privilege is a

complete defense not only to claims of libel, but to any civil liability).

## II.    THE COUNTERCLAIMANTS LACK STANDING TO BRING THEIR LANHAM ACT CLAIM.

As set forth in Plaintiffs' opening brief, Defendants lack standing to bring their Lanham

Act false advertising claims because they have failed to satisfy the threshold requirement of

pleading a competitive injury.  Pl. Mem. at 7-9.  Defendants concede that no such allegation was

pled and, further, do not aver in their Opposition that they could make any such allegation.[13]  See

Giampa and Culliney Counterclaims, *passim*; Opp. Br. at 12-14.  Instead, Defendants attempt to

save their Lanham Act claims by requesting that this Court apply a novel theory of law that runs

---

[11] To the extent that Defendants argue that <u>Davidson</u> stands for the proposition that <u>any</u> republication of the allegations in a complaint gives rise to a defamation claim, Encompass respectfully submits that this Court should not adopt that holding.  A close reading of the analysis in <u>Davidson</u> illustrates that the Court's resolution of the defamation claim turns in large part on language from <u>Sullivan v. Birmingham</u>, 11 Mass. App. Ct. 359 (1981).  See <u>Davidson</u>, 211 F.Supp. 2d at 275.  However, the citation to <u>Sullivan</u> addressing communications to the media is: (1) *dicta*, insofar as <u>Sullivan</u> concerned *ad damnum* clauses (not republication of publicly filed allegations to the news media) and, indeed, concluded that the litigation privilege barred suit in that context; and (2) merely a block-quote from the Eighth Circuit's decision in <u>Asay v. Hallmark Cards, Inc.</u>, 594 F.2d 692, 698 (8th Cir. 1979), which this Court has explicitly rejected, holding that it "does not jibe with Massachusetts' broader interpretation" of the litigation privilege.  See <u>Leavitt</u>, 855 F.Supp. at 457.

[12] In fact, in both <u>Sullivan</u>, *supra* and <u>Frazier v. Bailey</u>, 957 F.2d 920 (1st Cir. 1992), the court held that the absolute privilege <u>did</u> apply to the factual circumstances at bar.  The <u>Penobscot Indian Nation v. Key Bank of Maine</u>, 112 F.3d 538 (1st Cir. 1997) decision is distinguishable because: (1) it involved the application of Maine, not Massachusetts law; and (2) is premised in part on the fact that the privilege extends only to parties, and the putative speaker was not a party to the litigation at issue.  <u>Id.</u> at 560-1.

[13] As noted in Encompass' opening brief, Defendants (chiropractors and owners of chiropractic clinics) do not compete with Encompass (an insurance company) in any relevant market, either directly or indirectly.  See Pl. Mem. at 8-9.

- 9 -

contrary to the holdings of virtually every federal court to address this issue.  Specifically,

Defendants argue that neither the Lanham Act itself, nor First Circuit jurisprudence requires a

threshold showing of competitive injury.  Opp. Br. at 12.  Defendants' argument, which confuses

the issue of prudential standing with the substantive elements of a Lanham Act claim, fails as a

matter of law for two reasons: (i) the express language of the Lanham Act <u>does</u> require

competition; and (ii) the federal courts, including those in the First Circuit, have consistently

required a showing of competitive injury as a necessary predicate to a false advertising claim

under the Lanham Act.

### A.    The Express Purpose of the Lanham Act is to Remedy Unfair Competition.

The Lanham Act is not intended to address all acts of false advertising.  Indeed, contrary

to Defendants' argument, the scope of potential claimants under the Lanham Act is limited by

the express language of the act itself.  As the Ninth Circuit explained in <u>H.B. Halicki v. United</u>

<u>Artists Communications, Inc.</u>, 812 F.2d 1213 (9th Cir. 1987):

> [t]he final section of the Lanham Act – in a passage unusual, and extraordinarily
> helpful, in declaring in so many words the intent of Congress – states that 'the
> intent of this chapter is to regulate commerce within the control of Congress … <u>to</u>
> <u>protect persons engaged in such commerce against unfair competition.</u>'  We quote
> the operative language [from 15 U.S.C. §1127].  The rest of the declaration of
> intent relates to the use of trademarks and is not relevant here.  The statute is
> directed against unfair competition.  To be actionable, <u>conduct must not only be</u>
> <u>unfair but must in some discernible way be competitive</u>."

<u>Id.</u> at 1214 (emphasis added).  In reaching this holding, the Ninth Circuit cautioned that "[i]f

Section 43(a) is not confined to injury to a competitor … it becomes a federal statute creating the

tort of misrepresentation … Broadening the [Lanham] Act from unfair competition to unfair

trade 'is equivalent' to the complete dilution of the concept of unfair competition."  <u>Id.</u> (citing

Callmann, <u>Unfair Competition, Trademarks and Monopolies</u>, § 209 (1981 ed., 1986 supp.)).

Citing to 15 U.S.C. § 1125(a) [Lanham Act, § 43(a)], which sets forth, *inter alia*, the elements of a false advertising claim Defendants argue that "express language of the Lanham Act … requires no such competition." Opp. Br. at 12. However, this 'plain meaning' argument ignores both the explicit language of § 1127 and the holding of <u>Halicki</u> (and numerous other cases) concluding that § 1127 limits imposes a prudential standing threshold on plaintiffs seeking to bring claims under § 1125(a). <u>See</u>, <u>e.g.</u>, <u>Waits v. Frito-Lay, Inc.</u>, 978 F.2d 1093, 1109 (9th Cir. 1992) (holding that when a Lanham Act claim concerns false advertising alone and not trademark misuse, "it is actionable under section 43(a) only insofar as the Lanham Act's other purpose preventing 'unfair competition' is served"); <u>Made In The USA Foundation v. Phillips Foods, Inc.</u>, 365 F.3d 278, 279-81 (4th Cir. 2004) (holding that the language of 15 U.S.C. §1127 limits the scope of claims contemplated by §43(a)); <u>Maday v. Toll Bros. Inc.</u>, 72 F.Supp. 2d 599 (E.D. Va. 1999) (rejecting argument that focused only on language of §1125, to the exclusion of §1127).[14]

### B.    Competitive Injury Is A Necessary Prerequisite To Plaintiffs' False Advertising Claim.

Based on <u>Halicki</u>, or similar statutory analysis, virtually every court to address this issue has held that competitive injury is the touchstone of Lanham Act false advertising claims. Indeed, the majority of the circuits – including the First, Second, Fourth, Fifth, Seventh, Ninth and Tenth – have adopted a bright-line test for prudential standing, requiring that a plaintiff: (i)

---

[14] Put differently, federal courts have consistently held that Section 43(a) of the Lanham Act does not negate the prudential standing inquiry, . <u>See</u>, <u>e.g.</u>, <u>Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.</u>, 165 F.3d 221, 230 (3d Cir. 1998); <u>Proctor & Gamble Co. v. Amway Corp.</u>, 242 F.3d 539, 562 (5th Cir. 2001); <u>Hampshire Paper Corp. v. Highland Supply Corp.</u>, 2002 WL 31114120, at *4 (D. N.H. Sep. 23, 2002) ("[t]o satisfy the standing requirement to maintain [a Section 1125(a)] claim, the plaintiff must allege commercial injury based upon a misrepresentation about a product, and also that the injury was 'competitive,' i.e., harmful to plaintiff's ability to compete with the defendant."). Defendants have cited no authority to the contrary.

be a competitor of the defendant; and (ii) allege a competitive injury.[15]  A minority of the circuits

have adopted a multi-factor test for standing derived from the antitrust standing doctrine

articulated by the Supreme Court in Assoc. General Contractors of California, Inc. v. California

State Council of Carpenters, 459 U.S. 519, 538-44 (1983).[16]  However, this alternative approach

is of no assistance to Defendants here, because the "essential inquiry [remains] whether, in light

of the competitive relationship between the parties, there is a sufficiently direct link between the

asserted injury and the alleged advertising."  Ford, 301 F.3d at 337-9 (affirming lack of standing

because although plaintiff "has suffered a commercial harm … his injury is simply not the

competitive harm that is protected by the Lanham Act.") (emphasis added).[17]

   As illustrated in Encompass' opening brief, the First Circuit adheres to the former bright-

line approach to prudential standing.  See Podiatrist Assoc., Inc. v. LA Cruz Azul De Puerto

Rico, Inc., 332 F.3d 6, 19 (1st Cir. 2003) (adopting a four-factor test for standing, including that

---

[15]   See, e.g., Telecon Int'l America, Ltd. v. AT&T Corp., 280 F.3d 175, 197 (2d Cir. 2001) ("[t]o have standing for a [Lanham Act] false advertising claim, the plaintiff must be a competitor of the defendant and allege a competitive injury."); Stanfield v. Osborne Indus., Inc., 52 F.3d 867, 873 (10th Cir. 1995) (same); Seven-Up Co. v. Coca-Cola Co., 86 F.3d 1379, 1384 (5th Cir. 1996) ("[i]n order for representations to constitute 'commercial advertising or promotion' under Section 43(a)(1)(B), they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff …"); L.S. Heath & Son, Inc. v. AT&T Information Sys., Inc., 9 F.3d 561, 575 (7th Cir. 1993) ("to have standing to allege a false advertising claim, however, the plaintiff must assert a discernible competitive injury.  Because Health is not in the computer business and thus is not a competitor of AT&T, Health does not have standing to raise the false advertising claim."); Jack Russell Terrier Network of Northern California v. American Kennel Club, Inc., 407 F.3d 1027, 1037 (9th Cir. 2005) ("for standing pursuant to the 'false advertising' prong of §43(a) … a plaintiff must show: (1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant.").  The Fourth Circuit appears to concur with this interpretation.  See Made In The USA Foundation, 365 F.3d at 281 (noting that "the Lanham Act is a private remedy [for a] commercial plaintiff who meets the burden of proving that its commercial interests have been harmed by a competitor's false advertising.") (internal quotations omitted)
[16]  See, e.g., Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc., 165 F.3d 221, 233-34 (3d Cir. 1998); Ford v. NYLCare Health Plans of the Gulf Coast, Inc., 301 F.3d 329, 337-9 (5th Cir. 2002) (Benavides J., concurring).
[17]  See also Conte Bros., 165 F.3d at 234 ("the focus of the Lanham Act is on commercial interests [that] have been harmed by a competitor's false advertising.") (internal quotations omitted); Wilchcombe v. Teevee Toons, Inc., 2007 WL 294247, at *7 (N.D. Ga. Jan. 26, 2007) ("The Lanham Act prohibits only those false or misleading statements that occur in the context of 'commercial advertising or promotion.'  To qualify as commercial advertising or promotion, the communication must be commercial speech by a defendant in commercial competition with plaintiff …").  Indeed, courts applying the multi-factor test have held that a lack of competition was dispositive. See, e.g., Alphamed Pharms. Corp. v. Arriva Pharms., Inc., 391 F.Supp. 2d 1148, 1162-4 (S.D. Fla. 2005) (denying standing under multi-factor test due to lack of competition between two pharmaceutical manufacturers are the products at issue); Neyvas v. Morgan, 309 F.Supp. 2d 673, 680 (E.D. Pa. 2004) (denying standing under multi-factor test because former patient and doctor were not commercial competitors).

the impugned representation must be made "by a speaker who is a competitor of the plaintiff in some line of trade or commerce").  District courts in this circuit, including this Court, agree that there are limitations on the scope of false advertising claims and have adopted the Podiatrist test to determine whether the speech at issue falls within the specific forms of communication targeted by the Lanham Act.  The Gentle Wind Project v. Garvey, 2004 WL 1946448, at *5-6 (D. Me. Sept. 2, 2004) (explicitly adopting the competition element of the Podiatrist test); Storage Technology Corp. v. Custom Hardware Engineering & Consulting, Ltd., 2006 WL 1766434, at *19 (D. Mass. Jun. 28, 2006) (adopting the multi-factor test set forth in Podiatrist) (internal quotations omitted).[18]

Defendants attempt to avoid this weighty authority by arguing that: (i) this Court should ignore the test articulated in Podiatrist as *dicta*; and (ii) that the decision in Cashmere & Camel Hair Manufacturers Institute v. Saks Fifth Avenue, 284 F.3d 302, 310-11 (1st Cir. 2002), supports their argument that commercial competition between plaintiff and defendant is not a prerequisite for a valid Lanham Act claim.  See Opp. Br. at 13-14.  These arguments both fail. First, the statement of the First Circuit in Podiatrist is not *dicta* given that the holding in that case was predicated on the test outlined by the Court.  Moreover, the Podiatrist court did not express any substantive misgivings about the competition prong of the test, but rather stated that "the phrase 'commercial advertising or promotion' [upon which the factors are based] appears in the text of the statute itself and all the courts agree on its approximate scope."  Podiatrist, 332 F.3d at

---

[18]  See also Gillette Co. v. Norelco Consumer Prods. Co., 946 F.Supp. 115, 133-4 (D. Mass. 1996) (pre-Podiatrist case applying a similar four-factor test where "[i]n order for representations to constitute 'commercial advertising or promotion' under Section 43(a)(1)(B), they must be … (2) by a defendant who is in commercial competition with plaintiff…"); Hampshire Paper Corp., 2002 WL 31114120, at *4; Town & Country Motors, Inc. v. Bill Dodge Auto Group, Inc. 115 F.Supp. 2d 31, 33-4 (D. Me 2000) (pre-Podiatrist case adopting test set forth by the Ninth and Fifth circuits requiring mandating competition as an element of standing); Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 493 (1st Cir. 1983) (affirming grant of summary judgment where plaintiff "offered no reason to believe that … Alpa cameras and Polaroid SX-70 Alpha cameras [the products at issue] compete with regard to quality of color reproduction.")

- 13 -

19 n. 3.[19] This conclusion is bolstered by the fact that Defendants' argument – that Podiatrist is not binding precedent – has already been considered and explicitly rejected. In Gentle Wind, the plaintiff argued – as Defendants do here – that "a claim under section 1125(a)(1)(B) [Lanham Act, § 43(a)] does not include competition … as an element." See Gentle Wind, 2004 WL 1946448, at *6. The Court rejected this argument, stating that plaintiffs were

> essentially arguing that this court should not follow Podiatrist. It is not the role of this court to disregard rulings of the First Circuit that are still in effect. Indeed, even before Podiatrist this court found that commercial competition between the parties is an element of a claim under section 1125(a)(1)(B).

Id. (citing Town & Country Motors, 115 F.Supp. 2d at 33-4).

Second, the Cashmere decision is of no assistance to Defendants. As a preliminary matter, Cashmere and Podiatrist are not at odds as to the scope of the Lanham Act. In fact, the Cashmere court prefaced its discussion by stating that the Lanham Act "was designed to protect consumers and competitors from any duplicitous advertising or packaging which results in unfair competition." Cashmere, 284 F.3d at 310 (emphasis added). As illustrated above, without competition, there can be no "unfair competition." See, e.g, Halicki, 812 F.2d at 1214.

Further, the issue of standing was simply not addressed in Cashmere. Indeed, it is apparent from that decision that the parties were competitors, and that the injury alleged was a competitive injury.[20] Specifically, the misconduct alleged in Cashmere was that defendant Harve Benard (a garment manufacturer) along with Saks and Filene's (retailers) were manufacturing and selling blazers labeled as being "A Luxurious Blend of Cashmere and Wool" containing 10% cashmere, when in fact those clothes contained only trace levels (less than 0.1%) of

---

[19] The fact that the claims at issue in Podiatrist were dismissed for failure to satisfy a different prong of the test does not, as Defendants would have it, render the remainder of that test dicta and Defendants have cited no cases in support of that novel argument.

[20] As noted above, Defendants' citation to the five-part test enunciated in Cashmere confuses the substantive elements of a Lanham Act false advertising claim with the independent prudential standing analysis, which was not addressed in Cashmere. See Opp. Br. at 13 (citing Cashmere, 284 F.3d at 310-11).

cashmere.  Id.  Plaintiffs (a trade association of cashmere manufacturers and a manufacturer of

cashmere-blend fabric) brought suit alleging, among other things, that the low cost of Harve

Benard's fabric – compared to the higher cost of legitimate 10% cashmere fabric – had caused

plaintiffs' customers to reduce their purchases "because they could not compete with Harve

Benard's lower-priced garments."  Id. at 318 (emphasis added).  Notably, in reversing the district

court's grant of summary judgment for defendants, the First Circuit found persuasive the

testimony of one of plaintiffs' sales agent, who stated that defendant "Harve Benard had an

unfair competitive advantage in fabric that is the major component of a garment … [B]y far and

away the largest component of the total cost of a garment is the fabric."  (emphasis added).

Defendants quote – out of context – a footnote from Cashmere stating that "the fact that

[plaintiffs and defendants] are in different markets does not affect the analysis, so long as

plaintiffs can prove a causal connection between the misrepresentations and the harm

sustaining."  Opp. Br. at 13 (citing Cashmere, 284 F.3d at 318 n. 16).  However, the referenced

"analysis" concerned causation not standing.  The allusion to "different markets" had nothing to

do with competition (as illustrated above, plaintiffs clearly alleged a competitive injury), but was

simply a recognition of the fact that even though the parties operated in different segments of the

cashmere industry – Harve Benard sells finished products, whereas plaintiff Packard sells fabric

to manufacturers – the issue of loss causation was still a material fact in dispute.  See Cashmere,

284 F.3d at 318 n. 16 (noting that defendants conceded  that "[i]f Packard were to demonstrate

that manufacturers refused to purchase its fabric because of defendants' false advertising and

concomitant low prices, causation would be proved.") (emphasis added).[21]

---

[21] The other cases cited by Defendants are similarly inapposite (see, e.g., New Colt Holding Corp. v. RJG Holdings of Florida, 312 F.Supp. 2d 195, 234 (D. Conn. 2004) (denying standing because statements at issue were made prior to defendant's entry into the relevant market, even though both parties were in the business of manufacturing revolvers)) and most, if not all, have been overtaken by subsequent rulings of the various Circuit court decisions

In sum, this Court should follow the binding precedent set forth in <u>Podiatrist</u> – consistent with the weight of authority in virtually every other circuit – which requires a putative Lanham Act complainant to plead competitive injury.  Because Defendants have not done so here, and concede that they cannot do so, this claim must be dismissed for lack of standing.

## III.    THE COUNTERCLAIMANTS HAVE STILL FAILED TO STATE A CLAIM FOR DEFAMATION OR TORTIOUS INTERFERENCE.

### A.    <u>Defendants' Defamation Claims Cannot Be Saved.</u>

As illustrated in Encompass' opening brief, Defendants' defamation claims are also defective in that they fail to allege: (i) that the Press Release was false or defamatory, and (ii) that Encompass acted recklessly or negligently in issuing the Press Release.  <u>See</u> Pl. Mem. at 10-12.  Defendants attempt to rebut the first argument by positing that the Press Release "grossly exaggerated" the actual amount in controversy.  Defendants attempt to side-step the second defect by asserting that to survive a motion to dismiss, they need only include the word "negligently" in their complaint.  Opp. Br. at 7-12.  As illustrated below, both of these arguments must fail.

### 1.    The Press Release Contains No False Statements.

Under Massachusetts law, a defamation claim is subject to dismissal if the complaint fails to plead the falsity of the allegedly defamatory statements.  <u>See</u>, <u>e.g.</u>, <u>Burke v. Town of Walpole</u>, 2003 WL 23327539, at *11 (D. Mass. Aug. 5, 2004).  Here, Defendants identified no such false statement in their Counterclaims, nor did they remedy this defect in their Opposition.  Instead,

---

cited herein.  Moreover, in both <u>Rosenfeld v. W.B. Saunders</u>, 728 F.Supp 236 (S.D.N.Y. 1990) and <u>Thorn v. Reliance Van Company, Inc.</u>, 736 F.2d 929 (3d Cir. 1984), plaintiffs were granted standing because they stood in the shoes of one of defendant's competitors.  <u>See</u>, <u>e.g.</u> <u>Rosenfeld</u>, 728 F.Supp at 242 ("as a result of their royalty interests, the Trusts have a pecuniary stake in the continued sales of <i>Reconstructive Plastic Surgery</i> that makes them a business competitor of defendants."); <u>Thorn</u>, 736 F.2d at 931-3 (granting standing to investor in bankrupt corporation allegedly injured by competitor).  Defendants cannot avail themselves of this line of authority because there is no allegation – and cannot be – that any of the defendants somehow stand in the shoes of a entity that competes with Encompass.

Defendants argue that the Press Release is somehow defamatory because it states that there is approximately $1.8 million at issue in this case and that this is a "gross exaggeration" of the amount in controversy. Opp. Br. at 8-10. Defendants' argument is premised exclusively on the fact that Encompass' complaint alleges that some of the fraudulent claims may have only be tainted "in part." Id. at 9. Defendants then perform a series of entirely speculative mathematical calculations and, coupled with certain conjectural assumptions, reach the conclusion that actual amount in controversy is $300,000. Id. at 10.[22]

Leaving aside the fact that Defendants' Counterclaims plead no facts that would support any of Defendants' surmise that the damage figure listed in Encompass' Complaint and Press Release is incorrect, this argument is wholly undermined by this Court's own rulings in this case. Specifically, and as noted in Encompass' opening brief, this Court not only granted Encompass' ex parte motions for attachments, but subsequently increased the amount of those attachments to nearly $1.9 million, confirming the approximate amount at issue in the instant case. Docket Nos. 11, 12, 35, 52 and 53; see also Pl. Mem. 1-2, 11.[23]

---

[22] Defendants also assert that the fact that Plaintiffs' damages may be trebled does not make this a $1.8 million fraud. However, Defendants cite no authority for this proposition, nor are any cases cited for the outlandish proposition that it was bad faith on Encompass' part to include the trebled amount (its actual potential recovery) in its Press Release. See Opp. Br. at 9-10. Accordingly, this Court should reject these unsupported arguments.

[23] Defendants also argue, for the first time, that the Press Release is defamatory because it imputes a crime to Defendants. Opp. Br. at 8. However, a plain reading of the Press Release, viewed in its entirety, illustrates that this assertion is baseless. As to Defendants, the Press Release merely states that Encompass has filed civil claims, and briefly recites the allegations of those claims. The remainder of the Press Release is a straightforward statement that Encompass is committed to investigating and prosecuting insurance fraud, and that Encompass has had success in doing so. See Pl. Mem., Exhibit 1. Defendants' assertion that the Press Release characterizes insurance fraud as a "crime" does not change this analysis because not only is that statement true, the tenuous link between that statement and defendants (if any) would amount to no more than a statement of opinion, which is not actionable. See, e.g., Friedman v. Boston Broadcasters, Inc., 402 Mass. 376, 379-80 (1988) (broadcast stating that parties were "insurance crooks engaged in insurance fraud and blatant and dramatic schemes … to rip-off Massachusetts policyholders" held to be statements of opinion). Moreover, unlike the cases cited by Defendants, the Press Release is devoid of any suggestion that Defendants have been arrested, charged with, or convicted of any crime. See, e.g., Paul v. Davis, 424 U.S. 693, 694-7 (1976) (police department circulating flyers listing "Active Shoplifters" along with a picture of defendant).

- 17 -

**2.    Defendants Have Not Satisfied Their
Burden Of Pleading That Encompass Was At Fault.**

In order to survive a motion to dismiss, Defendants must – but have not – plead facts to support an inference that Encompass either published the Press Release negligently, or with actual knowledge of its falsity.  Pl. Mem. at 10-12.  Defendants ignore the cases cited in Encompass' opening brief, and instead claim that all they must do is insert the word "negligently" into their counterclaims.  See Opp. Br. at 11-12.  This proposition is, however, undermined by binding First Circuit authority.  Specifically, in Andresen v. Diorio, 349 F.3d 8 (1st Cir. 2003), the First Circuit concluded that even under the notice pleading standard of Rule 8, a defamation claim must be dismissed where the complaint fails to allege facts (not legal conclusions) suggesting negligence or deliberate falsehood.  Andresen, 349 F.3d at 17 (affirming dismissal of negligence claim where "no facts suggesting negligence or deliberate falsehood by [the publishing party] are alleged.") (emphasis added).[24]  Adherence to this pleading requirement is particularly appropriate here, given that the record reflects that Encompass' claims have not only survived motions to dismiss under the heightened pleading standards of Rule 9(b), but also that this Court concluded that Encompass has demonstrated a reasonable likelihood of success on the merits of its claims.  See Pl. Mem. at 1-2, 11.[25]

---

[24] The Educadores Puertoriquenos En Acci On v. Hernandez, 367 F.3d 61 (1st Cir. 2004) decision cited by Defendants is not in conflict with Andresen.  Indeed, in Educadores, the First Circuit reiterated its long-held position that "notice pleading notwithstanding, Rule 12(b)(6) is not entirely a toothless tiger" and affirmed that "courts should continue to eschew any reliance on bald assertions [and] unsupportable conclusions …"  Educadores, 367 F.3d at 68-8.  Requiring a putative defamation claimant to assert facts supporting the legal conclusion of negligent publication falls well within these precedential boundaries and does not constitute application of a heightened pleading standard.  See Andresen, 349 F.3d at 17; Educadores, 368 F.3d at 68.

[25] Alternatively, Defendants claim that they have plead facts supporting the contention that Encompass' conduct was negligent.  However, the putative "facts" cited by Defendants (that Encompass filed the suit without any good faith basis to do so, and that Encompass exaggerated the amount at issue in this case) are the very conclusory allegations – contradicted by the record of the case – that Plaintiff attacks as insufficient.

**B.**     **Defendants Have Not Properly Plead Their Tortious Interference Claims.**

Defendants' Opposition exposes further the pleading defects in their tortious interference counterclaims.  As illustrated in Encompass' opening brief, to survive a motion dismiss on a claim for tortious interference, the complaint must – at the very least – specify what business relationship was affected and plead that the interfering party knew of that relationship.  Pl. Mem. at 12-15; see also Boxcar Media, LLC v. Redneckjunk, LLC, 345 F.Supp. 2d 76, 78 (D. Mass 2004).[26]  Defendants concede that they failed to plead which relationships were interfered with or that Encompass knew of those relationships.  Defendants counter, but only in conclusory fashion in their Opposition, that Encompass "obviously knew that the Counterclaimants had relationships with patients and other insurers." Opp. Br. at 17.  However, even at the pleading stage, this is not enough.  Defendants fail to recognize that even assuming as true Encompass' knowledge of some of Defendants' relationships with patients and/or insurers, the Court cannot reasonably infer that Encompass knew of those particular relationships that Defendants claim have been interfered with because Defendants did not identify which relationships are at issue in this case.  See, e.g., Trump Taj Mahal Assoc. v. Construzioni Aeronautiche Giovanni Agust, S.p.A., 761 F.Supp. 1143, 1164 (D.N.J. 1991) (dismissing claims under Rule 12(b)(6) for failure to allege prior knowledge of relationship at issue and holding that "[i]t is a simple proposition that a person cannot interfere with a contract that he knows nothing about…"); Sedona Corp. v. Ladenburg Thalmann & Co, Inc., 2005 WL 1902780, at *19 (S.D.N.Y Aug. 9, 2005) (dismissing claims under Rule 12(b)(6) for failure to identify the particular business relationships claimed to

---

[26] Defendants claim that the Boxcar Media decision is not on point because of the brevity of the complaint in that case.  See Opp. Br. at 17 n. 26.  However, Defendants provide no reasoned explanation for why that case's statement of general principle concerning pleadings is inapposite here.

be harmed, whether defendant knew of those relationships, and for failure to adequately allege that defendants intended to interfere with those relationships).[27]

Defendants attempt to avoid this result by suggesting that it sufficient, at the pleading stage, to assert intent generally because under Massachusetts law, a person intends the natural and probably consequences of his or her actions. Opp. Br. at 15-16. This argument fails because none of the Counterclaims allege – even generally – that Encompass took any action with the intent to interfere with Defendants' business relationships.[28] For this reason as well, these claims must be dismissed. See Spencer Companies v. Chase Manhatten Bank, N.A., 81 B.R. 194, 204 (D. Mass 1987) (dismissing claims for failure to allege that party acted with intent to interfere, concluding that "[n]or are the allegations that Chase knew the consequences of its actions sufficient to show intent. Interference which is merely incidental to another purpose and not the intended result of a party's action is not a sufficient basis for liability in tort.").

Finally, Defendants admit that their tortious interference claims turn on the defamatory nature of the Press Release. Opp. Br. at 16 n. 25. Accordingly, to the extent that this Court dismisses Defendants' defamation claims, their tortious interference claims must be dismissed as well.

---

[27] This pleading defect is highlighted by the fact that even Defendants admit the possibility that Encompass only knew of "most" of the relationships at issue. Opp. Br. at 17 n. 26.

[28] At best, Defendants assert, in conclusory fashion, that Encompass exaggerated the nature of the lawsuit in an attempt to damage Defendants' reputation. See Culliney Counterclaim, ¶ 9, Kennedy Counterclaim, ¶ 8. Notably, the Giampa Counterclaim does not even make this unsupported allegation. Leaving aside that this Court can conclude from the face of the record that no such "exaggeration" occurred, the remainder of the citations identified by Defendants allege only (at times on information and belief), the fact of interference. See Culliney Counterclaim, ¶¶ 19, 24, 25; Kennedy Counterclaim, ¶ 19, Giampa Counterclaim, ¶¶ 23, 28, 29.

BO1 15840902.3

**<u>CONCLUSION</u>**

For the reasons set forth above and in Encompass' opening brief, Encompass respectfully requests that this Court grant its Omnibus Motion to Dismiss each of Defendants/Counterclaim Plaintiffs' counterclaims in their entirety and with prejudice.

Respectfully submitted,
ENCOMPASS INSURANCE COMPANY OF
MASSACHUSETTS
By its Attorneys,


/s/ Kevin J. Lesinski
Kevin J. Lesinski (BBO # 554140)
Jay B Kesten (BBO #  655634)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane
Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
Telecopier:    (617) 946-4801


DATED:  April 26, 2007

BO1 15840902.3

## <u>CERTIFICATE OF SERVICE</u>

I, Kevin J. Lesinski, hereby certify that on this 26th day of April, 2007, this **Reply Memorandum In Further Support Of Plaintiff/Counterclaim Defendants' Omnibus Motion to Dismiss Defendants/Counterclaim Plaintiffs' Counterclaims** was filed through the CM/ECF and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.


      _____/s/ Kevin J. Lesinski____
                     Kevin J. Lesinski