UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ENCOMPASS INSURANCE COMPANY OF MASSACHUSETTS,<br><br>        Plaintiff,<br><br>    vs.<br><br>JOSEPH D. GIAMPA, FREDERICK T. GIAMPA, ADVANCED SPINE CENTERS, INC., d/b/a FIRST SPINE REHAB, FUTURE MANAGEMENT CORPORATION, FUTURE MANAGEMENT BUSINESS TRUST, EDWARD KENNEDY, BRIAN J. CULLINEY, D.C. and JENNIFER McCONNELL, D.C.<br><br>        Defendants. | Civil Action No.  1:05-cv-11693-RCL |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL DEPOSITION OF REBECCA MORALES

### I.    INTRODUCTION

This case is brought pursuant to Title 18 U.S.C. §1962, Racketeer Influenced and Corrupt Organizations Act, Mass. Gen. Laws, ch. 93A, the Massachusetts Consumer Protection Act, and Massachusetts common law of fraud and civil conspiracy.  The defendants acting in concert participated in a concealed, evolving and continuous scheme and conspiracy to defraud Encompass.

The objective of defendants' fraud scheme was to illegally obtain money from the plaintiff through the submission of false medical records and bills (hereinafter "false medical documentation") in connection with alleged motor vehicle accidents.  The defendants collected substantial sums of money as payment in connection with such false medical documentation referencing alleged chiropractic treatment that was never rendered and/or was unnecessary, excessive and unrelated to covered claims.

Encompass has alleged that part of defendants' insurance fraud scheme involved the creation and submission, via the U.S. Mail, of false and/or inflated medical invoices. Further, plaintiff's Complaint contains allegations that defendants (including FMC billing personnel) engaged in CPT upcoding.  Specifically, Encompass avers that defendants submitted bills that contained improper and/or deceptive coding.  In doing so, the defendants affirmatively misrepresented the nature of the treatment allegedly administered to the FMC patients/Encompass claimants.

In its effort to develop relevant, admissible evidence regarding this matter, Encompass noticed the depositions of numerous FMC billing employees and other associated persons.  The deposition of Rebecca Morales, a FMC employee, was noticed for March 7, 2007, at 10:00 a.m. at Smith & Brink, P.C. in Quincy, Massachusetts.  A copy of the Deposition Notice, Deposition Subpoena and correspondence to Belesi and Conroy is annexed hereto at Exhibit A.  Counsel for defendants, Attorney Matthew Conroy, accepted service on behalf of Ms. Morales.

On January 30, 2007, through counsel, plaintiff forwarded correspondence to Belesi & Conroy inquiring as to whether Attorneys Conroy or Kurtz could accept service on behalf of Rebecca Morales.  The January 30th correspondence enclosed a deposition subpoena commanding Morales' appearance at deposition on March 7, 2007.  Attorney Conroy agreed to accept service on behalf of Morales on February 19, 2007.  By agreement of the parties, Ms. Morales' deposition was continued until April 10th.  Attorney Conroy requested a further continuation of Ms. Morales' deposition.

On or about May 2, 2007, Attorney Conroy contacted ARMS[1] (the defendants' current billing company) requesting that ARMS allow Ms. Morales to appear for deposition on May 3, 2007. Apparently, ARMS agreed. Attorney Conroy later contacted Smith & Brink, P.C. wherein the parties agreed to conduct Warren Feretti's deposition in lieu of Ms. Morales' deposition. At no point did Encompass (1) subpoena Ms. Morales for deposition on May 3, 2007; or (2) notice Ms. Morales for deposition on May 3, 2007. Further, at no time was Encompass aware of Fireman & Associates, LLP's representation of Ms. Morales. Notwithstanding the foregoing, Attorney Conroy apparently failed to notify ARMS, Fireman & Associates and/or Ms. Morales that her deposition had been continued.

At some point during Mr. Feretti's deposition, Attorney Francis A. Gaimari purportedly appeared with "his client" Rebecca Morales for deposition.[2] Attorney Gaimari later sent correspondence indicating that Ms. Morales had satisfied her obligation to appear for deposition and would not further appear absent a court order. See Giamari Correspondence dated May 3, 3007, annexed hereto at Exhibit B. Notably, Attorney Giamari is not counsel of record in the instant matter. Encompass' counsel was unaware of Attorney Giamari's involvement with this witness and counsel for defendants failed to apprise Attorney Giamari of the witness rescheduling arrangement.

As stated above, Ms. Morales, through Attorney Gaimari, has indicated that she will not appear for deposition. Ms. Morales has provided no substantive reason to justify

---

[1] Interestingly, ARMS is owned by the defendants' counsel, Robert Fireman, in connection with related RICO litigation pending in the Middlesex Superior Court, Safety Ins. Co. v. Joseph Giampa, et. al., C.A. No. 2007-00679.

[2] Attorney Gaimari is an associate at Fireman & Associates and represents the instant defendants Joseph D. Giampa, Frederick T. Giampa, Edward Kennedy and the corporate entities in related litigation, Safety Ins. Co. v. Joseph D. Giampa, et al, Middlesex Superior Court, C.A. No. 2007-00679.

avoidance of her deposition.  Moreover, Ms. Morales has not sought a protective order to block this deposition.

## II.     THIS COURT SHOULD COMPEL REBECCA MORALES TO APPEAR FOR A DEPOSITION

Encompass hereby requests that this Honorable Court enter an Order compelling the appearance of Ms. Morales for deposition.  Fed. R. Civ. P. 26(b)(1) provides:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at trial if discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).

The sworn, oral testimony of Ms. Morales is reasonably calculated to lead to the discovery of admissible evidence in the instant action.  The instant litigation involves allegations of insurance fraud, specifically the creation and submission of medical bills containing improper and/or deceptive CPT coding.  The individual FMC clinics did not handle their own billing; instead, all of the coding and billing of a patient's file was performed at Future Management's billing office located in Chelmsford, MA.  See Deposition Transcript of Jennifer McConnell at p. 21, annexed hereto at Exhibit C; Deposition Transcript of Sokah Dy at p. 29, annexed hereto at Exhibit D.

Encompass maintains that the deposition testimony of Ms. Morales will reveal relevant, material evidence regarding the allegations set forth in plaintiff's Complaint whereas Ms. Morales was employed in FMC's billing department and FMC/ARMS

collection activity.  See Deposition of Mercedes Rosado at pp. 11, 65-67, annexed hereto

at Exhibit E.  It was recently revealed that Morales—during her employment with FMC

and ARMS—communicated with FMC clinic employees regarding the individual clinics'

billing.  See Ex. D at 173.

Encompass' investigation has revealed that FMC clinics charged different fees for

medical services depending on the insurance carrier.  See Affidavit of Kathryn A.

Duncan at ¶ 2, annexed hereto at Exhibit F.  This practice was employed to avoid

adjustment of charges submitted by the various FMC clinics.  See id.  FMC's billing

department used misleading procedure tables with respect to CPT coding resulting in

inaccurate charges. See id. at ¶ 3.  Moreover, FMC's non-licensed President, Edward

Kennedy, dictated the billing methods at FMC's orthopedic operations.  See id. at ¶ 5.

Specifically:

> The billing staff was instructed definitively by Ed Kennedy
> to bill all initial visits with CPT code 99205 and all
> subsequent visits with 99214.  The doctors and PA's on
> site used these codes.  After issues with Medicare of Mass,
> the policy changed and for Medicare they were to bill all
> services with 99213 instead of 99214.  When I questioned
> the PA's about their coding, they told me they were to bill
> with the higher level of services or they would be fired!
> This is completely non-compliant with any insurance for
> coding.  All coding must have appropriate documentation
> to support the level of service billed.   Medicare
> implemented a pre-payment review of all of Dr. Awbrey's
> services.   Given the way they were billing, I wasn't
> surprised to see it.   A pre-payment review requires
> documentation be submitted with all services so Medicare
> can review each claim for appropriate coding.  Medicare
> and Workers Comp were down coding numerous services
> for AHCG [Associated Health Care Group] after review of
> the reports.

Id. (alterations added).

As stated above, Encompass seeks to discover all material, relevant evidence regarding the billing and collection activities of FMC. In furtherance of this objective, Encompass now seeks the deposition testimony of Ms. Morales to obtain relevant, admissible evidence regarding her role in the billing of FMC patients/Encompass claimants. Regrettably, Encompass has been forced to resort to judicial intervention to secure the deposition testimony of Ms. Morales. Based on Ms. Morales' (purported) counsel's statement, without an Order compelling her appearance, Ms. Morales will evade plaintiff's proper attempts to obtain her sworn, oral testimony.

## III.    <u>CONCLUSION</u>

WHEREFORE, the plaintiff, Encompass Insurance Company, hereby request that this Honorable Court enter an Order COMPELLING Rebecca Morales to appear for deposition within ten (10) days of this Order. Moreover, pursuant to Fed. R. Civ. P. 37(a)(4)(A), plaintiff requests that it be awarded costs in connection with the drafting and filing of the instant matter. Clearly, the defendants' counsel (Attorney Conroy and Attorney Giamari) are solely responsible for wasting this Court's (and Encompass') time in addressing such trivial discovery squabbles.

Respectfully submitted,
*Encompass Insurance Company,*
By its attorneys,

/s/ Nathan A. Tilden
_____
Richard D. King, Jr., BBO#638142
Nathan A. Tilden, BBO#647076
Michael W. Whitcher, BBO#663451
SMITH & BRINK, P.C.
122 Quincy Shore Drive
Quincy, Massachusetts 02171
(617) 770-2214

Dated:  May 31, 2007

Page 1 of 2
First Spine Depositions

Meghan J. Fair
Paralegal
*mfair@smithbrink.com*

## SMITH & BRINK, P.C.
### ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
122 QUINCY SHORE DRIVE
SECOND FLOOR
QUINCY, MASSACHUSETTS 02171
TELEPHONE: (617) 770-2214
FAX: (617) 657-6070
*www.SmithBrink.com*

**SPRINGFIELD OFFICE**
191 CHESTNUT STREET
SUITE 3D
SPRINGFIELD, MA 01103
TELEPHONE: (413) 746-8122
FAX: (413) 781-6290

**DANVERS OFFICE**
99 ROSEWOOD DRIVE
UNIT 240
DANVERS, MA 01923
TELEPHONE: (978) 646-9114
FAX: (978) 646-9264

**PROVIDENCE OFFICE**
ONE STATE STREET
SUITE 400
PROVIDENCE, RI 02908
TELEPHONE: (401) 351-9970
FAX: (401) 274-6218

January 30, 2007

## VIA FIRST CLASS MAIL

Matthew J. Conroy
Belesi, Donovan & Conroy, P.C.
Suite 400
1225 Franklin Ave.
Garden City, NY 11530

Katherine L. Kurtz
Belesi, Donovan & Conroy,
P.C.
114 Waltham Street, Suite 25
Lexington, MA 02420

Re: Encompass Insurance Company of Massachusetts v. Joseph D. Giampa, Frederick T. Giampa, Advanced Spine Centers, Inc. d/b/a First Spine Rehab, Future Management Corporation, Edward Kennedy, Brian J. Culliney, D.C. and Jennifer McConnell, D.C.
USDC Docket No. 05-11693 RCL
**S&B File No.: 1075-0521**

Dear Counsel:

With respect to the above-captioned matter please find enclosed Deposition Subpoenas for the following persons pursuant to your agreement with Attorney Richard D. King, Jr. Kindly advise if you are not able to accept service for any of the below-named individuals.

Sokha Dy
Kim Kong
Melissa Mehigan
Rebecca Morales
Nadine Morin
Doris Ortiz
Mercedes Rosado
Darla Tarpey
Jennifer Tremblay

Page 2 of 2
First Spine Depositions

John Klug


        Thank you for your courtesy and attention to the foregoing.  Kindly contact the
undersigned with any questions or concerns.

                        Very truly yours,

                        Meghan J. Fair
                        Paralegal


Enclosures

OAO88 (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

———— DISTRICT OF MASSACHUSETTS ————

**SUBPOENA IN A CIVIL CASE**

Encompass Insurance Company of Massachusetts
    Plaintiff-Counterclaim Defendant,

        v.

CASE NO: [1] 05-11693 RCL

Joseph D. Giampa, Frederick T. Giampa, Advanced
Spine Centers Inc. d/b/a First Spine Rehab, Future
Management Corporation, Future Management
Business Trust, Edward Kennedy, Brian J. Culliney, D.C. and
Jennifer McConnell, D.C.
    Defendants-Counterclaim Plaintiffs.

**TO:**  **Rebecca Morales**
     **21 Kingsbury Ave. # 2**
     **Haverhill, MA 01835-7817**

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
    testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
    in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| **Law Offices of Smith & Brink PC, 122 Quincy Shore Drive, Quincy, MA 02171** | **Wednesday, March 7, 2007**<br>**10:00 a.m.** |

☐  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
    place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| | |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE 1/30/07 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Richard D. King, Jr., Smith & Brink PC, 122 Quincy Shore Drive, Quincy, MA 02171 (617) 770-2214

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
　　　　　　　　　　DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26 (b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

ENCOMPASS INSURANCE COMPANY OF
MASSACHUSETTS,

        Plaintiff-Counterclaim Defendant,

    vs.

JOSEPH D. GIAMPA, FREDERICK T.
GIAMPA, ADVANCED SPINE CENTERS,
INC. d/b/a FIRST SPINE REHAB, FUTURE
MANAGEMENT CORPORATION, FUTURE
MANAGEMENT BUSINESS TRUST,
EDWARD KENNEDY, BRIAN J. CULLINEY,
D.C. and JENNIFER McCONNELL, D.C.

        Defendants-Counterclaim Plaintiffs.

CIVIL ACTION NO.:  05-11693 RCL

## <u>NOTICE OF TAKING DEPOSITION</u>

TO:

| | | |
|---|---|---|
| Thomas M. Ciampa<br>Ciampa & Associates<br>20 Park Plaza, Suite 804<br>Boston, MA 02108 | Jeffrey J. Phillips<br>Daniel Treger<br>Phillips & Angley<br>One Bowdoin Square<br>Boston, MA 02114 | Matthew J. Conroy<br>Belesi, Donovan & Conroy, P.C.<br>Suite 400<br>1225 Franklin Ave.<br>Garden City, NY 11530 |
| Katherine L. Kurtz<br>Belesi, Donovan & Conroy,<br>P.C.<br>114 Waltham Street, Suite 25<br>Lexington, MA 02420 | Jay B. Kesten<br>Seyfarth Shaw LLP<br>Two Seaport Lane<br>Suite 300<br>Boston, MA 02210 | |

Please take notice that at *10:00 a.m. on Wednesday, March 7, 2007, at the offices of Smith& Brink, P.C., 122 Quincy Shore Drive, Quincy, Massachusetts 02171*, the plaintiff, Encompass Insurance Company, by its attorneys, will take the deposition upon oral examination of the witness, *Rebecca Morales, 21 Kingsbury Ave. # 2, Haverhill, MA 01835-7817,* pursuant to the applicable provisions of the Federal Rules of Civil Procedure, before a Notary Public or before some other officer authorized by law to administer oaths.

The oral examination will continue from day to day until completed.  You are involved to attend and cross-examine.

The Plaintiff,
*Encompass Insurance Company,*
By its Attorneys,

Dated: January 30, 2007

_____
Richard D. King, Jr. (BBO #638142)
Nathan A. Tilden (BBO #647076)
SMITH & BRINK, P.C.
122 Quincy Shore Drive
Quincy, MA  02171
(617) 770-2214

## FIREMAN & ASSOCIATES, LLP
Attorneys at Law
145 Rosemary Street, Suite H-2
Needham, MA 02494
Tel: (781) 559-8800
Fax: (781) 559-8811

Francis A. Gaimari
Direct Dial (781)559-8812
fgaimari@firemanassociates.com


05/03/07


Richard King, Esquire
Smith & Brink, PC
122 Quincy Shore Drive
Quincy, MA 02171

RE:    Encompass v. Giampa *et al*
Deposition of Rebecca Morales

Rick:

I appeared at your office today at 10:00 am sharp for a deposition you scheduled of my client, Rebecca Morales, for that time. You had apparently "postponed" it last night without communicating that fact to her. Ms. Morales has satisfied any obligation she has to attend a deposition in this matter and will not appear for another without an order of court compelling it after notice and hearing.


Thank you,

Francis A. Gaimari

Volume:   I
Pages: 1-112
Exhibits: 2

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss                    LOWELL DISTRICT COURT

BLANCA RIVERA,
        Plaintiff,

v.                                  CIVIL ACTION
                                    NO. 0511-CV-2582
BETH A. CORROW and
ENCOMPASS INSURANCE COMPANY,
        Defendants.

DEPOSITION OF JENNIFER McCONNELL

A Witness called by and on behalf of the
Defendants, pursuant to the Massachusetts Rules of
Civil Procedure, before Cheryl Ann Walker, Court
Reporter and Notary Public within and for the
Commonwealth of Massachusetts, at the Law Offices of
Smith & Brink, P.C., 122 Quincy Shore Drive, Quincy,
Massachusetts, 02171, commencing on Thursday,
September 21, 2006, at 10:06 a.m.

---

2

A P P E A R A N C E S

Erika M.D. Barrie, Esquire
Smith & Brink, P.C.
122 Quincy Shore Drive
Second Floor
Quincy, Massachusetts 02171
(617) 770-2214

COUNSEL FOR:  Encompass Insurance Company

Thomas M. Ciampa, Esquire
Ciampa & Associates
20 Park Plaza
Suite 804
Boston, Massachusetts 02116
(617) 742-5955

COUNSEL FOR:  Jennifer McConnell

---

3

I N D E X

| Witness | Direct | Cross | Redirect |
|---------|--------|-------|----------|
| Jennifer McConnell | | | |
| By Ms. Barrie | 9 | | |
| By Mr. Ciampa | | | |

---

4

E X H I B I T S

| NO. | DESCRIPTION | PAGE |
|-----|-------------|------|
| 1 | Attorney Howard's Letter | 7 |
| 2 | Packet of Documents | 109 |

(Exhibits were retained by Attorney Barrie.)

21

```
1          coming in?
2     A.   Either I would go pull them or one of the
3          administrative staff would.
4     Q.   Did you have any responsibility with regard to
5          billing for treatment that you rendered?
6     A.   No.
7     Q.   Who would do the billing?
8     A.   There was a billing office.
9     Q.   And where was the billing office?
10    A.   When I left there it was in North Chelmsford.
11    Q.   And was there -- is that a First Spine billing
12         office?
13    A.   Yes.
14              MR. CIAMPA:  Objection.
15    (BY MS. BARRIE)
16    Q.   Does it go by the name First Spine?
17    A.   No.
18    Q.   What name does it go by?
19              MR. CIAMPA:  If you know.
20    A.   I don't know.
21    (BY MS. BARRIE)
22    Q.   So it goes by another name?
23    A.   Yes.
24    Q.   Okay.  Would you ever see the bills after the
```

Lee & Associates * Certified Court Reporters * (781) 848-9693

22

```
1          billing was done?
2     A.   Yes.
3     Q.   Okay, when would you see them?
4     A.   At least once a month.
5     Q.   And what would you do with the bills that you
6          received?
7     A.   Check them to the treatment notes.
8     Q.   And why would you do that?
9     A.   For consistency.
10    Q.   And would you do that just with your patients or
11         would you do it for other chiropractors?
12    A.   No, just my patients.
13    Q.   At some point did the First Spine Lowell clinic
14         have to become licensed as a chiropractic facility?
15    A.   Yes.
16    Q.   Were you at all involved in that?
17    A.   No.
18    Q.   So you didn't take part in any applications or
19         hearings or presentations before the board?
20    A.   No.
21    Q.   Are you aware that you were listed as the
22         chiropractor of record for the Lowell facility
23         prior to your departure?
24    A.   Yes.
```

Lee & Associates * Certified Court Reporters * (781) 848-9693

23

```
1     Q.   What is your understanding of what that term
2          entails?
3     A.   My understanding is that it entails I make sure
4          that adequate records are kept for patients.
5     Q.   And does that involve scrutinizing records for
6          other chiropractors at the facility as well?
7     A.   I'm not sure.
8     Q.   Did you ever look at any records compiled by other
9          chiropractors at Lowell?
10              MR. CIAMPA:  Objection; in what context?
11              MS. BARRIE:  As the chiro of record for the
12         facility.
13              MR. CIAMPA:  You mean checking them against
14         bills?
15              MS. BARRIE:  Checking them in general.
16    (BY MS. BARRIE)
17    Q.   She said that they -- you had to make sure that
18         there were adequate records kept for the patients;
19         correct?
20    A.   Yes.
21    Q.   And you said that you would check your own bills
22         against records to make sure that they were
23         accurate and consistent; correct?
24    A.   Yes.
```

Lee & Associates * Certified Court Reporters * (781) 848-9693

24

```
1     Q.   Would you ever check either the records or the
2          bills for other chiropractors at the Lowell
3          facility?
4     A.   Yes.
5     Q.   How often?
6     A.   At the same time that I did my own.
7     Q.   And when did you start doing that?
8     A.   Since the day I started working there.
9     Q.   And would that include Dr. Culliney and Dr. Blake?
10    A.   Yes.
11    Q.   Who was in charge of the office in Lowell when you
12         were there?
13    A.   Dr. Culliney.
14    Q.   And when you left First Spine, who was still
15         working there?
16    A.   Dr. Culliney.
17    Q.   How about Dr. -- is it Klug, John Klug?
18    A.   Klug.
19    Q.   How about Dr. Klug, was he still working there?
20    A.   Occasionally.
21    Q.   Did he work at another First Spine facility
22         regularly?
23    A.   No.
24    Q.   So you would check records and bills for
```

Lee & Associates * Certified Court Reporters * (781) 848-9693

109

```
 1      consider that to be part of the medical record;
 2      right?
 3   A. Yes.
 4   Q. In your practice at First Spine were the medical
 5      histories typically put into a subpoenaed set or
 6      23379G set of records?
 7   A. Not that I'm aware of.
 8   Q. Okay.  And what's the reason for that?
 9         MR. CIAMPA:  Objection.
10   A. Ignorance.
11   (BY MS. BARRIE)
12   Q. Okay.
13         MS. BARRIE:  All right.  That's all the
14      questions I have.  Thank you very much.  I
15      appreciate you taking the time to come in.  Do you
16      have anything?
17         MR. CIAMPA:  I don't have anything.
18         MS. BARRIE:  Okay.
19
20         (Whereupon, Exhibit No. 2, Packet of
21      Documents, was marked for identification.)
22
23         (Whereupon, the Deposition was concluded
24      at 12:53 p.m.)
```

Lee & Associates * Certified Court Reporters * (781) 848-9693

---

110

ERRATA SHEET

Deposition of: JENNIFER McCONNELL
In Re:   Blanca Rivera v. Beth A. Corrow and Encompass
         Insurance Company

| Page No. | Line No. | Transcript Reads | Change Made |
|----------|----------|------------------|-------------|
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |

Lee & Associates * Certified Court Reporters * (781) 848-9693

---

111

CERTIFICATE

I, JENNIFER McCONNELL, do hereby certify that
I have read the foregoing transcript of my testimony,
and further certify that said transcript is a true,
accurate and complete record of said testimony.

Dated at _____ ,

This _____ day of _____, 2006,

under the pains and penalties of perjury.

_____

Sworn to and subscribed before me
this _____ day of _____, 2006.

_____
Notary Public

Lee & Associates * Certified Court Reporters * (781) 848-9693

---

112

CERTIFICATE

COMMONWEALTH OF MASSACHUSETTS

COUNTY OF PLYMOUTH, SS

I, CHERYL ANN WALKER, a Court Reporter
and Notary Public in and for the Commonwealth of
Massachusetts, do hereby certify that the foregoing
Deposition of JENNIFER McCONNELL was taken before me on
September 21, 2006; that the witness was duly sworn by
me before the commencement of her testimony; that the
said testimony was taken audiographically by myself and
then transcribed under my direction.  To the best of my
knowledge, the within transcript is a complete, true
and accurate record of said Deposition.

I am not connected by blood or marriage
with any of the said parties, nor interested directly
or indirectly in the matter in controversy.

In witness whereof, I have hereunto set
my hand and Notary Seal this 4th day of October, 2006.

Cheryl Ann Walker,
Notary Public
My Commission Expires:
March 10, 2011

PLEASE NOTE: THE FOREGOING CERTIFICATION OF THIS
TRANSCRIPT DOES NOT APPLY TO ANY REPRODUCTION OF THE
SAME BY ANY MEANS UNLESS UNDER THE DIRECT CONTROL
AND/OR DIRECTION OF THE CERTIFYING REPORTER.

Lee & Associates * Certified Court Reporters * (781) 848-9693

Pages: 1-251
Vol. I
Exhibits: 1

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

ENCOMPASS INSURANCE COMPANY )
OF MASSACHUSETTS, )
    Plaintiff-Counterclaim Defendants, )
     )
VS. )
     )
JOSEPH D. GIAMPA, FREDERICK T. GIAMPA )
ADVANCED SPINE CENTERS, INC. d/b/a )
FIRST SPINE REHAB, FUTURE MANAGEMENT )
CORPORATION, FUTURE MANAGEMENT )
BUSINESS TRUST, EDWARD KENNEDY, BRIAN )
J. CULLINEY, D.C. and JENNIFER )
McCONNELL, D.C. )Civil Action
    Defendants-Counterclaim Plaintiffs.)No.05-11693RCL
_____ )
     )
JOSEPH D. GIAMPA, FREDERICK T. GIAMPA, )
ADVANCED SPINE CENTERS, INC. )
    Third-Party Plaintiffs )
     )
VS. )
     )
ALLSTATE INSURANCE COMPANY, )
    Third-Party Defendant )
_____ )

## DEPOSITION OF SOKHA DY

      A witness called by and on behalf of the
Encompass Insurance Company, taken pursuant to the
Massachusetts Rules of Civil Procedure, before Jo-Anne M.
Golden, a Professional Court Reporter and Notary Public
within and for the Commonwealth of Massachusetts, at the
Law Offices of Smith & Brink, P.C., 122 Quincy Shore
Drive, Quincy, Massachusetts 02171.  Commencing on
Thursday, February 15, 2007 at 10:18 a.m.

2

A P P E A R A N C E S

Richard D. King, Jr., Esquire
Smith & Brink, P.C.
122 Quincy Shore Drive
Quincy, Massachusetts 02171
    COUNSEL FOR: Encompass Insurance Company


Nathaniel Tilden, Esquire
Smith & Brink, P.C.
122 Quincy Shore Drive
Quincy, Massachusetts  02171
    COUNSEL FOR:  Encompass Insurance Company


Jeffrey J. Phillips, Esquire
Phillips & Angley, P.C.
One Bowdoin Square
Boston, Massachusetts 02114
    COUNSEL FOR:  Edward Kennedy


Thomas M. Ciampa, Esquire
Ciampa & Associates
20 Park Plaza
Suite 804
Boston, Massachusetts  02116
    COUNSEL FOR:  Brian Culliney and
                Jennifer McConnell

Megan M. Hart, Esquire
Seyfarth Shaw LLP
World Trade Center East
Two Seaport Lane
Suite 300
Boston, Massachusetts  02210
    COUNSEL FOR:  Encompass Insurance Company
                Of Massachusetts

3

A P P E A R A N C E S

Matthew J. Conroy, Esquire
Belesi & Conroy
114 Waltham Street
Lexington, Massachusetts  02421
       COUNSEL FOR:    Joseph D. Giampa,
                       Frederick T. Giampa,
                       Future Management
                       Corp, Advanced Spine
                       Centers, Inc. d/b/a First
                       Spine Rehab.

John J. Ferrante, Esquire
P.O. Box 300
Boxford, Massachusetts  01921
          COUNSEL FOR:  Sokha Dy

1           place and Raudamaker's place?

2      A.   That's right, yes.

3      Q.   And you'd also answer the phone, receptionist type

4           duties?

5      A.   Right.  That's right.

6      Q.   What other ,if any, duties did you perform or do

7           you perform at First Spine?

8      A.   Like what?

9      Q.   Well, do you contact insurance companies to ask

10          them to pay their bill?

11     A.   No.  I don't do that stuff.  We have the medical

12          billing.

13     Q.   Who is that?

14     A.   At the Future Medical building, at the Future

15          Management.

16     Q.   Where is that located?

17     A.   Chelmsford Street.

18     Q.   In Lowell?

19     A.   Chelmsford, Mass. -- yes.

20     Q.   Oh, Chelmsford, Mass.?

21     A.   Yes.

22     Q.   Have you been to that building?

23     A.   Yes.

24     Q.   When were you last at that building?

173

| | | |
|---|---|---|
| 1 | | Chelmsford that work in Needham now? |
| 2 | A. | Yes. |
| 3 | Q. | Who? |
| 4 | A. | I only know my medical billing girl is Ingrid and |
| 5 | | then Mercedes Mercado. |
| 6 | Q. | Those are the only two you know? |
| 7 | A. | Yeah.  That's the one that taking care of First |
| 8 | | Spine. |
| 9 | Q. | Do you know Rebecca Morales? |
| 10 | A. | No. |
| 11 | Q. | Have you ever heard of her? |
| 12 | A. | They fax us the list, but we never talk. |
| 13 | Q. | You never -- |
| 14 | A. | No. |
| 15 | Q. | Do you know if she's employed by Future Management |
| 16 | | or ARMS? |
| 17 | A. | I don't know. |
| 18 | Q. | Melissa Mahegan (phonetic), do you know who that |
| 19 | | is? |
| 20 | A. | Melissa Mahegan -- Melissa -- I heard Melissa. |
| 21 | Q. | You heard that name before? |
| 22 | A. | Yes. |
| 23 | Q. | Do you know if she's employed by ARMS or Future |
| 24 | | Management? |

249

ERRATA SHEET

Deposition of: SOKHA DY

IN RE: C.A. No. 05-11693RCL

| Page No. | Line No. | Transcript Reads | Change Made |
|----------|----------|------------------|-------------|
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |

250

CERTIFICATE

I, <u>SOKHA DY,</u> do hereby certify that I
have read the foregoing transcript of my testimony, and
further certify that said transcript is a true,
accurate and complete record of said testimony.

Dated at _____, this _____

day of _____, 2007

under the pains and penalties of perjury.

_____

Sokha Dy

251

C E R T I F I C A T E

COMMONWEALTH OF MASSACHUSETTS

COUNTY OF NORFOLK, SS.

I, JO-ANNE GOLDEN, a Professional Court Reporter and Notary Public in and for the Commonwealth of Massachusetts, do hereby certify that the foregoing Deposition of SOKHA DY was taken before me on February 15, 2007.  The said witness was duly sworn before the commencement of her testimony; that the said testimony was taken audiographically by myself and then transcribed under my direction.  To the best of my knowledge, the within transcript is a complete, true and accurate record of said Deposition.

I am not connected by blood or marriage with any of the said parties, nor interested directly or indirectly in the matter in controversy.

In witness whereof, I have hereunto set my hand and Notary Seal this 23rdth day of February, 2007.

_____

Jo-Anne M. Golden, Notary Public

My Commission Expires:
December 6, 2007

PLEASE NOTE: THE FOREGOING CERTIFICATION OF THIS TRANSCRIPT DOES NOT APPLY TO ANY REPRODUCTION OF THE SAME BY ANY MEANS UNLESS UNDER THE DIRECT CONTROL AND\OR DIRECTION OF THE CERTIFYING REPORTER.

Volume: I<br>
Pages: 1-190<br>
Exhibits: None

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

---

ENCOMPASS INSURANCE COMPANY
OF MASSACHUSETTS,

    Plaintiff-Counterclaim Defendant

vs.
                               CIVIL ACTION NO. 05-11693 RCL

JOSEPH D. GIAMPA, FREDERICK T.
GIAMPA, ADVANCED SPINE CENTERS, INC.
d/b/a FIRST SPINE REHAB, FUTURE
MANAGEMENT CORPORATION, FUTURE
MANAGEMENT BUSINESS TRUST, EDWARD
KENNEDY, BRIAN J. CULLINEY, D.C.,
and JENNIFER McCONNELL, D.C.,

        Defendants-Counterclaim Plaintiffs

---

### DEPOSITION OF MERCEDES ROSADO

    A Witness called by and on behalf of the Plaintiff, Encompass Insurance Company of Massachusetts, pursuant to the Federal Rules of Civil Procedure, before Susan K. Arvidson, a Certified Verbatim Reporter and Notary Public within and for the Commonwealth of Massachusetts, at the Law Offices of Smith & Brink, P.C., 122 Quincy Shore Drive, Quincy, Massachusetts, 02171, commencing on Wednesday, April 11, 2007, at 10:13 a.m.

## A P P E A R A N C E S

Nathan A. Tilden, Esquire
Smith & Brink, P.C.
122 Quincy Shore Drive
Quincy, Massachusetts  02171
(617) 770-2214

> **Representing:**  Plaintiff, Encompass
> Insurance Company

Richard D. King, Jr., Esquire
Smith & Brink, P.C.
122 Quincy Shore Drive
Quincy, Massachusetts  02171
(617) 770-2214

> **Representing:**  Plaintiff, Encompass
> Insurance Company

Jay B. Kesten, Esquire
Seyfarth Shaw LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, Massachusetts  02210-2028
(617) 946-4951

> **Representing:**  Counterclaim Defendant,
> Encompass Insurance
> Company

Francis A. Gaimari, Esquire
Fireman & Associates LLP
145 Rosemary Street, Suite H-2
Needham, Massachusetts  02494
(781) 559-8800

> **Representing:**  Mercedes Rosado

11

```
 1           to December 2006, you were a biller.
 2    A.     Yes.
 3    Q.     Did you ever serve any other job functions at
 4           either ARMS or Future Management?
 5    A.     Besides a biller?
 6    Q.     Yes.
 7    A.     Collection for Future.
 8    Q.     Are those two jobs different in your mind?
 9    A.     Yes, they're different.
10    Q.     Why don't you tell me how they're different.
11    A.     The biller bills out the charges for the patient,
12           and the collector collects the money for the
13           charges billed.
14    Q.     Were all of the billers at Future Management
15           also in collections?
16    A.     Not all of them, no.
17    Q.     Who outside from yourself also performed a
18           collection function?
19    A.     Names, you want names?
20    Q.     Yes, please.
21    A.     Rebecca Morales, Donna Smith.  Elizabeth Nelson
22           was one of them.  Nadine Morin, Brenda Gagne.
23           That's it.
24    Q.     Is that it?
```

```
 1    (BY MR. KESTEN)

 2    Q.   You don't know how many people work there.  Who

 3         else at FMC moved over to ARMS with you?

 4    A.   Who else?

 5    Q.   Yes.

 6    A.   You want names, numbers?

 7    Q.   Names.

 8    A.   Who worked with me from FMC here?

 9    Q.   That used to work with you at FMC and now work

10         with you at ARMS.

11    A.   That work with me at ARMS now.  We have -- you

12         want to know the names or how many people?

13    Q.   The names, please.  You've already told me you

14         don't know how many people.

15    A.   We have Rebecca Morales.

16    Q.   What does she do at ARMS?

17    A.   Billing.

18    Q.   Billing?

19    A.   And then I don't know, let's see...

20    Q.   What about Donna Smith?

21    A.   If she works at ARMS?

22    Q.   At ARMS.

23    A.   No.

24    Q.   What about Elizabeth Nelson?
```

66

```
 1    A.    No.

 2    Q.    Nadine Morin?

 3    A.    No.

 4    Q.    Brenda Gagne?

 5    A.    Yes.

 6    Q.    Who else?  I mean, you're pretty quick with these

 7          answers when I give you the names.

 8    A.    Who else?

 9                THE WITNESS:  Can I speak to my counsel?

10                MR. TILDEN:  Sure.

11                MR. KING:  Absolutely.

12                (Off the record at 11:35 a.m.)

13                (On the record at 11:36 a.m.)

14                THE WITNESS:  May I continue?

15    (BY MR. KESTEN)

16    Q.    Yes, please.

17    A.    A Mary works there.

18    Q.    Mary who?

19    A.    Mary, I don't know her last name.

20    Q.    Okay.

21    A.    Ingrid.

22    Q.    Ingrid?

23    A.    Camenaro (spelled phonetically).

24    Q.    You can give me first names and last names if you
```

67

| | | |
|---|---|---|
| 1 | | recall them. |
| 2 | A. | Brenda Gagne, Rebecca Morales, Jane Conley, |
| 3 | | Kathy Duncan.  That's pretty much it. |
| 4 | Q. | Anybody else? |
| 5 | A. | No. |
| 6 | Q. | Who works in billing at ARMS that did not work at |
| 7 | | FMC? |
| 8 | A. | There's a girl named Jennifer, but I don't know |
| 9 | | her last name. |
| 10 | Q. | You don't know Jennifer's last name? |
| 11 | A. | No. |
| 12 | Q. | Anybody else? |
| 13 | A. | Anybody else? |
| 14 | Q. | Yes. |
| 15 | A. | No. |
| 16 | Q. | Do you know what the allegations are in this |
| 17 | | lawsuit? |
| 18 | A. | No. |
| 19 | Q. | Did you ever have a meeting with anyone at FMC |
| 20 | | about the lawsuit? |
| 21 | A. | Well, Dr. Giampa did get the billing department |
| 22 | | together and had stated that there was a lawsuit |
| 23 | | and that it was common in the industry, so he |
| 24 | | did let us know. |

188

E R R A T A   S H E E T

Deposition of:  **Mercedes Rosado**

IN RE:    ENCOMPASS INSURANCE COMPANY
          VS.
          JOSEPH D. GIAMPA, ET AL

| Page No. | Line No. | Transcript Reads | Change Made |
|----------|----------|------------------|-------------|
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |
|          |          |                  |             |

189

# C E R T I F I C A T E

I, **MERCEDES ROSADO,** hereby certify that I have read the foregoing transcript of my testimony, and further certify that said transcript is a true, accurate and complete record of said testimony.

Dated at _____,

this _____ day of _____, 2007

under the pains and penalties of perjury.

_____
**Mercedes Rosado**

190

<u>C E R T I F I C A T E</u>
_____

COMMONWEALTH OF MASSACHUSETTS

COUNTY OF NORFOLK, SS

          I, SUSAN K. ARVIDSON, a Certified Court Reporter and Notary Public in and for the Commonwealth of Massachusetts, do hereby certify that the foregoing Deposition of **MERCEDES ROSADO** was taken before me on April 11, 2007. The said witness was duly sworn before the commencement of her testimony; that the said testimony was taken audiographically by myself and then transcribed under my direction. To the best of my knowledge, the within transcript is a complete, true and accurate record of said Deposition.

          I am not connected by blood or marriage with any of the said parties, nor interested directly or indirectly in the matter in controversy.

          In witness whereof, I have hereunto set my hand and Notary Seal this 15th day of April, 2007.

_____

Susan K. Arvidson, Notary Public

My Commission Expires:
February 9, 2012

**<u>PLEASE NOTE: THE FOREGOING CERTIFICATION OF THIS TRANSCRIPT DOES NOT APPLY TO ANY REPRODUCTION OF THE SAME BY ANY MEANS UNLESS UNDER THE DIRECT CONTROL AND\OR DIRECTION OF THE CERTIFYING REPORTER.</u>**

COMMONWEALTH OF MASSACHUSETTS

LOWELL, ss

SUPERIOR COURT DEPARTMENT
CIVIL D
MICV2005-00397

EDWARD D. KENNEDY
Plaintiff

v.

FUTURE MANAGEMENT
et al.
Defendants

AFFIDAVIT OF KATHRYN A. DUNCAN

I, Kathryn A. Duncan, have been actively working in the medical billing industry for
over 15 years. I was the billing administrator for a busy 2 doctor oncology practice in
Dearborn Michigan for 5 years prior to moving to Massachusetts. Before being employed
by Future Management, I was employed by Medical Healthcare Solutions of Andover,
Massachusetts.

I started at Medical Healthcare Solutions as a billing specialist in January 1995. I began
managing a large group practice of 15 offices in 1997. I was promoted to General
Manager of the company in December 1998. I managed a staff of over 100 people. By
2003 our monthly receipts were over 5 million dollars a month.

My responsibilities ranged from staff issues within the company to working closely
with our clients. I met with potential clients and maintained close working relationships
with all of our existing clients.

I set and maintained billing standards for all our staff regarding data entry, collections
and payment posting. MHS does a formal close of each account every month, and it was
my duty to oversee the closings and review all of the reports for our clients.

I joined Future Management as an assistant to Miriam Rojas under the initial
framework of the previous administration in June of 2004. I was appointed Billing
Manager July 12, 2004 after Miriam submitted her resignation.

Since joining the company, it was my understanding that a new administration had
begun March 22, 2004. In my role as Billing Manager, I have attempted to implement
billing guidelines and policies to improve the procedures and increase collections.

I, Kathryn A. Duncan, do hereby swear and depose:

Upon my hire at Future Management, I became acutely aware of some glaring problems within the billing process. I have worked closely with Dr. Fred Giampa, Jim Kennedy and Dr. Joseph Giampa to find solutions to these problems.

1. The software, Eclipse that was in place from the previous administration of Tracy Kennedy and Miriam Rojas is grossly inadequate to maintain a practice of this size. The software is not capable to run a simple aging report. The statistic reports do not report accurately. I do not know how anyone was able to determine how the practice was doing. There was no record of adjustments or write offs. The staff was submitting written lists of write offs, but it didn't appear all the staff was keeping track and nor was it accurate. **Since becoming Manager, adjustments and write offs are now reported with weekly stats for each office along with payments and charges. Dr Fred Giampa and I are actively searching for a new software product. One that will equip our staff to work the accounts and also report effectively in order to manage the practice as a whole.**

2. Fees – The procedure table was inappropriately set up with multiple fees depending on the insurance carrier. I was told this was done to avoid adjustments. Insurances were billed according to what they paid. The procedure table had the same CPT with multiple codes with different fees for each insurance. This is not only inappropriate but also non-compliant with insurance carriers. A practice should not base fees on what will pay, nor should it ever bill different fees to different payors. **I reviewed all the fees with Dr.Fred Giampa, Jim Kennedy and Dr Joseph Giampa and we determined an appropriate fee schedule for all services for each division. This has been implemented for the Chiropractic, Orthopedic and Physical Therapy divisions.**

3. Procedure Codes – The previous administration had set up the procedure table with number and letter codes for CPT codes and the clinics were instructed to use those codes in place of CPT codes. This led to discrepancies throughout the clinics as to what each code actually meant. Furthermore it resulted in accurate coding and ultimately loss of payment, ie(Some clinics were recording a level of an E&M code for discharge and exams in their notes but a different level was being billed because of not knowing exactly what the codes meant). With so many clinics in so many locations it is very difficult to keep everyone up on changes made to coding. It is always most compliant and efficient to use CPT codes and not exchange them for codes made up by the office. **Under the current administration, all divisions are now using CPT codes to code their services, to avoid discrepancies in billing. We base our correct coding on the current CPT book published by the AMA.**

2

4. Under the previous administration, many practitioners did not have appropriate provider numbers to be reimbursed by the insurance carriers, Medicare, BCBS etc. I was given a copy of a memo dated 4/22/2002 from a meeting with Miriam Rojas, that stated if a practitioner did not have a provider number for the patient's insurance, the charge was not to be entered. I did not see any effort to promote the practitioners obtaining proper credentialing. This creates an area of huge losses for the company. Many insurance companies require the provider contract with them directly or their services will not be paid. It is also an issue when auto cases reach the 2K exhaust and the doctor is not a provider for the health insurance, again we suffer a loss for all the services after the 2K exhaust date.
**Under recommendation of the new administration, I have mailed out to each doctor in Massachusetts, a credentialing packet to equip him or her with the appropriate forms and or instructions on how to be credentialed with the main insurances in Massachusetts. I will also do the same for our providers who are out of Massachusetts.**

5. Another area of compromise was in the orthopedic clinics. The billing staff was instructed definitively by Ed Kennedy to bill all initial visits with CPT code 99205 and all subsequent visits with 99214. The doctors and PA's on site used these codes. After issues with Medicare of Mass, the policy changed and for Medicare only they were to bill all services with 99213 instead of 99214. When I questioned the PA's about their coding, they told me there were told to bill with the higher levels of service or they would be fired! This is completely non-compliant with any insurance for coding. All coding must have appropriate documentation to support the level of service billed. Medicare implemented a pre-payment review on all of Dr. Awbrey's services. Given the way they were billing, I wasn't surprised to see it. A pre-payment review requires documentation be submitted with all services so Medicare can review each claim for appropriate coding. Medicare and Workers Comp were down coding numerous services for AHCG after review of the reports. **Currently, I have given clear documentation to each provider in AHCG regarding E&M coding and am personally reviewing reports before sending the claims out to Medicare. Inappropriate coding when not corrected can set a practice up for audits and potential recoupment of payments, and fines. The previous administration did nothing to avoid such audits.**

6. Prior to the current administration, emphasis appeared to be on rebilling and sending letters rather than direct collection calls on outstanding balances. If claims are not paid, there is usually a reason. A small percentage of unpaid claims are due to the insurances not receiving the claim. By far the majority of unpaid claims are pended or denied for a specific reason. Rebilling a claim or sending a letter requesting status accomplishes nothing in getting the claim resolved for payment. **Dr Fred Giampa has instituted a requirement of collection calls by each collector to reach each day. They are also required to maintain a call log to**

report the calls made each day. **I support this policy 100 percent, as collection calls are the most efficient and cost effective way to follow up on unpaid claims. A lack of doing so results in a large accounts receivable of unpaid claims.**

7. I have found an alarming number of claims with no follow up done. I found no consistent means to do routine follow up on outstanding claims. Some staff ran lists of open services, while others did not. I could not understand this , there appeared to be no continuity of how the accounts receivable was being worked. Essentially, in the previous administration, there appeared to be no real "billing and collection" department, but only billing. This would appear to account for the tremendous losses with regards to the aged accounts receivable. Many unpaid claims are now to old to be collected. **Currently, I emphasize the need to run reports to insure consistent follow up. I have instructed staff on how to methodically work the older accounts in order to eventually work all open claims. Because of the reporting limitations of the software I have had to rely on patient lists to equip our collection staff. I have not been able to determine what our actual accounts receivable is, as the software cannot produce such a report.**

8. There was no means to balance or reconcile payments posted in Eclipse software and the deposits made to the bank. I was very uncomfortable with having no way to insure what was being posted was actually being deposited. Apparently this was never a concern of the previous administration. **Currently, I have coordinated with Daisy Foster in the business office to work at reconciling our numbers. I now have the staff report their weekly posting to match the deposit week, Wednesday through Tuesday. Once I have all the stats reported to me, I can total by practice and compare to what Daisy has for deposits. If we find a large discrepancy, we can narrow it down to the specific office and determine what the discrepancy is due to. This allows us to balance and also sets up a means of checks and balances for our staff to insure careful and accurate posting.**

9. Under the prior administration the staff were required to perform all billing activities, including, data entry, research and document gathering as well as bi-weekly billing, correspondence and payment posting, with an obvious absence of collection phone calls. This system is grossly flawed and results in potentially millions of dollars in losses from uncollected claims. Quite simply, each staff member could not perform all the duties asked of them in a forty hour work week. Currently, Dr. Fred Giampa and I have implemented a fast track and slow track system. The slow track handles data enty, information gathering, document

4

gathering and billing. The fast track is responsible for payment posting, addressing all denials and aggressive phone calls along with phone logs. This 2 track system has resulted in better production by our staff as their tasks are more clearly defined. We have a much more thorough review of unpaid claims as the fast track is more focused on collection calls. Essentially, we are now actually working the entire accounts receivable.

10. Unnecessary and expensive office supplies had been the standard. **I make an effort to use cost effective materials that also equip our staff with appropriate supplies.**

SIGNED UNDER PAINS AND PENALTY OF PERJURY,

Kathryn A. Duncan                    Date  2-9-05

## KATHYRN DUNCAN
803 Wellman Avenue
North Chelmsford, MA 01863
(978) 251-2214   Cell (978) 764-8814

**Software Tools:**

Microsoft Excel, Microsoft Word, Medisence, Medical Automation, Ntierprise, Medical Billing Assistant, Provider, Infinity

**Employment History:**

*Medical Healthcare Solutions*                                        *January 1995 to March 2004*
General Manager

- Charge Entry – CPT and ICD9.  Train staff to correctly assign ICD9 with CPT and modifiers.
- Address denials and appeals for all third party payors.  Insure proper training for staff.
- Management of personnel, staff of 85 – 100.
- Direct staff on accounts receivable management.  Meet regularly to assess areas of need. Assure standards of aged accounts are being met.  Set goals and train in areas necessary to maintain standards.
- Attend meetings with potential clients.
- Arrange meetings with existing clients to review their account.  Give assistance to clients to maximize their efficiency as well as maintain compliance.

*Joseph C. Won, MD, PC Hematology Oncology*                              *1990 to 1994*
Front Office Manager/Billing Manager

- Maintain electronic appointment schedule.  Office and Chemotherapy schedules.  Schedule and obtain pre-authorization for hospital admissions and procedures and tests needed for patients.  Front desk receptionist.
- Charge entry for Internal Medicine and Oncology practice, CPT and ICD9.  Chemotherapy billing.  Billing for non-coded drugs used for cancer treatment.
- Payment posting, manual and electronically.
- Follow up on all denials and insurance correspondence.  Maintain the accounts receivable.

*Concentrated on my husband's pastoral ministry and family*                    *1982 to 1989*

*Dispatcher for County Sheriff and City police Department*                       *1981 to 1982*

**Personal Information:**

- High School Graduate 1976
- Enlisted United States Air Force 1977
- Awarded Commendation Medal 1979
- Honorable discharge 1981

References Available

**1982 through 1989 Concentrated on my husband's pastoral ministry and family.**

- As a minister's wife I have gained much experience in relational, communication and management skills.

**1981 to 1982 Dispatcher for County Sheriff and City police Department.**

- Radio dispatcher.
- Answer all incoming calls.
- Verify DMV information with NCIC.
- Dispatch additional emergency agencies when needed.

**Software Tools:**

Microsoft Excel
Microsoft Word

Practice management software:

| | |
|---|---|
| Medisence | Medical Automation |
| NTierprise | Medical Billing Assistant |
| Provider | Infinity |

**References:**

Charlene Levy, VP
Medical Healthcare Solutions
100 Brickstone Square
Andover, MA 01810
(978) 474-8885 x 160

Ginny Fiander, Senior Manager
Medical Healthcare Solutions
100 Brickstone Square
Andover, MA 01810
(978) 474-8885 x 163

Rev Robert Crosby
Mount Hope Assembly of God
3 McGinnis Drive
Burlington, MA  01803
(781) 272-1014 x 110

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ENCOMPASS INSURANCE COMPANY OF MASSACHUSETTS,<br><br>        Plaintiff,<br><br>   vs.<br><br>JOSEPH D. GIAMPA, FREDERICK T. GIAMPA, ADVANCED SPINE CENTERS, INC., d/b/a FIRST SPINE REHAB, FUTURE MANAGEMENT CORPORATION, FUTURE MANAGEMENT BUSINESS TRUST, EDWARD KENNEDY, BRIAN J. CULLINEY, D.C. and JENNIFER McCONNELL, D.C.<br><br>        Defendants. | Civil Action No.  1:05-cv-11693-RCL |

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(a)(2)

Pursuant to Local Rule 7.1(a)(2), I hereby certify that I have conferred with counsel of record, as well as, Attorney Francis A. Gaimari, attorney of record in related pending litigation, Safety Insurance Company v. Joseph D. Giampa, et al, Middlesex Superior Court, C.A. No. 2007-00679, and attempted in good faith to resolve or narrow the issues addressed in Motion to Compel Deposition of Rebecca Morales.

Respectfully submitted,
*Encompass Insurance Company,*
By its attorneys,

/s/ Nathan A. Tilden

Richard D. King, Jr., BBO#638142
Nathan A. Tilden, BBO#647076
Michael W. Whitcher, BBO#663451
SMITH & BRINK, P.C.
122 Quincy Shore Drive
Quincy, Massachusetts 02171
(617) 770-2214

Dated: May ___, 2007

1

### **Certificate of Service**

I, Nathan A. Tilden, hereby certify that on this ___ day of May, 2007, this document was filed through the CM/ECF and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

_____/s/ Nathan A. Tilden_____