UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ENCOMPASS INSURANCE COMPANY OF MASSACHUSETTS,<br><br>       Plaintiff,<br><br>   vs.<br><br>JOSEPH D. GIAMPA, FREDERICK T. GIAMPA, ADVANCED SPINE CENTERS, INC., d/b/a FIRST SPINE REHAB, FUTURE MANAGEMENT CORPORATION, FUTURE MANAGEMENT BUSINESS TRUST, EDWARD KENNEDY, BRIAN J. CULLINEY, D.C. and JENNIFER McCONNELL, D.C.<br><br>       Defendants. | Civil Action No.  1:05-cv-11693-RCL |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES

NOW COMES the plaintiff, Encompass Insurance Company of Massachusetts (hereinafter "Encompass"), pursuant to Fed. R. Civ. P. 37 and Local Rule 37.1 and respectfully requests that this Honorable Court enter an Order COMPELLING defendant, Advanced Spine Centers, d/b/a First Spine Rehab (hereinafter "ASC"), to provide complete answers to Encompass' First Set of Interrogatories.  Specifically, ASC has failed to provide any meaningful answers to the interrogatories propounded by Encompass.  Encompass hereby submits the within memorandum of law in support of the instant motion.  As grounds for this request, Encompass avers as follows:

## I.     BACKGROUND

This case is brought pursuant to Title 18 U.S.C. §1962, Racketeer Influenced and Corrupt Organizations Act, Mass. Gen. Laws, ch. 93A, the Massachusetts Consumer Protection Act, and Massachusetts common law of fraud and civil

conspiracy.  The defendants acting in concert participated in a concealed, evolving and continuous scheme and conspiracy to defraud Encompass.  The geographic center of this conspiracy was First Spine Rehab, owned and operated by the Giampa chiropractors and Kennedy Brothers as shareholders/principals of FMC.

The objective of defendants' fraud scheme was to illegally obtain money from the plaintiff through the submission of false medical records and bills (hereinafter "false medical documentation") in connection with alleged motor vehicle accidents.  The defendants collected substantial sums of money as payment in connection with such false medical documentation referencing alleged chiropractic treatment that was never rendered and/or was unnecessary, excessive and unrelated to covered claims.  The defendants successfully executed this scheme to defraud by creating and submitting such false medical documentation to Encompass and others by way of the U.S. Mail.

On January 12, 2007, Encompass served upon ASC plaintiff's First Set of Interrogatories.  See Plaintiff's First Set of Interrogatories Propounded to the Defendant, Advanced Spine Centers, d/b/a First Spine Rehab, annexed hereto at Exhibit A.  On April 22, 2007, ASC issued its answers to Encompass' First Set of Interrogatories.  See Defendant, Advanced Spine Centers, d/b/a First Spine Rehab, Answers to Plaintiffs' First Set of Interrogatories, annexed hereto at Exhibit B.  The defendant's discovery responses are incomplete.  Encompass now brings this Motion to Compel requesting that this Court order defendant to provide true and accurate responses to Encompass' First Set of Interrogatories.

## II.     STANDARD OF REVIEW

Modern instruments of discovery serve a useful purpose in that, together with pre-trial procedures, they make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.  United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958).  Pursuant to Rules 37(a)(2) Fed. R. Civ. P., when a party fails to answer interrogatories or respond to requests for production of documents, the requesting party may move for an order compelling discovery. Included within this discretion is the power to compel a party to disclose information or otherwise cooperate in the discovery process.  The authority for this power lies with Fed. R. Civ. P. 37.  Specifically, Fed. R. Civ. P. 37(a)(2)(3) provides:

> **Evasive or Incomplete Disclosure, Answer or Response.**
> For purposes of this subdivision an evasive or incomplete disclosure, answer or response is to be treated as a failure to disclose, answer or respond.

Moreover, Fed. R. Civ. P. 33 governing interrogatories, provides that:

> Without leave of court or written stipulation, any party may serve upon any other party written interrogatories…to be answered by the party served…who shall furnish such information as is available to the party.
>
> ***
>
> Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable.
>
> ***

> The party submitting the interrogatories may move for an order under Rule 37(a) with respect to any objection to or failure to answer an interrogatory.

Fed. R. Civ. P. 33(a), (b)(1), (b)(5) (alterations added).

In the instant case, plaintiff requested that defendant respond to discovery requests designed to discover information defendant possesses relating to the allegations set forth in plaintiff's Complaint. The plaintiff's narrowly-tailored discovery requests were designed to elicit information that is reasonably calculated to lead to the discovery of admissible evidence in this matter. The plaintiff's request(s) fall within the purview of Fed. R. Civ. P. 26 and 33 and does not seek the production of materials which are in any way privileged, either as attorney-client communications or work-product. Therefore, this Court is authorized to compel defendant to produce the request materials.

## III.    THE DEFENDANT HAS FAILED TO PROVIDE ANSWERS TO PLAINTIFF'S DISCOVERY REQUESTS IN ACCORDANCE WITH FED. R. CIV. P. 33 AND LOCAL RULE 33.1

### INTERROGATORY #9

What happened to the Patient Sign-In Sheets created and maintained at the treating clinic(s)?

### DEFENDANT'S ANSWER #9

> Objection: The Defendant objects to this request as it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and beyond the scope of discoverable information pursuant to the Federal Rules of Civil Procedure and the Local Rules of the District of Massachusetts.

The defendant has failed to answer the foregoing interrogatory. Encompass requested any and all information relating to the appearance and/or presentation of the patient(s) at the treating clinic(s), including but not limited to, sign in sheets, patient lists,

or other information/documents reflecting the dates and times on which the patient(s) appeared at the FMC clinic(s) for treatment, testing, examination, therapy and/or physiotherapy.  <u>See</u> Ex. A, No. 11.  The defendant (through Joseph Gaimpa) merely objected to this question and failed to provide any answer regarding the existence and/or location of these patient sign-in sheets.

There can be no reasonable debate that defendant maintained daily logs of all of the patients that visited the various FMC clinics.  In fact, the testimony of two of the defendant's employees clearly establishes that such documentation exists.  Sokah Dy, a current First Spine Lowell employee, testified that the clinic maintains a list of patients it sees each day.  <u>See</u> Deposition of Sokah Dy, Vol. I at pp. 170-72, annexed hereto at Exhibit C.  Ms. Dy further testified that all patients are required to sign a sign-in sheet at each office visit.  <u>See</u> <u>id</u>.  This statement was corroborated by the testimony of First Spine employee, Phally Samith.  <u>See</u> Deposition of Phally Samith, Vol. I at pp. 90-91, annexed hereto at Exhibit D.  The employees of the First Spine Lowell clinic would, on a daily basis, fax a sheet to FMC's corporate headquarters listing the name, time and address of each patient.  <u>See</u> Ex. C., Vol. II at pp. 116-119.  The clinics themselves would retain a hard copy of the daily patient list in its own files.  <u>See</u> <u>id</u>.  In her nine (9) years of employment with defendants, Ms. Dy testified that she created and maintained a patient sign-in sheet each day.  <u>See</u> <u>id</u>.

The defendant cannot refuse to produce this relevant, properly discoverable evidence on grounds that such information is not reasonably calculated to lead to the discovery of admissible evidence and beyond the scope of discoverable information.

The sign-in sheets are integral to Encompass' assertion that defendants (including ASC/First Spine) were engaged in a pattern of over billing and over-utilization of treatment. Encompass requests that this Court enter an order compelling the defendant to provide information regarding the sign-in sheets, or in the alternative, provide a written confirmation that no sign-in sheets existed (or were destroyed subsequent to their creation).

## IV.    CONCLUSION

WHEREFORE, for all the foregoing reasons, plaintiff, Encompass Insurance Company, respectfully requests that this Honorable Court enter an Order COMPELLING defendant, Advanced Spine Centers, d/b/a First Spine Rehab, to provide true and accurate responses to Encompass' First Set of Interrogatories within twenty (20) days of this Court's Order.

Respectfully submitted,
*Encompass Insurance Company,*
By its attorneys,

/s/ Nathan A. Tilden

_____
Richard D. King, Jr., BBO#638142
Nathan A. Tilden, BBO#647076
Michael W. Whitcher, BBO#663451
SMITH & BRINK, P.C.
122 Quincy Shore Drive
Quincy, Massachusetts 02171
(617) 770-2214

Dated:  June 25, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ENCOMPASS INSURANCE COMPANY OF
MASSACHUSETTS,

              Plaintiff,

   vs.

JOSEPH D. GIAMPA, FREDERICK T.
GIAMPA, ADVANCED SPINE CENTERS,
INC., d/b/a FIRST SPINE REHAB, FUTURE
MANAGEMENT CORPORATION,
EDWARD KENNEDY, BRIAN J.
CULLINEY, D.C. and JENNIFER
McCONNELL, D.C.

              Defendants.

Civil Action No.  1:05-cv-11693-RCL

## PLAINTIFF'S FIRST SET OF INTERROGATORIES PROPOUNDED TO THE DEFENDANT, ADVANCED SPINE CENTERS, INC., D/B/A FIRST SPINE REHAB

### I.    INTRODUCTION

Pursuant to Fed. R. Civ. P. 26 and 33, the plaintiff, Encompass Insurance Company (hereinafter "Encompass"), requests the defendant, Advanced Spine Centers, Inc. d/b/a First Spine Rehab (hereinafter "First Spine"), answer the following interrogatories fully and separately in writing and under oath within thirty (30) days after service.

### II.    INSTRUCTIONS

A.    These interrogatories are continuing in nature and require automatic supplemental or amended responses to the extent specified in Fed. R. Civ. P. 26, should the defendant, or his counsel, obtain further supplemental information.

B.    In answering each interrogatory, you are requested to identify and produce all documents in your possession or control, or in the possession or control of your employees or agents and other persons purporting to act on your behalf, which contain information utilized to answer the interrogatories.

C.    The defendant shall produce any non-identical copies of any documents or materials responsive to any of these interrogatories, or any subsequent interrogatories.

D.    If documents are not attached to the answers to these interrogatories, the substance of such documents should be set forth and an explanation given as to why the document or documents are not attached.

E.    If any of these interrogatories cannot be answered in full, answer the interrogatory to the extent possible, specifying each reason for the inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portion.

F.    In answering the interrogatories, furnish all information available to you, regardless of whether or not it is based on personal knowledge or records of you, your agents or representatives of others.

G.    State which answers or parts thereof are based upon personal knowledge, and which answers or parts thereof are based upon information and belief.  For each answer or part thereof based upon information and/or belief, describe in detail and with particularity the basis for the information and/or belief.

H.    In the event that the defendant withholds from production any information or document on the grounds of privilege, the defendant shall identify the document or information withheld and shall include an identification and description of the nature of the privilege claimed, and the subject matter of the withheld information or document.

I.    In answering these interrogatories, the defendant is charged with the understanding that reference to any individual shall be considered inclusive of any representative of that person and any entity (legal, business or otherwise) with which the referenced person has an interest.  For instance, an interrogatory which asks whether any money has been paid to "Mr.

X" would require an answer in the affirmative if any money had been paid to (1) Mr. X, (2) any representative or agent of Mr. X, and (3) any entity in which Mr. X held a legal or equitable interest.

## III.    DEFINITIONS

A.    The words **"and"** and **"or"** shall be deemed to mean "**and/or**" and the plural shall include the singular and vice versa.

B.    The term **"communication"** means any act or instance of transferring, transmitting, passing, delivering, or giving information, by oral, written, or electronic means, including, but not limited to, notes, letter, telegram, telex, telephone facsimile, tape, electronic mail, voice mail, or otherwise.

C.    **"Create"**, **"created"**, or **"creating"** means to cause to exist, originate, produce, or cause the creation of.

D.    As used herein, the terms **"document"** or **"documents"** mean all papers and other tangible items and materials upon which information is recorded or from which information may be obtained and includes all documents that you have in your possession, custody, or control, or have the right to obtain upon request or demand.  This definition includes all copies, reproductions and facsimiles of documents and includes, but is not limited to, any and all letters, business cards, advertisements, correspondence, contracts, agreements, bills, orders, receipts, records, books, computer tapes and print-outs, intracorporation communications, memoranda, notes, notebooks, maps, sketches, cablegrams, telegrams, reports, press releases, advertising and promotional literature, prints, drawings, plans, photographs, printed forms, manuals, brochures, lists, publications, catalogues, directories, videotapes, other tape recordings, films, microfilm, and all other writings, including drafts, typings, printings, minutes or copies or

reproductions thereof in the possession, custody or control of defendant or any other past or

present officer, director, agent, employee consultant, or attorney for defendant or any person

acting on behalf of defendant.  If copies of documents are not identical for any reason, including

handwritten notations, initials, or identifying marks, each non-identical copy is a separate

document within the meaning of this definition.

      E.      When referring to a fact, situation, event or circumstance, **"identify"** means to set

forth the time, place, and description thereof, the names of the participants therein and enumerate

all documents which refer to or reflect such occurrence.

      F.      When referring to documents, **"identify"** means to give, to the extent known:

        (1)      the title, heading or caption of such document, if any;

        (2)      the identifying number(s), letter(s) or combination thereof, if any and the

            significance or meaning of such number(s), letter(s) or combination

            thereof;

        (3)      the inclusive dates of each such document;

        (4)      the general nature or description of such document (i.e., whether it is a

            letter, memorandum, minutes of meeting, etc.) and the number of pages of

            which it consists;

        (5)      the name of each author, addressee, or recipient.

      G.      When referring to a person, **"identify"** means to give, to the extent known, the

person's full name, present or last known address, and when referring to a natural person, the

present or last known place of employment.  Once a person has been identified in accordance

with this subparagraph, only the name of that person need be listed in response to subsequent

discovery requesting the identification of that person.

H.    The term **"person"** means, in the plural, as well as the singular, any natural person, firm, association, partnership, corporation, or other entity.  All references herein to any person shall include its employees, agents or representatives of such person or entity.

I.    The term **"relating to"** means referring to, describing, concerning, evidencing, or constituting.

J.    **"False medical documentation"** means any invoice, treatment record, SOAP note, report or other document containing and/or referencing:

    a.  Inaccurate, inadequate and inappropriate documentation;

    b.  Treatment which exceeds the type, quality and/or amount of the documented and clinically reasonable chiropractic needs of the patient;

    c.  A recipe of treatment absent any individualized medical decision making;

    d.  Treatment which is unrelated to the diagnosed, or reasonably suspected, injury or condition incurred by the patient;

    e.  Treatment which is provided solely for the purpose of enabling the patient to incur medical treatment expenses in excess of the tort threshold established by Mass. Gen. Laws ch. 231, §6D;

    f.  Charges for services which were not performed and/or overstating the amount of time spent evaluating and/or treating patients;

    g.  Charges for billing that exceeds reasonable fees for such services;

    h.  Charges that amount to overutilization of practice;

    i.  Charges for adjustments/manipulations which are not based on currently accepted procedure codes;

j.  Charges for examinations which are based on a level of coding which is not consistent with the patient's medical history, subjective and objective clinical findings concerning the patient which were made at the time of the visit, the complexity of the clinical decision-making involved in the diagnosis and/or treatment of the patient, or the nature of the care provided to the patient;

k.  Charges for treatments, procedures or services which were not rendered, were not fully rendered, or were not rendered as represented by the charging chiropractor;

l.  Charges for excessive and improper use of supportive procedures and therapies;

m.  Charges for treatment of minors that wholly exceed reasonable and necessary treatment parameters; and

n.  False and misleading information.

K.  **"I"** and/or **"you"** shall mean Advanced Spine Centers, Inc., d/b/a First Spine Rehab.

L.  **"Chiropractic documentation"** shall mean all invoices, treatment records, SOAP notes, reports and documentation created by Advanced Spine d/b/a First Spine and Rehab.

M.  **"First Spine"** shall mean Advanced Spine Center d/b/a First Spine and Rehab located in Lowell, Massachusetts as well as Future Management Corporation and all its parent corporations and/or subsidiary corporations, agents, representatives, predecessors-in-interest and successors-in-interest.

N.  **"Runner"** shall mean persons who facilitate(d) the referral of patients to chiropractic, therapy and/or massage facility.

O.     **"Relevant Period"** shall mean 1998 through the present inclusive and/or any portion thereof.

P.     **"Incentives"** shall mean the transfer with or without consideration of anything of present or contingent value, including, but not limited to, money, bonuses, gift certificates, coupons, vouchers, taxi service, VIP discount/rebate cards.

Q.     **"The Patient Treatment Period"** shall mean the period when the patient(s) referred to in the Complaint was/were receiving treatments at First Spine.

## IV.     <u>INTERROGATORIES</u>

1.     Please fully identify the person answering these interrogatories by stating your full name, Social Security number, date of birth, present residential address, occupation, present business address, and position.

2.     For each person who you or your attorney anticipate calling to testify as an expert at the time of trial, please state his/her full name, residential address, occupation and field of expertise; state the subject matter upon which he/she is expected to testify; state the substance of the facts to which he/she is expected to testify and state a summary of the grounds for each such opinion.

3.     Please list/describe all exhibits you intend to introduce into evidence at the time of trial.

4.     Describe, in detail, the entire computer system in place at the treating clinic and Future Management in connection with the during The Patient Treating Period. Include, but do not limit your answer to:

      (a)     types and brands of hardware, operating systems in use;
      (b)     application software in use (including installation and upgrade dates);

    (c)    electronic mail applications;

    (d)    personal and office planner applications;

    (e)    word-processing and database applications;

    (f)    server side applications;

    (g)    list all computers or other hardware that have been used to generate, receive, or store any data concerning the patient(s) and/or the treating clinic(s); and

    (h)    the person(s) responsible for network maintenance and architecture.

5.    Did the treating clinic, Future Management or its employees or agents, ever conduct an analysis of clinical data stored in its computers or destroy/alter data or hand copy information relating to the subject of this litigation?  If your answer is anything other than an unqualified negative, then state:

    (a)    who conducted the analysis destroy/alter information;

    (b)    when such conduct occurred;

    (c)    who was responsible; and

    (d)    where it was conducted.

6.    What payroll service(s) did the plaintiff and/or treating clinic(s) use during the time period when the patient(s) identified in the Complaint were treating with the plaintiff and/or treating clinic(s).

7.    Please identify all persons with bookkeeping and/or accounting responsibilities concerning the operation of Future Management generally and First Spine (Lowell specifically during the period 1998 through the present, including in your answer all current contact information for such person(s).

8.    List the person(s) responsible for conducting, maintaining, storing, and cataloguing any backups made in relation to computers used at the offices of the treating clinic(s), or in connection with the operation of the treating clinic(s).

9.    What happened to the Patient Sign-In Sheets created and maintained at the treating clinic(s)?

Respectfully submitted,
*Encompass Insurance Company,*
By its attorneys,

_____
Richard D. King, Jr., BBO#638142
Nathan A. Tilden, BBO#647076
SMITH & BRINK, P.C.
122 Quincy Shore Drive
Quincy, Massachusetts 02171
(617) 770-2214

Dated:  January ___, 2007

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETS

_____

ENCOMPASS INSURANCE COMPANY OF
MASSACHUSETS,

        Plaintiff,

     v.                           Case No. 05-11693 RCL

JOSEPH D. GIAMPA, FREDERICK T. GIAMPA,
ADVANCED SPINE CENTERS, INC. d/b/a
FIRST SPINE REHAB, FUTURE
MANAGEMENT CORPORATION,
FUTURE MANAGEMENT BUSINESS TRUST,
EDWARD KENNEDY, BRIAN J. CULLINEY,
D.C., and JENNIFER McCONNELL, D.C.

        Defendants.
_____


## DEFENDANT ADVANCED SPINE CENTERS, INC.'S ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Now appears the Defendant Advanced Spine Centers, Inc. (hereinafter "the Defendant"),

by it's attorneys BELESI & CONROY, P.C., as and for it's Answers to Plaintiff's First

Set of Interrogatories, answers and objects as follows:

### *General Objections*

    Without limiting or waiving any specific objections set forth in response to any

particular response to interrogatories the Defendant objects generally to the plaintiff's 1st

set of interrogatories as follows:

Defendant objects to the interrogatories to the extent that such interrogatories infringe upon or request information subject to and protected by the attorney client privilege or attorney work product doctrine.

Defendant generally objects to plaintiff's 1st set of interrogatories. To the extent such interrogatories request information based upon, either directly or indirectly, documents, information or materials not in the possession custody or control of the defendant.

Defendant generally objects to the plaintiff's 1st set of interrogatories to the extent that such interrogatories seek information which is beyond the scope of discoverable materials pursuant to the Federal Rules of Civil Procedure or the local rules of the Massachusetts District Court.

Defendant generally objects to the plaintiff's 1st set of interrogatories to the extent such interrogatories are overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible materials.

Defendant specifically reserves the right to supplement, modify or alter these responses.

## <u>ANSWERS</u>

1.    Please fully identify the person answering these interrogatories by stating your full name, Social Security number, date of birth, present residential address, occupation, present business address, and position.

ANSWER:   Joseph D. Giampa, 05/09/58, 238 East Street, Walpole, MA, Chiropractor, 188 Concord Street, Framingham, MA, Director.

2.    For each person for who you and your attorney anticipate calling to testify as an expert at the time of trial, please state his/her full name, residential address, occupation and field of expertise; state the subject matter upon which he/she is

expected to testify; state the substance of the facts to which he/she is expected to testify and state a summary of the grounds for each such opinion.

ANSWER:  This response will be supplemented at the appropriate time in conformity with Fed.R.Civ.P. 26(a)(2).

3.     Please list/describe all exhibits you intend to introduce into evidence at the time of trial.

ANSWER:  This response will be supplemented at the appropriate time in conformity with the Federal Rules of Civil Procedure, the Local Rules for the District of Massachusetts and the anticipated Pre-trial Order in this matter.

4.     Describe, in detail, the entire computer system in place at the treating clinic and Future Management in connection with the during The Patient Treating Period.  Include, but do not limit your answer to:

   (a)     types and brands of hardware, operating systems in use;
   (b)     application software in use (including installation and upgrade dates);
   (c)     electronic mail applications;
   (d)     personal and office planner applications;
   (e)     word-processing and database applications;
   (f)     server side applications;
   (g)     list all computers or other hardware that have been used to generate, receive, or store any data concerning the patient(s) and/or the treating clinic(s); and
   (h)     the person(s) responsible for network maintenance and architecture.

OBJECTION: The Defendant objects to this request as it is overly broad unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and beyond the scope of discoverable information pursuant to the Federal Rules of Civil Procedure and the Local Rules of the District of Massachusetts.

ANSWER: Future Management has a two (2) server network system (Dell) with five workstations.  There is a primary server and a scan server.  There is a backup system that has an offsite fireproof storage system and an on-site secondary storage system.  The billing is no longer done at Future Management but during the period in question the billing software was Lytec and the email system was Microsoft Outlook.

5.     Did the treating clinic, Future Management or its employees or agents, ever conduct an analysis of clinical data stored in its computers or destroy/alter data or hand copy information relating to the subject of this litigation?  If your answer is anything other than an unqualified negative, then state:

     (a)    who conducted the analysis destroy/alter information;
     (b)    when such conduct occurred;
     (c)    who was responsible; and
     (d)    where it was conducted.

OBJECTION: The Defendant objects to this request as it is overly broad unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and beyond the scope of discoverable information pursuant to the Federal Rules of Civil Procedure and the Local Rules of the District of Massachusetts.

6.     What payroll service(s) did the plaintiff and/or treating clinic(s) use during the time period when the patient(s) identified in the Complaint were treating with the plaintiff and/or treating clinic(s).

OBJECTION: The Defendant objects to this request as it is overly broad unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and beyond the scope of discoverable information pursuant to the Federal Rules of Civil Procedure and the Local Rules of the District of Massachusetts.

ANSWER:  The Defendant has no knowledge of the payroll service of the Plaintiff and did not have a payroll service itself.

7.     Please identify all persons with bookkeeping and/or accounting responsibilities concerning the operation of Future Management generally and First Spine (Lowell) specifically during the period 1998 through the present, including in your answer all current contact information for such person(s).

OBJECTION: The Defendant objects to this request as it is overly broad unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and beyond the scope of discoverable information pursuant to the Federal Rules of Civil Procedure and the Local Rules of the District of Massachusetts.

ANSWER:  Tracy Kennedy, Daisy Foster, Kathy Duncan, Gaynor Kohn.

8.     List the person(s) responsible for conducting, maintaining, storing, and cataloguing any backups made in relation to computers used at the offices of the treating clinic(s), or in connection with the operation of the treating clinic(s).

OBJECTION: The Defendant objects to this request as it is overly broad unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and beyond the scope of discoverable information pursuant to the Federal Rules of Civil Procedure and the Local Rules of the District of Massachusetts.

ANSWER:  The treating clinics do not use computers.

9.     What happened to the Patient Sign-In Sheets created and maintained at the treating clinic(s)?

OBJECTION: The Defendant objects to this request as it is overly broad unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and beyond the scope of discoverable information pursuant to the Federal Rules of Civil Procedure and the Local Rules of the District of Massachusetts.

Signed under the pains and penalties of perjury this 21st day of April, 2007

Advanced Spine Centers, Inc.
By: Joseph D. Giampa, President

For objections:

Matthew J. Conroy, Esq.
BELESI & CONROY
114 Waltham Street
Lexington, Massachusetts 02421
(781) 862-8060

## <u>CERTIFICATE OF SERVICE</u>

    I, Matthew J. Conroy do hereby certify that a true and accurate copy of the foregoing pleading was served upon all counsel of record this 22d day of April 2007 by email, and by 1st class US Mail postage prepaid.

              <u>/s/ Matthew J. Conroy</u>
              Matthew J. Conroy

Pages: 1-251
Vol. I
Exhibits: 1

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

ENCOMPASS INSURANCE COMPANY          )
OF MASSACHUSETTS,                     )
    Plaintiff-Counterclaim Defendants, )
                                     )
VS.                                  )
                                     )
JOSEPH D. GIAMPA, FREDERICK T. GIAMPA )
ADVANCED SPINE CENTERS, INC. d/b/a   )
FIRST SPINE REHAB, FUTURE MANAGEMENT )
CORPORATION, FUTURE MANAGEMENT       )
BUSINESS TRUST, EDWARD KENNEDY, BRIAN )
J. CULLINEY, D.C. and JENNIFER        )
McCONNELL, D.C.                       )Civil Action
    Defendants-Counterclaim Plaintiffs.)No.05-11693RCL
——————————————————————————————————————)
                                     )
JOSEPH D. GIAMPA, FREDERICK T. GIAMPA, )
ADVANCED SPINE CENTERS, INC.          )
    Third-Party Plaintiffs           )
                                     )
VS.                                  )
                                     )
ALLSTATE INSURANCE COMPANY,          )
    Third-Party Defendant            )
——————————————————————————————————————)

### DEPOSITION OF SOKHA DY

        A witness called by and on behalf of the
Encompass Insurance Company, taken pursuant to the
Massachusetts Rules of Civil Procedure, before Jo-Anne M.
Golden, a Professional Court Reporter and Notary Public
within and for the Commonwealth of Massachusetts, at the
Law Offices of Smith & Brink, P.C., 122 Quincy Shore
Drive, Quincy, Massachusetts 02171.  Commencing on
Thursday, February 15, 2007 at 10:18 a.m.

170

| | | |
|---|---|---|
| 1 | Q. | And where is that located? |
| 2 | A. | Needham.  Needham, Mass. |
| 3 | Q. | And you mail those? |
| 4 | A. | We faxed. |
| 5 | Q. | You fax all the records now? |
| 6 | A. | Yes.  Yes. |
| 7 | Q. | When did you start doing that, once they moved |
| 8 | | from Chelmsford? |
| 9 | A. | Yes. |
| 10 | Q. | And when you say you fax the records, do you |
| 11 | | fax -- |
| 12 | A. | Dailys, like how many patients we saw a day and we |
| 13 | | fax at the end of the day and then they can put |
| 14 | | whatever there. |
| 15 | Q. | Is there a separate document that's generated |
| 16 | | every day to tally up how many patients were seen |
| 17 | | that day? |
| 18 | A. | I believe, yes. |
| 19 | Q. | That's one of the things you fax, correct? |
| 20 | A. | Yes.  Yes. |
| 21 | Q. | So you know that it exists, right? |
| 22 | A. | Yes. |
| 23 | Q. | And what's the name of that document? |
| 24 | A. | Daily sheet. |

171

```
 1    Q.   Daily sheet?

 2    A.   Yes.

 3    Q.   And that has the information on how many patients

 4         were seen.  What else -- what other information is

 5         contained on the daily sheet?

 6    A.   Patient name -- patient name and then if it's new

 7         patients, the doctor -- we put the doctor saw new

 8         patients, that's all.

 9    Q.   Does it have any information about who the

10         attorney is?

11    A.   No.

12    Q.   Does it have the information about the insurance?

13    A.   No.

14    Q.   Just the patient name --

15    A.   Patient name --

16    Q.   -- who the doctor is --

17    A.   -- and then who the doctor that treat and write

18         out the note that day.

19    Q.   And what?

20    A.   The patient's name and then the notes attached to

21         the patient's name like the doctor saw them and

22         what therapy they getting we fax every day.

23    Q.   And that's just one sheet?

24    A.   The whole sheet for all the patients and then each
```

172

1          sheet for every patient that we saw that day.

2     Q.   Okay.  So like one general tally sheet where

3          everyone is listed --

4     A.   Yes.

5     Q.   -- and then the individual treatment --

6     A.   Yes.

7     Q.   -- daily sheet?

8     A.   Yes.

9     Q.   Are you familiar with the term soap note?

10    A.   Soap note, that's what we call daily notes.

11    Q.   Okay.

12    A.   Soap note and daily notes the same.

13    Q.   Same thing?

14    A.   Yes.

15    Q.   So the soap note for each patient is faxed every

16         day to Needham?

17    A.   Yes.

18    Q.   Who is the manager in Needham?

19    A.   The manager in Needham --

20    Q.   If you know?

21    A.   Cathy Dunkin is there now.

22    Q.   Oh, she moved down to Needham?

23    A.   Yes.

24    Q.   And are there other people that used to be in

251

C E R T I F I C A T E

COMMONWEALTH OF MASSACHUSETTS

COUNTY OF NORFOLK, SS.


              I, JO-ANNE GOLDEN, a
Professional Court Reporter and Notary Public in and
for the Commonwealth of Massachusetts, do hereby
certify that the foregoing Deposition of SOKHA DY was
taken before me on February 15, 2007.  The said witness
was duly sworn before the commencement of her
testimony; that the said testimony was taken
audiographically by myself and then transcribed under
my direction.  To the best of my knowledge, the within
transcript is a complete, true and accurate record of
said Deposition.

              I am not connected by
blood or marriage with any of the said parties,
nor interested directly or indirectly in the
matter in controversy.

              In witness whereof, I
have hereunto set my hand and Notary Seal this
23rdth day of February, 2007.


_____
Jo-Anne M. Golden, Notary Public

My Commission Expires:
December 6, 2007


PLEASE NOTE: THE FOREGOING CERTIFICATION OF THIS
TRANSCRIPT DOES NOT APPLY TO ANY REPRODUCTION OF THE
SAME BY ANY MEANS UNLESS UNDER THE DIRECT CONTROL
AND\OR DIRECTION OF THE CERTIFYING REPORTER.

Pages: 1-131
Vol. II
Exhibits: 16

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ENCOMPASS INSURANCE COMPANY  )
OF MASSACHUSETTS,  )
  Plaintiff-Counterclaim Defendants, )
         )
VS.           )
         )
JOSEPH D. GIAMPA, FREDERICK T. GIAMPA )
ADVANCED SPINE CENTERS, INC. d/b/a  )
FIRST SPINE REHAB, FUTURE MANAGEMENT )
CORPORATION, FUTURE MANAGEMENT  )
BUSINESS TRUST, EDWARD KENNEDY, BRIAN )
J. CULLINEY, D.C. and JENNIFER  )
McCONNELL, D.C.      )Civil Action
  Defendants-Counterclaim Plaintiffs.)No.05-11693RCL
————————————————————————————————— )
         )
JOSEPH D. GIAMPA, FREDERICK T. GIAMPA, )
ADVANCED SPINE CENTERS, INC.  )
  Third-Party Plaintiffs  )
         )
VS.           )
         )
ALLSTATE INSURANCE COMPANY,  )
  Third-Party Defendant  )
————————————————————————————————— )

## DEPOSITION OF SOKHA DY

   A witness called by and on behalf of the
Encompass Insurance Company, taken pursuant to the
Massachusetts Rules of Civil Procedure, before Jo-Anne
M. Golden, a Professional Court Reporter and Notary
Public within and for the Commonwealth of Massachusetts,
at the Law Offices of Smith & Brink, P.C., 122 Quincy
Shore Drive, Quincy, Massachusetts 02171. Commencing on
Thursday, March 28, 2007 at 10:26 a.m.

```
1    A.   Yes.

2    Q.   At any time during your employment there did you

3         keep track of the number of patients that treated

4         at First Spine, Lowell in any given day?

5    A.   Yes.

6    Q.   And how did you keep track of that number?

7    A.   We have patients sign in and we have all the sign

8         in sheet.

9    Q.   And would you total it up at the end of the day

10        and say, you know, 8 patients treated here, 12

11        patients treated here or whatever the number

12        happened to be?

13   A.   No, we just fax the note to the medical building

14        and then we keep the sign in sheet in our binder.

15   Q.   And have you done that throughout your employment

16        there?

17   A.   Yes.

18   Q.   So the entire nine years you've been employed

19        there, there has been a sign up sheet --

20   A.   Yes.

21   Q.   -- everyday?

22   A.   Yes.

23   Q.   And do you still have those records?

24   A.   Yes.
```

117

1   Q.   And where are they located?

2   A.   In the office.

3   Q.   In your office?

4   A.   In my office, yes.

5   Q.   And what's the -- do you know what the title of

6        that document is?

7   A.   Patient -- patient sign in sheet.

8   Q.   Okay.  Do you keep weekly or monthly statistics of

9        how many patients treat?

10  A.   Weekly.

11  Q.   Weekly.  And how do you calculate that number?

12  A.   Between Monday through Friday and at the end of

13       the -- the end of the week we add it up and we put

14       it on the statistic -- we keep in the statistic

15       folder.

16  Q.   I'm sorry what was that?

17               **MR. CONROY:** Statistic.

18  Q.   The statistic folder, okay, sorry.

19  A.   Statistic.

20  Q.   Do you do that calculation?

21  A.   Whoever available at that time.

22  Q.   But you have done it?

23  A.   Yes, yes.

24  Q.   And the statistics folder is kept where, also at

```
 1        First Spine, Lowell?

 2   A.   Yes, yes.

 3   Q.   And those are still maintained at your office now?

 4   A.   Yes, yes.

 5   Q.   So, in addition to the daily sign in sheets and

 6        the weekly totals, are there any other statistics

 7        that you keep on the number of patients that treat

 8        at the clinic?

 9   A.   Sign in sheet and -- that's it.

10   Q.   Do you keep monthly totals or yearly totals?

11   A.   We just stack them in there.

12   Q.   And then once you've calculated those for the

13        week, what do you do with that information?

14   A.   We fax to the medical building at the end of the

15        week.

16   Q.   Is that the billing center at Future Management?

17   A.   That's right.

18   Q.   And now it would be at ARMS or do you still send

19        it to Future Management?

20   A.   We send it to Future Management and Dr. Giampa.

21   Q.   Have you ever had any conversations with Dr.

22        Giampa about the numbers --

23   A.   No.

24   Q.   -- that you fax over to him?
```

| 1 | A. | No. |
| 2 | Q. | Do you know if any of the other people at Lowell |
| 3 | | have had conversations with him about the numbers |
| 4 | | that you fax over to him? |
| 5 | A. | I don't remember, no. |
| 6 | Q. | But you've never talked about conversations that |
| 7 | | you've had with Dr. -- |
| 8 | A. | We fax -- just fax. |
| 9 | Q. | And is that Fred Giampa or Joe Giampa. |
| 10 | A. | Joe Giampa. |
| 11 | Q. | Why do you keep those statistics? |
| 12 | A. | Just for the record. |
| 13 | Q. | Do you know why? |
| 14 | A. | I think for office in Lynn we just keep all the |
| 15 | | record in there -- statistic.  That's all. |
| 16 | Q. | In the statistics folder? |
| 17 | A. | Yeah. |
| 18 | Q. | So you fax off a copy of these sheets -- |
| 19 | A. | Every Friday. |
| 20 | Q. | And you keep all the originals? |
| 21 | A. | Yes. |
| 22 | Q. | Has that schedule every changed or just every |
| 23 | | Friday that you've been there? |
| 24 | A. | Every Friday. |

*Lee & Associates * Certified Court Reporters * (781) 848-9693*

131

CERTIFICATE

COMMONWEALTH OF MASSACHUSETTS

COUNTY OF NORFOLK, SS.

I, JO-ANNE GOLDEN, a Professional Court Reporter and Notary Public in and for the Commonwealth of Massachusetts, do hereby certify that the foregoing Deposition of SOKHA DY was taken before me on March 28, 2007. The said witness was duly sworn before the commencement of her testimony; that the said testimony was taken audiographically by myself and then transcribed under my direction. To the best of my knowledge, the within transcript is a complete, true and accurate record of said Deposition.

I am not connected by blood or marriage with any of the said parties, nor interested directly or indirectly in the matter in controversy.

In witness whereof, I have hereunto set my hand and Notary Seal this 4th day of April, 2007.

_____
Jo-Anne M. Golden, Notary Public

My Commission Expires:
December 6, 2007

PLEASE NOTE: THE FOREGOING CERTIFICATION OF THIS TRANSCRIPT DOES NOT APPLY TO ANY REPRODUCTION OF THE SAME BY ANY MEANS UNLESS UNDER THE DIRECT CONTROL AND\OR DIRECTION OF THE CERTIFYING REPORTER.

Volume:      I
Pages:   1-145
Exhibits:     None

### COMMONWEALTH OF MASSACHUSETTS

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| ENCOMPASS INSURANCE COMPANY OF MASSACHUSETTS, <br><br>     Plaintiff—Counterclaim Defendant, <br><br> Vs. <br><br> JOSEPH D. GIAMPA, FREDERICK T. GIAMPA, ADVANCED SPINE CENTERS, INC., d/b/a FIRST SPINE REHAB, FUTURE MANAGEMENT CORPORATION, FUTURE MANAGEMENT BUSINESS TRUST, EDWARD KENNEDY, BRIAN J. CULLINEY, D.C. and JENNIFER MCCONNELL, D.C. <br><br>     Defendants—Counterclaim Plaintiffs, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CA NO.:05—111693 RCL<br>)<br>)<br>) |

---

| | |
|---|---|
| JOSEPH D. GIAMPA, FREDERICK T. GIAMPA, ADVANCE SPINE CENTERS, INC. <br><br>     Third—Party Plaintiffs <br><br> Vs. <br><br> ALLSTATE INSURANCE COMPANY, <br><br>     Third—Party Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

---

### DEPOSITION OF PHALLY SAMITH

A witness called by and on behalf of the Plaintiff—Counterclaim Defendant, pursuant to the Massachusetts Rules of Civil Procedure, before Kathleen M. Mullin, a Certified Court Reporter and Notary Public within and for the Commonwealth of Massachusetts, at the Offices of Smith & Brink, P C, 122 Quincy Shore Drive, Quincy, Massachusetts, commencing on Friday, February 16, 2007 at 10:30 a.m.

|   |   |   |
|---|---|---|
| 1 |     | First Spine? |
| 2 | A.  | No. |
| 3 | Q.  | The people that go to see Mr. Lyons, do they come |
| 4 |     | in the same entrance? |
| 5 | A.  | Yes. |
| 6 | Q.  | Are there two waiting rooms? |
| 7 | A.  | No. |
| 8 | Q.  | Just the one? |
| 9 | A.  | Yes. |
| 10 | Q. | And that is out by your area by the reception desk? |
| 11 | A. | Yes. |
| 12 | Q. | When the patients come in do they have to sign in? |
| 13 | A. | Yes. |
| 14 | Q. | Do they sign—in on a piece of paper?  Do you have a |
| 15 |    | computerized apparatus?  How does that work? |
| 16 | A. | Piece of paper. |
| 17 | Q. | Is it in a book or is it just a single sheet? |
| 18 | A. | A book. |
| 19 | Q. | Do you have one page for every day or is it |
| 20 |    | multiple days on each page? |
| 21 | A. | One page for every day. |
| 22 | Q. | What does it ask for on each page of that? |
| 23 | A. | Name, time, appointment, address. |
| 24 | Q. | What else? |

```
 1    A.   And I don't remember what else.

 2    Q.   Do people have to make an appointment to come in to

 3         get treatment at First Spine?

 4    A.   Yes.

 5    Q.   A prior appointment?

 6    A.   Yes.

 7    Q.   What if I show up and I'm under the care of

 8         Dr. Culliney and I come in on a Tuesday and say I'd

 9         like to get some treatment.  What do you do with

10         that person if they don't have an appointment?

11    A.   Still treat him.

12    Q.   You treat him, right?

13    A.   Yes.

14    Q.   So you don't need an appointment, right?

15    A.   No.

16    Q.   Do you have a driver there?

17    A.   A driver?

18    Q.   Do you have a driver at the First Spine?

19    A.   What do you mean a driver?

20    Q.   To drive the patients in to the clinic.

21    A.   No.

22    Q.   There is no driver?

23    A.   No.

24    Q.   Who drives the van?
```

CERTIFICATE PAGE

COMMONWEALTH OF MASSACHUSETTS

COUNTY OF NORFOLK, SS

I, Kathleen M. Mullin, a Certified Court Reporter and Notary Public in and for the Commonwealth of Massachusetts, do hereby certify that the foregoing Deposition of **Phally Samith**, was taken before me on February 16, 2007. The said witness was duly sworn before the commencement of her testimony; that the said testimony was taken by me, by the voice writing method and translated into text via speech recognition. To the best of my knowledge, the within transcript is a complete, true and accurate record of said testimony.

I am not connected by blood or marriage with any of the said parties, nor interested directly or indirectly in the matter at hand.

I have hereunto set my hand and Notary Seal this 22nd day of February, 2007.

_____
Kathleen M. Mullin, CVR, Notary Public
My Commission Expires:
June 22, 2012

**THE FOREGOING CERTIFICATION OF THIS TRANSCRIPT DOES NOT APPLY TO ANY REPRODUCTION OF THE SAME BY ANY MEANS UNLESS UNDER THE DIRECT CONTROL AND/OR DIRECTION OF THE CERTIFYING REPORTER.**