UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ENCOMPASS INSURANCE              )
COMPANY OF MASSACHUSETTS,        )
                                 )
            Plaintiff,           )
      v.                         )        CIVIL ACTION
                                 )        NO.  05-11693-RCL
JOSEPH D. GIAMPA, et al.,        )
                                 )
            Defendants.          )

## REPORT AND RECOMMENDATION ON
## PLAINTIFF'S OMNIBUS MOTION TO
## DISMISS DEFENDANTS' COUNTERCLAIMS

September 4, 2007

DEIN, U.S.M.J.

## I.  INTRODUCTION

The plaintiff, Encompass Insurance Company of Massachusetts ("Encompass"),

has brought this action against five individuals and two business entities that are involved

in the business of providing chiropractic services.  Encompass claims that the defendants,

including Joseph D. Giampa, Frederick T. Giampa, Advanced Spine Centers, Inc. d/b/a

First Spine & Rehab ("Advanced Spine"), Future Management Corporation ("Future

Management"), Edward Kennedy ("Kennedy"), Brian J. Culliney ("Culliney") and

Jennifer McConnell ("McConnell"), engaged in a fraudulent scheme designed to obtain

insurance benefits for chiropractic services that were excessive, unwarranted or never

rendered. The defendants have asserted three separate counterclaims against Encompass[1] in which they allege that as a result of Encompass' actions in filing the instant action and/or in issuing a press release regarding the litigation, Encompass should be held liable for defamation and libel, intentional interference with advantageous business relations, unfair and deceptive acts or practices pursuant to Mass. Gen. Laws ch. 93A ("Chapter 93A") and false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a).[2]

Presently before the court is the "Plaintiff/Counterclaim Defendant's Omnibus Motion to Dismiss Defendants/Counterclaim Plaintiffs' Counterclaims" (Docket No. 96), by which Encompass is seeking dismissal of all of the defendants' counterclaims on the grounds that they are barred by the absolute litigation privilege, that the defendants lack standing to assert claims under the Lanham Act, and that they otherwise fail to state claims upon which relief may be granted. For the reasons detailed below, this court recommends to the District Judge to whom this case is assigned that Encompass' motion to dismiss be ALLOWED IN PART and DENIED IN PART. Specifically, this court

---

[1] The defendants' counterclaims are set forth in the following documents: (1) "Counter-claim of Defendants Brian J. Culliney and Jennifer McConnell" (Docket No. 87) ("Culliney Counterclaim"); (2) "Answer and Counterclaim of Defendant Edward T. Kennedy" (Docket No. 89) ("Kennedy Counterclaim"); and (3) "Defendants Joseph D. Giampa, Frederick T. Giampa, Advanced Spine Centers, Inc. D/B/A First Spine & Rehab and Future Management Corporation's Answer and Counterclaim to Plaintiff Encompass Insurance Company's Second Amended Complaint" (Docket No. 90) ("Giampa Counterclaim").

[2] Joseph Giampa, Frederick Giampa, Advanced Spine and Future Management initially filed a counterclaim in which they asserted a claim for abuse of process. (See Docket No. 88). However, the Giampa Counterclaim that is presently at issue contains no such claim, and the defendants have not addressed any such claim in their brief in opposition to the instant motion to dismiss. Accordingly, the claim for abuse of process is deemed to have been withdrawn.

recommends that the motion be allowed with respect to the counterclaims for violations of the Lanham Act, intentional interference with advantageous business relations, defamation based on statements regarding the amount in controversy and length of Encompass' pre-suit investigation, and violations of Chapter 93A to the extent that the Chapter 93A claims are based on the filing of the instant litigation and attachments to the Giampas' property. This court recommends that the motion otherwise be denied. This would leave the defendants' counterclaims for defamation and libel and for violations of Chapter 93A that are based on Encompass' issuance of the August 18, 2005 press release to the extent the release can fairly be read to characterize the defendants as criminals.

## II.  <u>STATEMENT OF FACTS</u>

When ruling on a motion to dismiss a counterclaim for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) or 12(b)(6),[3] "[t]he court must accept all factual averments in the counterclaim as true and draw all reasonable inferences in the counter-claimant's favor." <u>Brandt v. Advanced Cell Tech. Inc.</u>, 349 F. Supp. 2d 54, 57 (D. Mass. 2003); <u>United States v. Zajanckauskas</u>, 346 F. Supp. 2d 251, 253 (D. Mass. 2003). In doing so, the court may consider "documents sufficiently referred to in the [counter-claim]" without converting the motion into one for summary judgment. <u>Watterson v.</u>

---

[3] Encompass has brought its motion to dismiss pursuant to Fed. R. Civ. P. 8, 9(b), 12(b)(1) and 12(b)(6). However, Encompass' Rule 9(b) claim is raised as an alternative grounds to dismiss the Lanham Act claims. Since this court concludes that dismissal of the Lanham Act claims is warranted under Rule 12(b)(6), Rule 9(b) will not be discussed.

Page, 987 F.2d 1, 3 (1st Cir. 1993).  Applying this standard to the instant case, the relevant facts are as follows:

The defendants' counterclaims are based on Encompass' actions in filing the instant litigation and in issuing a press release regarding the lawsuit.  On August 16, 2005, following an investigation by Encompass that included witness interviews and extensive document review, Encompass initiated this action by filing its original, 140-paragraph Complaint.[4]  (See Giampa Countercl. ¶¶ 6-8).  Therein, Encompass asserted claims against each of the defendants for fraud, civil conspiracy, intentional interference with business and contractual relations and violations of Chapter 93A, and against the Giampas and Kennedy for certain civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO").  (Compl. (Docket No. 1), Counts I-VII).  These claims arose from what Encompass alleged was the defendants' "scheme to defraud insurance companies, including [Encompass,] by submitting false, fraudulent and inflated chiropractic invoices containing excessive charges through the U.S. Mail and demanding payment for excessive and/or non-existent and/or unwarranted chiropractic treatment through their chiropractic clinic First Spine Rehab."  (Id. ¶ 1).  Notwithstanding Encompass' lengthy investigation and pleading, the defendants, in their counterclaims, contend that Encompass lacked a good faith basis for its claims against them.  (Kennedy Countercl. ¶ 9; Culliney Countercl. ¶ 10; Giampa Countercl. ¶ 12).

---

[4] Encompass has amended its complaint twice since the filing of this action.

On August 18, 2005, following the commencement of the litigation, Encompass issued a press release entitled "Boston Area Chiropractors Named in Million-Dollar Fraud Case." (Kennedy Countercl., Ex. A). The press release is incorporated by reference in and attached to the counterclaims. It provides, in relevant part, as follows:

> Owners and employees of First Spine and Rehab, a Lowell Massa-chusetts chiropractic clinic, have been named as defendants in a $1.8 million fraud lawsuit — the result of a six-month investigation led by Encompass Insurance Company of Massachusetts.
>
> According to court documents, Joseph Giampa, Frederick Giampa and Edward Kennedy are accused of violating the Racketeer Influenced and Corrupt Organizations Act (RICO), the Massa-chusetts Consumer Protection Act and engaging in common law fraud and civil conspiracy.
>
> Encompass filed suit in the U.S. District Court for the District of Massachusetts against the Giampas, Kennedy, as well as Brian Culliney, Jennifer McConnell, the company First Spine and Rehab of Lowell and Future Management Corporation.
>
> According to the suit, the Giampas and other chiropractors in the Lowell clinic allegedly "engaged in a scheme to defraud insurance companies, including Encompass Insurance by submitting false, fraudulent and inflated chiropractic invoices containing excessive charges" and "demanding payment for excessive and/or non-existent and/or unwarranted chiropractic treatment through their chiropractic clinic."
>
> Court documents say the Giampas are chiropractors who operate First Spine and Rehab in Lowell as well as more than 60 other clinics throughout New England and across the United States, including Florida, Oklahoma, Connecticut, Rhode Island, South Carolina, New Hampshire, Pennsylvania, Illinois and Virginia.
>
> Special Investigators for Allstate Insurance Company, which operates Encompass Insurance, led the investigation. Encompass is represented by the law firm of Smith & Brink, P.C. in Quincy.

"Insurance fraud is not a victimless crime – it costs consumers thousands of dollars every year through higher premiums," said Edward Moran, Allstate assistant vice-president for Special Investigations. "Encompass and other Allstate companies are committed to providing competitively priced products to our customers – fighting fraud is essential to that commitment."

Since 2001, Allstate companies have received more than $55 million in court judgments. Moran states, "these judgments against criminals range from individuals to sophisticated organized crime syndicates." In addition to financial victories, Allstate and Encompass SIU work closely with local, state, and federal authorities for criminal investigation and prosecution – resulting in arrests around the country, taking criminals off the street.

Insurance industry estimates put the overall yearly price tag for fraud at more than $80 billion dollars.

(Id.).

The press release was published in at least one trade publication and was also picked up by various media outlets, including Reuters, Yahoo Business, Business Wire, BestWire, Insurance NewsNet and InsuranceFraud.org. (Kennedy Countercl. ¶ 10; Culliney Countercl. ¶11; Giampa Countercl. ¶ 15). Furthermore, the description of the lawsuit that is set forth in the press release was published to attendees at a February 2006 conference that was sponsored by the health policy and management section of the American Physical Therapy Association. (Kennedy Countercl. ¶ 11).

Additional factual details relevant to this court's analysis are described below.

## III.  ANALYSIS

### A.    Standard of Review

Motions to dismiss under Rule 12(b)(1) and (6) test the sufficiency of the pleadings.  Thus, when confronted with a motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the counterclaim plaintiff.  See Brandt, 349 F. Supp. 2d at 57; Zajanckauskas, 346 F. Supp. 2d at 253.  Dismissal is only appropriate if the counterclaim, so viewed, fails to allege a "plausible entitlement to relief."  Rodriguez-Ortiz v. Caribe, – F.3d –, 2007 WL 1732883, at *2 (1st Cir. June 18, 2007) (quoting Bell Atl. Corp. v. Twombly, – U.S. –, 127 S. Ct. 1955, 1967, – L. Ed. 2d – (2007)).

Under the liberal notice pleading standard established by Fed. R. Civ. P. 8(a), a counterclaim plaintiff is required to submit "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests."  Bell Atl., 127 S. Ct. at 1964 (quotations, citation and punctuation omitted).  Accordingly, "[counterclaim p]laintiffs only are obliged to set forth in their [counterclaims] factual allegations either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory."  Raytheon Co. v. Cont'l Cas. Co., 123 F. Supp. 2d 22, 26-27 (D. Mass. 2000) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).  While a counterclaim attacked by a motion to dismiss "does not need detailed factual allegations, a [counterclaim] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. 127 S. Ct. at 1964-

65 (quotations and citations omitted). Accordingly, the factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the [counterclaim] are true (even if doubtful in fact)." Id. at 1965 (citations omitted).

### B.    The Absolute Litigation Privilege

Encompass argues that all of the defendants' counterclaims should be barred by the absolute litigation privilege. (Pl.'s Mem. (Docket No. 97) at 3-6). This court disagrees. As detailed herein, although the absolute litigation privilege bars claims that are predicated upon statements made in connection with the initiation and prosecution of a lawsuit, it does not absolutely cover press releases such as the one at issue in this case. Therefore, the litigation privilege does not mandate the dismissal of the counterclaims.

### The Absolute Litigation Privilege Generally

The "absolute privilege protects statements made 'in the institution or conduct of litigation or in conferences and other communications preliminary to litigation.'" Taylor v. Swartwout, 445 F. Supp. 2d 98, 102 (D. Mass. 2006) (quoting Sriberg v. Raymond, 370 Mass. 105, 109, 345 N.E.2d 882, 884 (1976)). It "rests on the policy of permitting attorneys complete freedom of expression and candor in communications in their efforts to secure justice for their clients." Davidson v. Cao, 211 F. Supp. 2d 264, 275 (D. Mass. 2002) (quotations and citations omitted). Thus, under Massachusetts law, "statements by a party, counsel or witness in the institution of . . . a judicial proceeding are absolutely privileged provided such statements relate to the proceeding." Id. (quoting Sriberg, 370

Mass. at 108, 345 N.E.2d at 883).  This is true "even if the offensive statements are

uttered maliciously or in bad faith."  <u>Taylor</u>, 445 F. Supp. 2d at 103 (quoting <u>Doe v.</u>

<u>Nutter, McClennen & Fish</u>, 41 Mass. App. Ct. 137, 140, 668 N.E.2d 1329, 1332 (1996)).

Moreover, the absolute litigation privilege immunizes the maker of the statements from

any civil liability arising from those statements.  <u>Doe</u>, 41 Mass. App. Ct. at 140, 668

N.E.2d at 1333.  "To rule otherwise would make the privilege valueless if an individual

would then be subject to liability under a different theory."  <u>Id.</u> at 141; 668 N.E.2d at

1333.  Nevertheless, "[t]he privilege may not be exploited as an opportunity to defame

with impunity and unnecessary or unreasonable publication to parties outside the

litigation can result in the loss of the litigation privilege."  <u>Taylor</u>, 445 F. Supp. 2d at 102

(internal punctuation omitted).  Moreover, the privilege "is available only when the

challenged remarks are relevant or pertinent to the judicial proceedings."  <u>Sullivan v.</u>

<u>Birmingham</u>, 11 Mass. App. Ct. 359, 362, 416 N.E.2d 528, 530 (1981).

## **Application of the Privilege**

All of the counterclaims are premised in whole or in part on the issuance of the

August 18, 2005 press release.[5]  In particular, the defendants claim that Encompass'

---

[5]  At oral argument, the defendants made it clear that none of the counterclaims are based
exclusively on the filing of the litigation.  (<u>See</u> <u>also</u> Defs.' Opp. Mem. (Docket No. 106) at 5 n.6

communication of these statements through the press constituted defamation and libel, interfered with their advantageous business relations, amounted to unfair and deceptive acts or practices in violation of Chapter 93A, and violated the Lanham Act.  (See generally Giampa Countercl., Culliney Countercl., Kennedy Countercl.).  These claims are not barred by the absolute litigation privilege.

It is clear that the absolute litigation privilege "applies to statements made outside the courtroom."  Leavitt v. Bickerton, 855 F. Supp. 455, 458 (D. Mass. 1994).  Neverthe-less, as noted above, the unreasonable and unnecessary publication of information outside of the litigation may negate the privilege.  In the instant case, the plaintiff not only repeated allegations made in the complaint to the press, but also added statements about its investigation, the costs of insurance fraud to consumers and the insurance industry, and Encompass' commitment to fighting fraud and prosecuting criminals.  Such statements go beyond the scope of the protection afforded by the absolute litigation privilege.[6]

"Communications made to newspapers and during press conferences have been almost universally found to be excluded from the protection of absolute privilege."  Med.

_____

("[t]o the exten[t] that Count I of the Giampa Counterclaim might be understood to be predicated upon the fact of, or allegations made in, this action, that reading results from an error in drafts-manship which counsel for the Giampa/First Spine defendants intends to correct immediately.").

[6] While Encompass argues that the statements contained in the press release are nothing more than a restatement of matters already existing in court documents, that assertion is not supported by the press release itself.  (See Pl.'s Mem. at 5-6; Pl.'s Reply Mem. (Docket No. 128) at 4-5).  Therefore, this court does not need to reach the issue whether republication of allegations set forth in a complaint alone may waive the privilege.

Informatics Eng'g, Inc. v. Orthopaedics Ne., P.C., 458 F. Supp. 2d 716, 724 (N.D. Ind.

2006) (quoting Williams v. Kenney, 379 N.J. Super. 118, 135, 877 A.2d 277, 288 (2005))

(additional quotations and citation omitted).  Many courts have reasoned that the policy

considerations supporting the privilege are inapplicable where extra-judicial statements

are made to the media and under circumstances where "the need for unbridled advocacy

is diminished, and the need to protect the intrusion upon a person's reputation is

enhanced."  Id. (quotations and citation omitted).  See also Milford Power Ltd. P'ship v.

New England Power Co., 918 F. Supp. 471, 486 (D. Mass. 1996) ("Communications by a

party to the news media regarding a judicial proceeding have been found to be outside

[the absolute litigation] privilege because such communications do not advance the policy

upon which the privilege rests.").  "More specifically, because such communications to

the media generally will not 'inhibit parties or their attorneys from fully investigating

their claims or completely detailing them for the court or other parties' and are not

subject to 'judicial control', the necessity for the absolute privilege disappears."  Milford

Power Ltd. P'ship, 918 F. Supp. at 486 (quoting Sullivan, 11 Mass. App. Ct. at 362, 416

N.E.2d at 531).  Thus, policy considerations, as well as "the great weight of authority"

counsel against applying the privilege to extra-judicial statements made to the press.

Med. Informatics Eng'g, 458 F. Supp. 2d at 725 n.7.

        For all these reasons, the absolute litigation privilege does not require the

dismissal of the counterclaims.  Therefore, this court will address whether each count

states a claim.

## C.     Claims Asserted Under the Lanham Act

The plaintiff has moved to dismiss the defendants' counterclaims alleging that Encompass' dissemination of false and misleading representations of fact in commercial advertising and promotion violated the Lanham Act, 15 U.S.C. § 1125(a).[7]  Encompass contends that the defendants lack standing to assert these claims because they have not alleged, and cannot allege, a competitive injury.  (Pl.'s Mem. at 7-9).  While courts have approached the issue of standing in various ways, the law is clear in the First Circuit that the plaintiff must assert some type of competitive injury to state a claim for false advertising under the Act.  Because the defendants are unable to satisfy this pleading requirement, this court recommends that the Lanham Act claims be dismissed.[8]

The defendants have asserted claims for false advertising and promotion pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Generally, the Lanham Act "was designed to protect consumers and competitors from any duplicitous advertising or packaging which results in unfair competition."  Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d 302, 310 (1st Cir. 2002).  "The false advertising provisions of the Lanham Act provide:

---

[7]  The Lanham Act claims are asserted in Count V of the Culliney Counterclaim and in Count VI of the Giampa Counterclaim.

[8]  Encompass has also moved to dismiss the Lanham Act claims on the grounds that the defendants have not alleged that the statements in the press release are false and misleading.  (Pl.'s Mem. at 9-10).  The court does not need to reach this issue in light of the other insufficiencies in the pleading.

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

Id. at 310 n.7 (quoting 15 U.S.C. § 1125(a)(1)).  The defendants claim that Encompass violated this statute by making "false and misleading representations of fact in commercial advertising and promotion" when it issued the statements contained in the press release.  (Culliney Countercl. ¶ 34; Giampa Countercl. ¶ 44).  They have not alleged, and they do not argue, that they compete with Encompass or that they suffered any competitive injury.  (See Culliney Countercl. ¶¶ 34-39; Giampa Countercl. ¶¶ 44-49).

Different jurisdictions approach the standing requirement for suits asserting a false advertising claim under § 43(a) of the Lanham Act in different ways.  See generally Phoenix of Broward, Inc. v. McDonald's Corp., 489 F.3d 1156, 1163-67 (11th Cir. 2007) (discussing analysis used by each Circuit addressing the issue of standing).  The last statement in the First Circuit expressly referring to standing was made twenty years ago in Camel Hair & Cashmere Inst. of Am., Inc. v. Assoc. Dry Goods Corp., 799 F.2d 6 (1st Cir. 1986), prior to several statutory amendments.  At that time, the Court held that instead of focusing on whether the plaintiff was a competitor, the appropriate inquiry was "whether the plaintiff has a reasonable interest in being protected against false adver-

tising." Id. at 11. It is not necessary for this court to dive into the morass of differing

formulas used to establish standing, as it is clear that the counterclaims have otherwise

failed to state a claim for a violation of the Lanham Act.

"To prove a false advertising claim under the Lanham Act, a plaintiff must

demonstrate [inter alia] that . . . the defendant made a false or misleading description of

fact or representation of fact in a commercial advertisement about his own or another's

product . . . ." Cashmere & Camel Hair Mfrs. Inst., 284 F.3d at 310-11 (emphasis

added). Thus, the Lanham Act "prohibits misrepresentations only in 'commercial

advertising or promotion.'" Podiatrist Ass'n, Inc. v. La Cruz Azul de P.R., Inc., 332 F.3d

6, 19 (1st Cir. 2003). "This is a crucial limitation" and "[t]he courts have developed a

four-part test to ascertain which representations fall into the category of 'commercial

advertising or promotion' for purposes of Section 43(a)(1)(B)." Id. Under this test, "a

representation must (a) constitute commercial speech (b) made with the intent of

influencing potential customers to purchase the speaker's goods or services (c) by a

speaker who is a competitor of the plaintiff in some line of trade or commerce and

(d) disseminated to the consuming public in such a way as to constitute 'advertising' or

'promotion.'" Id. (emphasis added). The failure to allege factual support for any of these

elements is fatal to a claim for false advertising under the Lanham Act. See id. at 19-20;

Gentle Wind Project v. Garvey, No. 04-103-P-C, 2004 WL 1946448, at *5-6 (D. Me.

Sept. 2, 2004) (failure to allege factual support for one element of test is enough to entitle

moving party to dismissal of Lanham Act claim).

The counterclaims in this case contain no factual allegations to support the third

element of this test.  Although the defendants, in their counterclaims, allege that

"Encompass has made false and misleading representations of fact in commercial

advertising and promotion" (Culliney Countercl. ¶ 34; Giampa Countercl. ¶ 44), these

conclusory allegations are insufficient to support a claim.  See Bell Atl. 127 S. Ct. at

1964-65 (formulaic recitation of the elements of a cause of action are inadequate to state

a claim); Gentle Wind Project, 2004 WL 1946448, at *5 (allegations that defendants

made false statements "in commercial advertising or promotion" deemed conclusory)

(internal quotations omitted).  Furthermore, the defendants have not attempted to assert

that the parties compete in some line of trade or commerce, and it is apparent from the

pleadings in this matter that Encompass, an insurance company, is not in competition

with any of the defendants, all of whom are providers of chiropractic services.  (See

Defs.' Opp. Mem. at 12-14; 2d Am. Compl. (Docket No. 75) ¶¶ 7-10, 14-17, 29).

Consequently, the defendants are unable to state a claim for false advertising under the

Lanham Act.

### D.  Claims for Defamation and Libel

The defendants have asserted claims for defamation and libel based on the

statements contained in the August 18, 2005 press release.  (Kennedy Countercl., Count I;

Culliney Countercl., Count I; Giampa Countercl., Count IV).  "To succeed on a

defamation claim under Massachusetts law, a plaintiff must show that the defendant was

at fault for the publication of a false statement of and concerning the plaintiff which was

capable of damaging his or her reputation in the community and which either caused economic loss or is actionable without proof of economic loss." Stanton v. Metro Corp., 438 F.3d 119, 124 (1st Cir. 2006). Accordingly, in order to state a claim for defamation, a plaintiff must allege both falsity of the offending statements and negligence on the part of the defendant. See id. at 130-31 (analyzing whether plaintiff adequately alleged that published article contained any false statement about her and that defendant had acted negligently).

Encompass contends that these claims should be dismissed because the defendants have failed to plead adequately that any of the statements set forth in the press release are false or that Encompass was negligent in issuing the press release. (Pl.'s Mem. at 11-12). This court finds that at this stage in the litigation, the defendants' pleadings are sufficient to withstand Encompass' motion to dismiss the defamation claims arising out of the issuance of the press release, but only to the extent that the statements describing insurance fraud as a crime, discussing Allstate's financial victories against criminals and describing Encompass' efforts to take criminals off the street could reasonably be interpreted as falsely accusing the defendants of criminal behavior.

### Allegations of Falsity

Encompass argues that the counterclaims are deficient because the defendants have failed to allege the falsity of any statements contained in the press release and because all of the statements contained in the press release are demonstrably true. (Pl.'s Mem. at 11). Although the defendants have alleged that statements set forth in the

release are false and have shown that certain of these statements should survive the motion to dismiss, this court agrees that statements regarding the amount in controversy and the length of Encompass' pre-suit investigation are true and are therefore not actionable.

There can be no question that the defendants have alleged in sufficient detail to satisfy the pleading requirements of Fed. R. Civ. P. 8(a) that the statements set forth in the press release are false. For example, but without limitation, the defendants allege in their counterclaims that the press release "communicated defamatory information" about the defendants to third parties, that statements set forth in the press release "grossly exaggerated both the nature of this case and the amount in controversy," and that "Encompass intentionally engaged in this gross exaggeration with the intent and effect of damaging the reputations of [the defendants.]" (Culliney Countercl. ¶¶ 8-9, 13; Kennedy Countercl. ¶¶ 7-8, 13; Giampa Countercl. ¶ 33). Additionally, the defendants allege, in their Lanham Act claims, that "Encompass has made false and misleading representations of fact[.]" (Culliney Countercl. ¶ 34; Giampa Countercl. ¶ 44). These allegations are sufficient to plead falsity with respect to the contents of the press release.

Nevertheless, certain of the statements giving rise to the defendants' defamation claims are not actionable because the defendants cannot establish that those particular statements are false. Specifically, the defendants allege that by describing this case as a "1.8 million fraud lawsuit" in the press release, Encompass "grossly exaggerated both the nature of this case and the amount in controversy." (Culliney Countercl. ¶¶ 7-8; Kennedy

Countercl. ¶¶ 6-7; <u>see also</u> Giampa Countercl. ¶ 13).  However, this statement cannot be defamatory because it is "substantially true."  <u>Taylor</u>, 445 F. Supp. 2d at 102.  In its original complaint, Encompass claimed that its injury included, but was not limited to, compensatory damages for, among other things, "total payments and expenses in excess of $600,000, the exact amount to be determined at trial."  (Compl. ¶ 89).  Moreover, in its demand for relief and elsewhere in its complaint, Encompass stated that it was seeking treble damages, as well as costs and attorney's fees, for certain of its claims.  (<u>Id.</u> ¶¶ 106, 113, 117 and Demand for Relief).  Thus, the description of the litigation as a $1.8 million case constitutes an unrefutable statement of fact that cannot support a claim for defamation.[9]

Similarly, the defendants cannot state a claim for defamation based on the statement, contained in the first paragraph of the press release, that Encompass filed the lawsuit following "a six-month investigation."  The defendants allege, in the Giampa Counterclaim, that the press release "clearly implies that the 'six month investigation' conducted by Encompass produced evidence that Joseph D. Giampa, Frederick T. Giampa and Advanced Spine Centers, Inc. committed fraud."  (Giampa Countercl. ¶ 14).  However, any claim of falsity regarding the statement is undermined by the defendants'

---

[9]  The defendants argue that even if the original complaint did allege a $1.8 million lawsuit, the amount described in the press release is still false because, as the defendants have alleged, the complaint was filed in bad faith.  (Defs.' Opp. Mem. at 8, 10-11).  Whether Encompass was improperly motivated or not does not alter the truth of the statement that it filed a $1.8 million fraud lawsuit.  Accordingly, the defendants cannot state a claim based on the statement regarding the amount in controversy.

own allegations.  Specifically, the Giampa Counterclaim provides that "[p]rior to initiating the present action, Encompass undertook an extensive investigation, including witness interviews and extensive document review."  (Id. ¶ 7).  Accordingly, by their own allegations, the defendants have established that the statement regarding a six-month investigation is substantially true and is therefore not actionable.

In contrast, the statements describing insurance fraud as a "crime," discussing Allstate's successful recoveries against "criminals" and "organized crime syndicates," and describing the plaintiff's efforts at "taking criminals off the street" may support the defendants' defamation claims.  Although the statements on their face to do not concern the defendants, in the context of the entire press release, they may reasonably be seen as falsely imputing criminal behavior to the defendants.  See Stanton, 438 F.3d at 130-31 (rejecting defendant's argument that news article makes no "articulably false statement" where juxtaposition of plaintiff's photograph with text describing suburban teenage promiscuity could fairly impute immorality to plaintiff).  The instant action involves claims for civil liability, and nothing in the record before this court indicates that the defendants have been charged with any crimes or might face criminal liability for their actions.  Therefore, the defendants have adequately alleged that some of the statements contained in the press release are false.

## Allegations of Fault

This court also finds that the defendants have adequately alleged that Encompass acted negligently in issuing the press release.  Under Fed. R. Civ. P. 8(a), "[s]tate of

mind, including motive and intent, may be averred generally." <u>Educadores Puertorriquenos en Accion v. Hernandez</u>, 367 F.3d 61, 66 (1st Cir. 2004).  All of the defendants have alleged that Encompass was negligent  in issuing the press release. (Culliney Countercl. ¶ 15; Kennedy Countercl. ¶ 15; Giampa Countercl. ¶ 35).  This is sufficient in the context of a claim for defamation.  <u>See Educadores Puertorriquenos en Accion</u>, 367 F.3d at 68 (to comply with notice pleading requirements, "complaint should at least set forth minimal facts as to who did what to whom, when, where, and why – although why, when why means the actor's state of mind, can be averred generally.").  Accordingly, this court recommends that the plaintiff's motion to dismiss the defamation counterclaims be denied to the extent that the press release could reasonably be read to accuse the defendants of criminal behavior.[10]

### E.     Claims for Intentional Interference with Business Relations

All of the defendants allege that Encompass has intentionally interfered with their business relations with certain of the other defendants by causing the performance of their agreements to become more expensive.  (Giampa Countercl., Count I; Culliney Countercl., Count II; Kennedy Countercl., Count II).  In addition, the Giampa Counter-claim and the Culliney Counterclaim contain claims for intentional interference with

---

[10]  In a footnote, plaintiff has asserted in passing that there are other reasons why these statements may not be actionable.  For instance, the plaintiff suggests that the statements may constitute opinions rather than statements of fact.  (Pl.'s Reply Mem. at 17 n.22).  This argument has not been developed at this stage.  Plaintiff may raise additional defenses in the context of a motion for summary judgment.

business relations between the defendants and their patients, prospective patients and insurance companies other than Encompass. (Giampa Countercl., Count III; Culliney Countercl., Count III). Encompass has moved to dismiss these latter claims for failing to allege more precisely which patients, prospective patients and insurers are at issue or to allege that Encompass had knowledge of these relationships. (Pl.'s Mem. at 13-14). It also has moved to dismiss all of the interference claims for failing to allege facts showing that Encompass intended to interfere. (Id. at 14-15). This court finds that the defendants have adequately identified the relationships with which the plaintiff allegedly interfered and that they are entitled to an inference that Encompass had knowledge of these relationships. However, this court agrees that the defendants have failed to allege that Encompass' interference with the identified relationships was intentional. Accordingly, this court recommends that all of the interference claims be dismissed.

In order to succeed on a claim for intentional interference with advantageous relations, the plaintiff must establish that "(1) he had an advantageous relationship with a third party . . . (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions."[11] Blackstone v. Cashman, 448 Mass. 255, 260, 860 N.E.2d 7, 12-13 (2007).

---

[11] The requirements for proving a claim of intentional interference with advantageous business relations are substantially the same as those for proving a claim of intentional interference with contractual relationships. Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B., 62 Mass. App. Ct. 34, 38 n.7, 815 N.E.2d 241, 245 n.7 (2004). Therefore, to the extent the

Although this court finds that the defendants have sufficiently identified the third parties with whom they had advantageous relationships, and that Encompass' knowledge of those relationships can be inferred from the pleadings, the defendants have not set forth any allegations showing that Encompass' alleged interference with any of those relationships was done intentionally.

The defendants have identified the business relations that have been affected by Encompass' alleged interference as those between the defendants and their "patients, prospective patients, and other insurers." (Culliney Countercl. ¶ 24; Giampa Countercl. ¶ 28). Thus, the defendants apparently are claiming that by filing a frivolous lawsuit and/or defaming them in the August 18, 2005 press release, Encompass interfered with all of their client and prospective client relations, as well as with their ability to maintain relations with any other insurance companies. None of the cases cited by Encompass indicates that the alleged relationships must be any more precise in order to state a claim for intentional interference. This court concludes that the defendants' allegations regarding their business relationships are sufficient to satisfy the applicable notice pleading requirements. Furthermore, the defendants are entitled to a reasonable inference that Encompass had knowledge of these relationships, given the nature of the defendants'

---

defendants are claiming that Encompass intentionally interfered with their employment agreements, this court recommends that those claims be dismissed for the same reason that this court recommends dismissal of the claims for intentional interference with advantageous business relations.

-22-

business.  See Brandt, 349 F. Supp. 2d at 57 (on motion to dismiss, court must draw all reasonable inferences in counterclaimants' favor).

Nevertheless, this court finds that the defendants' failure to allege an intent to interfere is fatal to all of their intentional interference claims.  "To state a cause of action for tortious interference, a plaintiff must allege that the defendant intentionally and improperly interfered with its existing or prospective contractual or business relationships.  Without an intent to interfere, there can be no liability since a negligent interference is not actionable."  Spencer Cos., Inc. v. Chase Manhattan Bank, N.A., 81 B.R. 194, 204 (D. Mass. 1987) (citations omitted).  Although all of the defendants have alleged that Encompass' interference was "wrongful," and some of the defendants have alleged that Encompass intended to damage their reputations by the issuance of the press release, none of the counterclaims contains allegations that Encompass acted with an intent to interfere with any of the defendants' business or contractual relationships.  (See Culliney Countercl. ¶ 9 & Counts II-III; Kennedy Countercl. ¶ 8 & Count II; Giampa Counterclaim, Counts I, III).  "Interference which is merely incidental to another purpose and not the intended result of a party's action is not a sufficient basis for liability in tort."  Spencer Cos., 81 B.R. at 204.  The defendants have not alleged that Encompass was motivated by a desire to interfere in their business relationships.  Therefore, this court recommends that all of the claims for interference with advantageous business relations be dismissed.

### F.    Claims for Violations of Chapter 93A

All of the defendants claim that Encompass' issuance of a defamatory press release constitutes an unfair and deceptive act or practice in violation of Chapter 93A. (Culliney Countercl., Count IV; Kennedy Countercl., Count III; Giampa Countercl., Count V). Encompass has moved to dismiss these claims on the grounds that they are predicated on the defamation claims, which fail to state a claim. However, as described above, this court concludes that the defendants have stated claims for defamation based on some of the statements set forth in the press release. Accordingly, this court recommends that the plaintiff's motion to dismiss the Chapter 93A claims on these grounds be denied.

The defendants asserting the Giampa Counterclaims also allege that "[b]y filing a frivolous lawsuit and attaching Joseph D. Giampa and Frederick T. Giampa's personal residences, all for ulterior motives, Encompass has engaged in unfair and deceptive acts or practices" in violation of Chapter 93A. (Giampa Countercl. ¶ 39). Encompass has moved to dismiss these claims because it contends that the filing of a lawsuit cannot support a claim under Chapter 93A, and because it does not constitute an unfair method of competition or an unfair or deceptive act or practice under the statute. It also argues the defendants have not alleged sufficient facts to show that Encompass did not act in good faith when it filed the instant litigation. (Pl.'s Mem. at 15-16). Although the institution of a frivolous lawsuit can support a Chapter 93A claim, this court concludes that the defendants have failed to set forth factual allegations supporting their claim that

the instant action is frivolous or that the plaintiff was pursuing an ulterior motive by seeking attachments.

"A party may bring a claim under c. 93A against another party which willfully filed a baseless lawsuit." The George Hyman Constr. Co. v. Gateman, 16 F. Supp. 2d 129, 162 (D. Mass. 1998). See also Refuse & Envtl. Sys., Inc. v. Indus. Servs. of Am., Inc., 932 F.2d 37, 43 (1st Cir. 1991) ("We do not question the court's finding that by 'bringing the state lawsuit in spite of the evidence' the defendants willfully committed an unfair and deceptive practice under 93A."). Thus, the defendants' claim that Encompass filed a "frivolous lawsuit" and attached the Giampas' residences "for ulterior motives" can support a claim under Chapter 93A.

Nevertheless, this court finds that the factual allegations supporting this claim are deficient. The only facts that the defendants have alleged in support of their assertion that the action is frivolous and that the plaintiff had an ulterior motive for pursuing the attachments are that Encompass, in its original complaint, "fail[ed] to detail any specific instance of fraudulent conduct on the part of Advanced Spine Centers, Inc., Frederick T. Giampa or Joseph D. Giampa", and that this failure occurred because the plaintiff's investigation "failed to reveal fraudulent conduct on the part of the Counterclaim/Third party Plaintiffs." (Giampa Countercl. ¶¶ 9, 11). However, the complaint contained sufficient instances of wrongful conduct to satisfy the heightened pleading requirements

of Rule 9(b) and to withstand a motion to dismiss.  (See Docket entry dated 11/13/06).[12]

Since the Giampa defendants have failed to plead anything other than conclusory

allegations, the motion to dismiss this aspect of the Chapter 93A counterclaim should be

allowed.  See Glassman v. Computervision Corp., 90 F.3d 617, 628 (1st Cir. 1996) (on

motion to dismiss, court "need not credit a complaint's bald assertions or legal

conclusions.") (quotations and citation omitted).

## IV.  CONCLUSION

For all of the reasons detailed herein, this court recommends to the District Judge

to whom this case is assigned that the "Plaintiff/Counterclaim Defendant's Omnibus

Motion to Dismiss the Defendants/Counterclaim Plaintiffs' Counterclaims" (Docket No.

96) be ALLOWED IN PART and DENIED IN PART.  Specifically, this court

recommends that the motion be allowed with respect to the counterclaims for violations

of the Lanham Act, intentional interference with advantageous business relations,

defamation based on statements regarding the amount in controversy and length of

Encompass' pre-suit investigation, and violations of Chapter 93A to the extent that the

Chapter 93A claims are based on the filing of the instant litigation and attachments to the

Giampas' property.  This court recommends that the motion otherwise be denied.[13]  This

---

[12]  Encompass' claims for violations of RICO, conspiracy, intentional interference with advantageous business and contractual relations and violations of Chapter 93A have also survived the defendants' motions to dismiss.  (See Docket entries dated 6/05/06 & 11/13/06).

[13]  The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto

would leave the defendants' counterclaims for defamation and libel and for violations of

Chapter 93A that are based on Encompass' issuance of the August 18, 2005 press release

to the extent the release can fairly be read to characterize the defendants as criminals.


　　　　　　　　　　　　　　/ s / Judith Gail Dein
　　　　　　　　　　　　　　Judith Gail Dein
　　　　　　　　　　　　　　United States Magistrate Judge

---

with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommenda-
tion. The written objections must specifically identify the portion of the proposed findings,
recommendations or report to which objection is made and the basis for such objections. The
parties are further advised that the United States Court of Appeals for this Circuit has repeatedly
indicated that failure to comply with this Rule shall preclude further appellate review. See
Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v.
Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616
F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982);
Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-
54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp.,
199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir.
1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).