1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
2

3    _____

4    ENCOMPASS INSURANCE COMPANY,
                      Plaintiff,      Civil Action No. 05-11693-RCL
5
     V.                              November 13, 2006, 3:05 p.m.
6
     JOSEPH D. GIAMPA, et al.,
7                     Defendant.
     _____
8

9

10

11                   TRANSCRIPT OF MOTION HEARING

12          BEFORE THE HONORABLE REGINALD C. LINDSAY

13                   UNITED STATES DISTRICT COURT

14              JOHN J. MOAKLEY U.S. COURTHOUSE

15                     1 COURTHOUSE WAY

16                    BOSTON, MA  02210

17

18

19                   DEBRA M. JOYCE, RMR, CRR
                      Official Court Reporter
20              John J. Moakley U.S. Courthouse
                 1 Courthouse Way, Room 5204
21                    Boston, MA  02210
                         617-737-4410
22

23

24

25

```
 1    APPEARANCES:

 2
      FOR THE PLAINTIFF:
 3
      NATHAN A. TILDEN,ESQ.
 4    RICHARD D. KING, JR., ESQ.
      Smith & Brink, P.C.
 5    350 Granite Street
      Suite 2303
 6    Braintree, MA 02184
      617-770-2241
 7
      FOR THE DEFENDANT JOSEPH GIAMPA:
 8
      MATTHEW J. CONROY,  ESQ.
 9    Conroy & Associates
      114 Waltham St.
10    Suite 25
      Lexington, MA 02421
11    781-862-8060

12
      FOR THE DEFENDANTS JENNIFER McCONNELL
13    and BRIAN CULLINEY:

14    THOMAS M. CIAMPA, ESQ.
      Ciampa & Associates
15    20 Park Plaza
      Suite 804
16    Boston, MA 02116
      617-742-5955
17
      FOR THE DEFENDANT EDWARD KENNEDY:
18
      JEFFREY J. PHILLIPS, ESQ.
19    DANIEL S. TREGER, ESQ.
      Phillips & Angley
20    One Bowdoin Square
      Boston, MA 02114
21    617-367-8787

22

23

24

25
```

```
 1              P R O C E E D I N G S
 2              (The following proceedings were held in open court
 3    before the Honorable Reginald C. Lindsay, United States
 4    District Judge, United States District Court, District of
 5    Massachusetts, at the John J. Moakley United States Courthouse,
 6    1 Courthouse Way, Boston, Massachusetts, on November 13, 2006.)
 7              THE CLERK:  Civil action 05-11693, Encompass v.
 8    Giampa.
 9              LAW CLERK:  Counsel, please identify yourselves for
10    the record.
11              MR. KING:  Good afternoon, your Honor.  Richard
12    King on behalf of Encompass Insurance Company.
13              MR. TILDEN:  Good afternoon, your Honor.  Nathan
14    Tilden on behalf of Encompass Insurance.
15              MR. CONROY:  Good afternoon, your Honor.  Matthew
16    Conroy for the defendants Joe Giampa, Frederick Giampa,
17    Advanced Spine Centers, Future Management Corporation.
18              MR. CIAMPA:  Good afternoon, your Honor.  Thomas
19    Ciampa for the defendants Jennifer McConnell and Brian
20    Culliney.
21              THE COURT:  I'm sorry, you are?  What's your name?
22              MR. CIAMPA:  I'm sorry, your Honor.  Thomas Ciampa.
23              THE COURT:  I'm sorry, your name sounded an awful
24    like --
25              MR. CIAMPA:  Yes, your Honor.  I'm counsel for some
```

```
 1    of the defendants.

 2              THE COURT:  Okay.

 3              MR. PHILLIPS:  Jeffrey Phillips on behalf of

 4    defendant Edward Kennedy.

 5              MR. TREGER:  And, your Honor, Daniel Treger on

 6    behalf of the defendant Edward Kennedy.

 7              THE COURT:  Treger?

 8              MR. TREGER:  T-r-e-g-e-r.

 9              THE COURT:  Okay.

10              All right.  I have a motion to dismiss certain of

11    the claims.  Let me just make sure that I have the claims that

12    are addressed in this motion.

13              Who's going to speak to the motion to dismiss?

14              MR. CONROY:  Your Honor, I'll principally be

15    addressing it.

16              THE COURT:  So there are Counts I and II and VI and

17    what else?

18              MR. CONROY:  Your Honor, Counts I and II are

19    subjective RICO violations, Count III is the conspiracy to

20    violate RICO, Count V is common law conspiracy, and Count VI is

21    common law fraud.

22              THE COURT:  So you are moving to dismiss Counts I,

23    II --

24              MR. CONROY:  III, V, and VI.

25              (Discussion off the record.)
```

1           THE COURT:  All right.  Go ahead, sir.

2           MR. CONROY:  Your Honor, the Court's comfortable

3    with the procedure in terms of the prior motion and what had

4    been denied without prejudice and what was granted and what

5    was --

6           THE COURT:  Yes, I am comfortable.  Although,

7    frankly, looking back, the record indicates that I did not deny

8    the motion with respect to Count III, but Count III alleged --

9           MR. CONROY:  That's the conspiracy to violate --

10           THE COURT:  It's the conspiracy RICO violation.

11           MR. CONROY:  Yes.

12           THE COURT:  Looking at the docket, it says I denied

13    the motion as to that count, and it seemed to me that looking

14    back on it, since it had those fraud allegations which were

15    addressed, the motion should have been granted as to that count

16    as well.  But since you are addressing, in any event, I, II,

17    III, V, and VI all over again, probably doesn't make any

18    difference.

19           MR. CONROY:  I don't believe that it makes any

20    difference.

21           THE COURT:  Okay.  Go ahead.

22           MR. CONROY:  Your Honor, I'll just --

23           THE COURT:  And I take it your position is with

24    respect to all of these counts that there is the same infirmity

25    as before.

1              MR. CONROY:  That's correct.

2              THE COURT:  That fraud is not alleged with

3     particularity.

4              MR. CONROY:  That's correct.

5              THE COURT:  All right.  Go ahead.

6              MR. CONROY:  And annexed to our motion are portions

7     from the transcript from our prior hearing.  The Court had

8     conducted a pretty pointed analysis of the deficiencies in the

9     initial pleading, or I should say the first amended complaint,

10    and looking specifically at what's alleged to be fraud, your

11    Honor pointed out that it was difficult, if not impossible, to

12    ascertain what it was that we represented to the plaintiffs in

13    this case that was false.  And we talked about overutilization,

14    we talked about bills or medical reports that were submitted to

15    the insurance company, and Mr. King's brief actually points out

16    from the colloquy what you had actually said.  It's interesting

17    to note it appears in his own brief -- I'm reluctant, actually,

18    to quote in front of you --

19             THE COURT:  That's all right.  If there's a record,

20    I can't take it back.  I can take it back, but it's still on

21    the record.

22             MR. CONROY:  You requested some kind of graphic

23    form that says with respect to X, this is what they said and

24    this is, in fact, what it is.  So tell me what was false.

25             And in response one would have expected to find

PDF created with pdfFactory trial version www.pdffactory.com

1    perhaps the same exemplar claims but specifically addressing

2    what it was in those medical records or what it was in those

3    bills that was false.

4            Instead of doing that, we increased from 15 to 79

5    exemplar claims with the same litany of language of

6    overutilization in that these services weren't necessary.  And

7    when you break down what they are saying in the complaint is

8    false, it boils down to the issue that they don't like what we

9    did for the patients.  They think that we should not have

10   adjusted somebody as many times as we did.  But the truth is

11   that we treated a patient, we submitted a bill to them.

12   There's nothing false or fraudulent in that.

13          They want to look at it and say it was medically

14   unnecessary.  Where did we represent, where are we making the

15   representation that it's medically necessary?  And I, of

16   course, am not conceding that it wasn't medically necessary,

17   but that's the basis of their case.  And it's akin to, you

18   know, square peg, round hole.  You know, fraud is what fraud

19   is.  There has to be a misrepresentation.  There has to be

20   something that's false that I say that they relied on to their

21   detriment.  It's as simple as that.

22          The fact that this type of case, a chiropractic

23   case or any medical case for that matter, that I treated a

24   patient with a certain recipe of treatment and they don't like

25   it doesn't amount to fraud.

```
 1              THE COURT:  If they say you treated -- they have a
 2    list of people who got heat treatments and they say -- they
 3    have numbers there, and they said that's excessive.
 4              MR. CONROY:  Okay.
 5              THE COURT:  And how do you respond to the list of
 6    79, or whatever the number is, and the allegation that it is
 7    excessive?
 8              MR. CONROY:  I would say where I billed for heat
 9    treatment where I didn't, in fact, perform heat treatment, that
10    would be false.  If I treat somebody 15 times for heat
11    treatment and they think it's excessive, that's not the stuff
12    that fraud is made of, because that's not misrepresentation.
13              THE COURT:  Well, are you saying there's no
14    misrepresentation because they haven't stated the
15    misrepresentation?  I mean, it may be a misrepresentation if
16    you treated somebody -- gave somebody 15 treatments and that
17    person needed only 10, then if you've treated them five more
18    than was necessary, that might be fraud.
19              MR. CONROY:  I'm not sure I'm willing to concede
20    that.  There are -- I mean, within the process, within the
21    claims process, they have remedies here.  It's -- there's got
22    to be a material misrepresentation of fact.
23              THE COURT:  I guess the point is, they are paying
24    you for what are medically necessary treatments, right?
25              MR. CONROY:  That's correct.
```

```
 1          THE COURT:  And so if you give somebody 25

 2   treatments and only 10 were medically necessary, the extent to

 3   which you bill for and were paid for those 15 extras, haven't

 4   you misrepresented that those 15 treatments were medically

 5   necessary?

 6          MR. CONROY:  I don't think I ever make that

 7   representation.  There are states in this country where I'm

 8   required to make a representation that, in fact, what I did was

 9   medically necessary, but the Commonwealth of Massachusetts is

10   not one of them.

11          THE COURT:  But they only pay you for what's

12   medically necessary.

13          MR. CONROY:  That's correct.  But they can do

14   examinations on their own, they can do independent medical

15   exams.  They have people review -- review them, not only do we

16   just give them our bills, we give them our reports as well.  So

17   they can see exactly what the patient told us, what we did,

18   what we bill them --

19          THE COURT:  If the company, Encompass, pays you

20   only for what's medically necessary --

21          MR. CONROY:  That's correct.

22          THE COURT:   -- and what's medically necessary for

23   a patient, let's say patient X, are 10 heat treatments and you

24   bill them for 25, isn't the misrepresentation that 25 heat

25   treatments were medically necessary when, in fact, only 10 were
```

1    medically necessary?  And isn't that a misrepresentation if

2    that turns out to be established?

3                MR. CONROY:  I don't believe it is.

4                THE COURT:  Why not?

5                MR. CONROY:  Because it's -- I'm not making a

6    representation that it's --

7                THE COURT:  Sure, you send the bill.  Each time you

8    send a bill for over what is medically necessary, aren't you

9    making a representation that that treatment was medically

10   necessary when it was not?

11               MR. CONROY:  For purposes of this argument, I'll

12   leap to that position, although I don't concede that it's true.

13               THE COURT:  Well, I don't understand -- okay.  I

14   don't understand why you wouldn't concede that, because each

15   time you send a bill, you are sending this person needed this

16   treatment.

17               MR. CONROY:  I don't believe that's true.  I don't

18   believe that when I submit a bill to the insurance carrier that

19   I am making representation of fact that the services provided

20   were medically necessary.

21               THE COURT:  What is the representation you are

22   making to them?

23               MR. CONROY:  The representation is --

24               THE COURT:  I provided that service.

25               MR. CONROY:  This is what I did.

```
 1                THE COURT:  And even if it wasn't necessary.

 2                MR. CONROY:  It's, in essence, an application for

 3      payment under the PIP statute.

 4                THE COURT:  I understand.  But why do they pay --

 5                MR. CONROY:  Sometimes they don't always pay.

 6                THE COURT:  I understand.  When they pay you,

 7      aren't they paying you because that treatment was necessary?

 8      They don't pay you because you treated somebody who walked in

 9      and said, you know, it would be nice if I had a heat treatment,

10      nothing's really wrong with me, but I'd like a heat treatment

11      and I've got this insurance, and you send the bill.

12                MR. CONROY:  Sure.  But under that scenario, based

13      on what we actually send them, they would actually deny the

14      claim.  It wouldn't be causally related to an accident, and it

15      wouldn't be necessary given what the patient's complaints are.

16                We send them bills with the medical records.  They

17      have -- and we're getting into what they don't allege, but what

18      they're not alleging is that patient X came in, was never in a

19      car accident, we treated, made a representation that the person

20      was in a car accident, that it was causally related and

21      submitted a bill.  That's -- there's a misrepresentation in

22      there, but there's got to be some false -- there's got to be

23      something false on the bill or in the records that we did.  And

24      if -- I mean, overtreatment just doesn't fit in well with

25      fraud, because we're not misrepresenting any facts.  I don't
```

1    think there's any basis either in the statute or in any common

2    law to impute into what we're sending them is a representation

3    that what we performed was medically necessary.

4            But I'll -- to move beyond that just for a moment,

5    assuming that that's true --

6            THE COURT:  Well, let me just -- I don't want to

7    leave this point alone.  But it is not the case the insurance

8    company pays for any service you provide; isn't that right?

9            MR. CONROY:  That's correct.

10           THE COURT:  They don't pay you just because

11   somebody walked in there and said I would love to have a heat

12   treatment.

13           MR. CONROY:  That's right.

14           THE COURT:  They are paying you for a reason.  And

15   isn't the reason is that the treatment was necessary for this

16   person?

17           MR. CONROY:  They pay because the statute obligates

18   them to pay, and what the statute obligates them to pay for is

19   medically necessary treatment that was causally related to an

20   accident for which there was coverage under the policy.

21           THE COURT:  That's right.  So they're obligated to

22   pay for medically necessary treatment.

23           MR. CONROY:  That's right.

24           THE COURT:  So the scenario I gave to you, what was

25   medically necessary was 10 treatments, you bill for 25.  Isn't

 1    there a fraudulent element because every time you submit a

 2    bill, you're submitting a bill that every one of those

 3    treatments was medically necessary?

 4              MR. CONROY:  I don't think that's true.

 5              THE COURT:  All right.  Let's go on.  You're

 6    willing to accept my proposition for purposes --

 7              MR. CONROY:  For purposes of today I'll accept

 8    that.

 9              THE COURT:  All right.

10              MR. CONROY:  And the next analysis is assuming

11    that's true, how do you plead that with particularity?  How do

12    you allege that it wasn't medically necessary?  Is it -- I

13    mean, do you just get to write that as a lawyer, that they

14    billed 25 times but only 10 were necessary?  How do you decide

15    that?  Does Smith & Brink get to decide what's medically

16    necessary?

17              THE COURT:  So what you are saying now is they

18    haven't alleged why it was not medically necessary.

19              MR. CONROY:  That's right.

20              THE COURT:  And that's the problem.

21              MR. CONROY:  That's the second tier of the problem

22    in my eyes, perhaps the first in the Court's.

23              THE COURT:  Okay.  All right.

24              MR. CONROY:  The second issue -- and that,

25    essentially, covers most of the particularity issues.

```
 1              In terms of conspiracy, and it's really two

 2    different analyses that need to be done; one involves the

 3    common law conspiracy in the Massachusetts claim, and that's

 4    dealt with pretty inclusively in the Hayduk case, which is

 5    cited.

 6                   THE COURT:  Is that Count VI?

 7                   MR. CONROY:  That's Count V.

 8                   THE COURT:  V.

 9              Hayduk v. Lanna, actually a district court decision

10    that went up to the 1st Circuit.  But they said conspiracy to

11    commit fraud is covered by 9(b), assuming that it's not a

12    coercion situation.  And there's --

13                   THE COURT:  So you say if you allege that there is

14    a conspiracy to commit fraud, you also have to allege what the

15    fraud is with particularity.

16                   MR. CONROY:  That's what Hayduk says.

17                   THE COURT:  In other words, you have to allege that

18    the defendants agreed together to commit this kind of fraud and

19    the kind of fraud has to be alleged with particularity.

20                   MR. CONROY:  Yes.

21                   THE COURT:  Okay.

22                   MR. CONROY:  The second issue comes up in terms of

23    conspiracy to violate civil RICO, and that's -- I don't believe

24    there's a 1st Circuit case out there, and I don't believe

25    there's a Supreme Court decision out there, but we've cited
```

1    several cases across the country that essentially say we

2    shouldn't let plaintiffs bootstrap -- if they can't plead the

3    substantive case, they shouldn't be able to just say, okay,

4    we're going to say it's conspiracy to violate civil RICO and

5    that will get us beyond.  And then maybe once we conduct a

6    discovery, we amend the complaint and bring a substantive

7    action.

8          It's impossible for me not to look at the facts of

9    this case, because the conspiracy is completely interrelated to

10   the underlying substantive claims.  It's all mail fraud that's

11   being alleged as predicate acts.  So as far as the substantive

12   claims, clearly, clearly 9(b) applies; and when we look at the

13   conspiracy to violate, say, look, all they have to prove is

14   there was a tacit agreement to violate a substantive RICO

15   provision.  Are we not going to look at what the substantive

16   RICO provision is?  It almost doesn't make sense to do that.

17   And when you look -- I understand the Court's reluctance, and

18   from an intellectual standpoint when you look at the elements

19   of conspiracy to violate RICO, it's hard to read into that

20   where the requirement would come from to plead with

21   specificity, but in this specific case, where the alleged

22   conspiracy is to violate what amount to the allegations from

23   Counts I and II, if I and II fail, it doesn't make sense that

24   they should be able to proceed on Count III.

25          THE COURT:  So you say if there's a conspiracy to

PDF created with pdfFactory trial version www.pdffactory.com

1  violate the RICO statute and that violation consists of the

2  defendants engaging in mail fraud, which is essentially what

3  this claim is, they have to outline the contours of the mail

4  fraud with particularity.  Is that your position?

5           MR. CONROY:  That's correct.  That's correct.  It's

6  certainly not my position, just to be clear, that all

7  conspiracy to violate RICO requires pleading with

8  particularity.

9           THE COURT:  Well, because I guess you could have

10 bank robbery as the underlying --

11          MR. CONROY:  It could be --

12          THE COURT:  -- and you don't have to have bank

13 robbery --

14          MR. CONROY:  It could be murder, extortion.  If

15 there's no requirement for the underlying acts, they're not

16 required.

17          THE COURT:  So your point is, if the underlying

18 predicate act is fraud, then the allegation of conspiracy to

19 commit that fraud has to result in a statement of the fraud, of

20 the fraudulent scheme with particularity.

21          MR. CONROY:  That's correct.

22          THE COURT:  Okay.

23          MR. CONROY:  And that is essentially the substance

24 of our --

25          THE COURT:  Weather you are saying with respect to

```
 1    all these Counts I, II, III, V, and VI is that fraud is not
 2    alleged with particularity.  You're actually saying two
 3    things:  There was no fraud because -- there was no fraud, and
 4    there is no particular allegation of fraud.
 5              MR. CONROY:  That's correct.
 6              THE COURT:  Okay.
 7              Anybody else want to speak to these claims before I
 8    hear from the plaintiff?
 9              MR. CIAMPA:  Your Honor, I'd like to add just a
10    couple of things.
11              THE COURT:  First of all, let me ask you if you
12    agree with Mr. Conroy that there may be a misrepresentation if
13    you treat somebody when that person needed 10 treatments and
14    you give them 15?  When I say that person needed, it was
15    medically necessary that the person get 10 treatments and
16    instead the person received 15 treatments, and that the
17    submission of a bill each time is a representation that the
18    person needed that treatment was medically necessary to the
19    person to have that treatment so there may be fraud any time
20    you send a bill for what is not medically necessary.  Do you
21    agree with the proposition that that is not fraud?
22              MR. CIAMPA:  I do, your Honor.  Unless you
23    otherwise represent that what you have prescribed in the way of
24    regiment or treatment is medically necessary in your opinion.
25              THE COURT:  Don't you represent when you submit the
```

1    bill that the treatment you provided was medically necessary?

2              MR. CIAMPA:  You know, it occurred to me, your

3    Honor, when we got plaintiff's opposition that I might file a

4    reply brief, and because I was looking at this case, I thought

5    to myself, is it really necessary for me to file a reply

6    brief?  Does the Court understand what the basis of the dispute

7    is between the parties or is there some advantage?  And if I

8    do, in fact, file a reply brief --

9              THE COURT:  You didn't file one, right?

10             MR. CIAMPA:  No.

11             THE COURT:  But tell me what you would have said to

12   this question.

13             MR. CIAMPA:  To this question, your Honor, I would

14   have said exactly what I'm saying, is should I, in the event

15   that I filed one and it wasn't necessary, be accused of fraud

16   or simply overzealous advocacy for which the client shouldn't

17   not necessarily have to pay?  I think the question really is --

18             THE COURT:  I missed that point.

19             MR. CIAMPA:  The question is, your Honor, how easy

20   do we want to make it for someone to allege fraud?

21             THE COURT:  There are two questions.  One of the

22   questions is whether there is fraud.

23             MR. CIAMPA:  Correct.

24             THE COURT:  Whether there's been a

25   misrepresentation.

```
 1              MR. CIAMPA:  Whether there's been a
 2    misrepresentation.
 3              THE COURT:  That's one question.
 4              MR. CIAMPA:  Correct.
 5              THE COURT:  The other question is, assuming there
 6    is a misrepresentation, has the misrepresentation been alleged
 7    sufficiently to meet the requirements of Rule 9(b)?
 8              MR. CIAMPA:  Correct, your Honor.
 9              THE COURT:  But you and Mr. Conroy start with the
10    proposition there's not even an allegation of misrepresentation
11    in most of this.
12              MR. CIAMPA:  Correct.
13              THE COURT:  Because the mere submission of a bill
14    is no representation at all, except that I did this and I'm
15    owed the money.
16              MR. CIAMPA:  There is a medical record, your
17    Honor.  It is a record of the occurrences.
18              THE COURT:  Yes.
19              MR. CIAMPA:  A patient comes in and I observe
20    something and I recorded it in the medical record.
21              THE COURT:  Yes.
22              MR. CIAMPA:  And then I prescribe treatment and I
23    record that.
24              THE COURT:  Right.
25              MR. CIAMPA:  I send it along to the insurance
```

```
1    company.  They see what I've seen, they see what I've done.

2    They are in a position to determine whether or not they feel

3    like I need to be paid under the statute, because that's what

4    this --

5              THE COURT:  But whether -- you know, whether they

6    agree with that or not, but you have made a representation to

7    them about that, haven't you?

8              MR. CIAMPA:  I have made a representation that I

9    have rendered treatment and this is the treatment I've rendered

10   and it's in response to the following observations.

11             THE COURT:  I see.  And you are not saying --

12             MR. CIAMPA:  I am not saying --

13             THE COURT:  -- that it was necessary.

14             MR. CIAMPA:  That had this patient not received

15   this treatment, he would have for certain gotten worse or for

16   certain had something ill to fall upon him.

17             THE COURT:  So it's up to them to catch the fraud

18   if there is fraud.

19             MR. CIAMPA:  But, your Honor, there's a broad

20   spectrum for people to disagree as to what is medically

21   necessary.

22             THE COURT:  I understand.

23             MR. CIAMPA:  Obviously, it's our malpractice --

24             THE COURT:  I understand.  I understand that you

25   may disagree, I'm not talking about disagreement.  I'm saying,
```

```
 1    let's suppose everybody agrees that patient X should have only

 2    10 treatments but he got 15, and if you give him any number of

 3    treatments above 10, aren't you representing that he needed

 4    those treatments?

 5              MR. CIAMPA:  In my medical opinion?

 6              THE COURT:  In your medical -- yes, right.

 7              MR. CIAMPA:  Your Honor, again, I would say no, but

 8    say that's true.  I'm going to follow my brother's act.

 9              THE COURT:  Okay.  I guess I'm not going to get you

10    off this.

11              Go ahead.

12              MR. CIAMPA:  Say that's true.  Then the question

13    is:  When does it become medically unnecessary?

14              THE COURT:  That's a separate question.

15              MR. CIAMPA:  Well, but that's where the fraud needs

16    to be pled with particularity, because if it's necessary in

17    some circumstances and not necessary in others, we need to know

18    where one lets off and the other begins, otherwise we don't

19    know what the fraud is.

20              THE COURT:  Okay.  I understand that proposition,

21    and the only proposition I've been questioning about is whether

22    there's any representation of something being medically

23    necessary every time you submit a bill.

24              MR. CIAMPA:  And I would say no, your Honor.  I

25    would say, again, it's a record of what occurred:  Patient
```

PDF created with pdfFactory trial version www.pdffactory.com

1   comes in, this is what I observed, this is how I treated this

2   patient.

3              Now, Encompass is and has been free, and has

4   exercised that freedom to under the statute to make its own

5   determination as to whether it thinks that it's medically

6   necessary as defined under the statute.  And it pays in

7   instances where it opines that it is, and it doesn't in

8   instances where it opines that it does not.

9              THE COURT:  So I take it your position is that

10  everything we did in our opinion should have been done.

11             MR. CIAMPA:  That's right, your Honor.  But even if

12  it hadn't been the case, it wouldn't necessarily give them a

13  cause of action for fraud.  There are other remedies

14  available.  They've availed themselves of other remedies.

15  There are remedies that your Honor decided would not drop out

16  of this case in our first run at a motion to dismiss.  So what

17  we are saying here is whether or not -- it doesn't matter for

18  purposes of our discussion whether or not it constitutes fraud

19  because the plaintiffs have a remedy.  They have a remedy of

20  nonpayment, they have a civil action which allows them to

21  exercise their right to not pay, and what we're saying, it

22  doesn't arise to the level of what constitutes fraud.

23             THE COURT:  Okay.

24             Anybody else want to speak to this?

25             MR. PHILLIPS:  I don't believe I have anything to

1    add.

2                    THE COURT:  You agree with the other counsel that

3    you're making no representation as to medical necessity when

4    you send the bill?

5                    MR. PHILLIPS:  Yes.  I don't think I can add

6    any more.  I think it's --

7                    THE COURT:  Okay.

8                    MR. KING:  Thank you, your Honor.  This is the

9    first time in my years of RICO practice that I have heard that

10   defense.

11                   THE COURT:  Which defense?

12                   MR. KING:  The defense that our bills are not

13   representations.  Clearly they are.  The mail fraud alleged in

14   a case like this, all the mail fraud doesn't have to actually

15   contain misrepresentations, as I'm sure counsel knows, but in

16   this case, perhaps they're not familiar with the fact that

17   every federal form, HCVA form, so-called medical bill that was

18   submitted by this outfit First Spine, every single one of them

19   to my client contains language on the bill where it's -- and

20   it's signed by, in this one example that's made part of the

21   record, by Brian Culliney, one of the named defendants.  It

22   says, "Signature of physician or supplier certifying that the

23   services shown on this form were medically indicated necessary

24   for health of the patient and personally furnished."  Lower

25   down it says, "I certify that the services listed above were

PDF created with pdfFactory trial version www.pdffactory.com

1    medically indicated and necessary."

2              So I think it's just disingenuous to stand here and

3    make the argument that, oh, no, this is an application for

4    payment, if we're lucky enough that Encompass is stupid and

5    pays us, as the Court suggested, you know, we've got to -- we

6    can never rely on the good faith of those people that are doing

7    business with us, we've got to go out there and spend money to

8    catch them in a lie.  That's number one.

9              Number two, with respect to the argument they keep

10   referring to the statute, the statute.  The statute is --

11   creates a third-party beneficiary contract relationship with a

12   medical provider or so-called unpaid medical provider in

13   Massachusetts and insurers, and those bills in the statute

14   itself, which we cite in both complaints, we're on the second

15   amended complaint, says that the insurers will pay for

16   reasonable fees for medically necessary types of treatment.

17   And then it goes into some specificity.

18             So the argument that the representations contained

19   in these bills, which we've alleged at this procedural posture,

20   12(b)(6), wouldn't be sufficient, because the question is not

21   are they fraud, I think is if any set of facts can be proven at

22   12(b)(6), then the plaintiff is allowed to go forward.

23             Now, when we were here last in June, the Court --

24   and there was some colloquy that we did cite in our second

25   opposition to the motions to dismiss, wherein your Honor talked

1    about, you know, perhaps you could give me some more

2    specificity as we had done in connection with the 12 exemplars

3    the first time around, but give it to me in graphic form, which

4    I think we've done --

5              THE COURT:  Well, I wasn't just looking for graphic

6    form.

7              MR. KING:  No, I understand, and as my brothers

8    have complained, we didn't just do it in graphic form, we also

9    expanded the number of exemplar claims.

10             But I think the question is -- and this is what

11   was -- and I'll repeat what Mr. Conroy said.  He said, I prefer

12   that you do that in a kind of graphic form as you've done in

13   this chart, in some kind of graphic form that says with respect

14   to X this is what they said and this is what the fact is and

15   this is why we say this is fraud and assert the pattern.

16             I think one of the best examples of it is, if you

17   will, Judge, is in the what's labeled as Exhibit A in our

18   opposition, which is happens to be chart three in the second

19   amended complaint.  And there we're talking about CPT upcoding

20   on the initial exam --

21             THE COURT:  You say Exhibit A?

22             MR. KING:  It's Exhibit A to our opposition.

23             THE COURT:  Yes.

24             MR. KING:  Okay.  And that's --

25             THE COURT:  Is that the one that begins with Roth?

```
1                  MR. KING:  Right.

2                  THE COURT:  Okay.

3                  MR. KING:  Now, here's a case -- here's a case

4      where it's saying in this particular claim, which is pled in

5      our complaint, that the medical bills and records submitted

6      upon which my client relied bill for a complexity of medical

7      exam that was not warranted.  And there's 186 of the 196 that

8      we allege that in.

9                  Now, is this based on Smith & Brink, you know, or

10     some lawyers' opinion?  This is based on, as is in the record,

11     our multiple medical experts who have opined that.

12                 THE COURT:  Tell me why it is not warranted.

13     That's the problem I'm having.

14                 Let's take Roth Khim, that's the first person

15     there.

16                 MR. KING:  True.

17                 THE COURT:  You have the CPT code 99204.  Your

18     expert says the treatment given this person was not warranted.

19                 MR. KING:  Based on the medical records that were

20     fashioned by the defendants.  A 99204, as is laid out in our

21     complaint, this is within the four corners of the complaint,

22     calls for a comprehensive history, comprehensive examination,

23     medical decision making, which is of moderate -- at least

24     moderate complexity, and 45 minutes of face-to-face time.

25                 And we've alleged that none of those elements,
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1    requirements of 99204 are at issue in these 186 patients.

 2              THE COURT:  Why?

 3              MR. KING:  Based on the -- based on the medical

 4    records submitted by -- in other words, what we're talking

 5    about here -- if you're going to bill 99204 or 99205, which the

 6    defendants did, you're talking about conditions which require a

 7    serious medical decision making --

 8              THE COURT:  Let's do this.  Let's just use Roth

 9    Khim, and let me go to the complaint.  Can you go to the

10    complaint?  Second amended complaint.  Can you find Roth Khim

11    or the series of allegations that Roth Khim is included in?

12              MR. KING:  Well, Roth Khim -- well, he's in the

13    same chart in the complaint.

14              THE COURT:  Yes, I see that.

15              MR. KING:  Okay.

16              THE COURT:  So --

17              MR. KING:  I'm sorry, I'm not following your

18    Honor's --

19              THE COURT:  What I want to do is -- it's in the

20    chart, you've given me the graph.

21              MR. KING:  Yes.

22              THE COURT:  So I want to see what it is that you

23    say about the people in that chart.  Is that page --

24              MR. KING:  That's page 21, I think.

25              THE COURT:  21.  21?
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1              MR. KING:  Well, that's the introductory paragraph
 2      to the chart.
 3              THE COURT:  Okay.  Well, maybe you can help me out
 4      by finding what it is that is specifically alleged about the
 5      people who are in that chart.
 6              MR. KING:  Well, the introductory paragraph says
 7      that defendants submitted false medical --
 8              THE COURT:  Read it slowly.  And what -- where do I
 9      need to read?
10              MR. KING:  I'm looking at paragraph 99.
11              THE COURT:  Paragraph 99.
12              MR. KING:  It's page 21.  In fact, your Honor,
13      the --
14              THE COURT:  All right.  This is the paragraph.
15              MR. KING:  Actually, your Honor, if you turn back
16      to page 20, I think the discussion, the CPT upcoding really
17      begins there at paragraph 97.
18              THE COURT:  All right.  98, it's paragraph 98 is
19      where you start, right?
20              MR. KING:  Actually, 97 on the page before, I
21      apologize.
22              THE COURT:  Okay, 97.  97 says, "First Spine
23      engaged in CPT upcoding in connection with the alleged
24      treatment of patients for which Encompass became responsible."
25              By way of example, First Spine, virtually without
```

```
 1    deviation, billed Encompass for patient's initial office visit

 2    under the CPT code 99204 -- 05 or 99204, then you list the

 3    criteria that meet those codes.  And you go on to say that to

 4    warrant a medical bill demanding CPT code 99205, and then you

 5    list the conditions.  And then you say false information was

 6    submitted with respect to all those people listed on the

 7    chart.  Right?

 8              MR. KING:  Yes.

 9              THE COURT:  Now, what's missing from this, it seems

10    to me, is what's wrong with these people?  In other words, you

11    tell me what it is they're supposed to have, but you don't tell

12    me what they really do have.  I mean, you say it's false, and

13    there's no allegation about why that's false.  If I take Roth

14    Khim, all I have is that Roth Khim received treatment that got

15    a CPT code of 99204.  I think it was -- 99204 meant he had the

16    following problems.  What I do have is an allegation that he

17    didn't have those problems.  You just say it's false.

18              MR. KING:  Well, I think -- not in that paragraph,

19    your Honor, but I think throughout this complaint we say that

20    all of the patients seen here, and part of the expert medical

21    analysis that's made as part of the record in this case, is

22    that all the people, every single person in this -- identified

23    in the complaint are automobile accident patients with all the

24    same diagnoses, lumbar cervical sprain or strain.  Nothing

25    else.  And I think that maybe there's a disconnect between your
```

PDF created with pdfFactory trial version www.pdffactory.com

1   question and my answer, but to bill at the highest level

2   complexity on an examination and management codes, this is for

3   somebody that you're going to have to follow for a long time --

4   it's either one or the other, someone comes in with a gunshot

5   wound or they have a serious life threatening medical condition

6   or they may have a chronic condition where it's going to --

7   there's going to be a continuing doctor/patient relationship

8   for a long time and you spend a long time with that person, et

9   cetera.

10          These cases are 99201.  This is the lowest medical

11  complexity, and I think we do set that out in the complaint

12  with respect to the CPT upcoding, the spinal manipulation, the

13  heat packs, and all the rest of it.

14          The reason I started with CPT coding is because it

15  goes back to the whole misrepresentation, because when you

16  say -- or I understood my brother's argument, which I think

17  we've already destroyed with their own bills, but I think I

18  understood their argument to say, well, we thought -- we

19  thought we would just submit a bill for 25 heat treatments and

20  see if we could get away with it, even though only 15 or 10

21  were warranted.

22          But in this case, I think the CPT codes are

23  different in the sense that a CPT code means something.  In

24  other words, heat pack, well, it's -- everybody sort of gets

25  what a hot pack is, and they say that they did it and they

1    should be paid for it even though it wasn't medically

2    necessary.  But what's -- where the CPT hits more of a specific

3    item --

4              THE COURT:  So you're saying that if a person comes

5    in with this lumbar strain and he gets only a heat pack, the

6    fraud is that they are saying that he has been treated at the

7    highest risk of mortality, morbidity and/or complication, and

8    that's the fraud.

9              MR. KING:  That in connection with all the other

10   indicia of fraud.  We talk about in this complaint -- and I

11   think your Honor noted it at the last hearing -- these are all

12   people that are coming in from accidents where there's no

13   damage to the vehicles, and they all get the same thing.  No

14   matter how old or young they are, what their sex is, where they

15   were in the vehicle, how fast the vehicles were going,

16   everybody gets the same recipe of treatment.

17             Now, is that fraud in and of itself?  No, it's

18   circumstantial, raises an inference of fraud.

19             I think when you take -- and this is not the

20   creation of lawyers, this is medical expert opinion, and we

21   only have the one in this case so far.  But what you have is

22   CPT upcoding 186 people out of 196.  You've got the illegal

23   inducements, which I think is immaterial because the Court's

24   already found that 93A claims survive.

25             You've got the spinal manipulation, there's 186 of

1    those persons out of 196 by the medical expert opinion that

2    were unwarranted.

3              175 excessive chiro visits out of 196.

4              165 total out of 196 excessive heat treatments.

5              And 161 excessive electric stimulations out of 196.

6              So there's overlap -- and I think we talked about

7    like a recipe of treatment -- it's not that we're talking about

8    Roth Khim, and you know, he had one too many hot packs.  What

9    we're talking about is Roth Khim had excessive -- everything

10   was excessive.

11             But my point about the CPT codes is it really

12   undermines the argument that, hey, the bill, you know, we could

13   have a dispute about how many is the right number, because when

14   they say we gave the person, you know, the full tune-up when

15   all they did was get under and change the oil filter, then

16   that's a misrepresentation.

17             THE COURT:  And how do we know that's what happened

18   with respect to Roth Khim?  In other words, how do we know that

19   he didn't get the full --

20             MR. KING:  The medical documentation based on the

21   expert review doesn't warrant that level.  The person with that

22   diagnosis is not entitled to that level facially.  We're

23   talking about on these E and M codes, which are different than

24   the modality codes, if you will.  The modality codes go up to

25   heat packs, et cetera, but the E and M codes have to do with

1    what type of patient it is and what the medical claim is of

2    that patient.

3              THE COURT:  What's an E and M code?

4              MR. KING:  Evaluation and management.  That's the

5    99 and the three letters, it's 201, 202, 203, 204, 205, and

6    then for reexam there's a 1.

7              THE COURT:  So the allegation is a person comes in

8    with an automobile accident and he has a lumbar strain or

9    cervical sprain, and he gets treated as if he had a high risk

10   of mortality, morbidity, and other complications.  Is that what

11   you're saying?

12             MR. KING:  That's what I'm saying that they

13   submitted, they represented in their medical records, and,

14   again, I think --

15             THE COURT:  And the representation is fraudulent

16   because, you're saying, the person who comes in with a

17   diagnosis of cervical sprain is not a high risk of mortality,

18   morbidity, and/or other complication.  Is that what you're

19   saying?

20             MR. KING:  Not in any of these cases, your Honor.

21   This is -- I'm not saying -- I'm not a doctor that somebody who

22   comes in with a cervical complaint couldn't be someone that --

23             THE COURT:  So why not in these cases?

24             MR. KING:  None of these -- first of all, all these

25   people all treated for about the same amount of time, all of

1    them were in minor accidents, and all of them -- or I should

2    say most of them -- and I don't have the count here, were ever

3    referred for x-rays.  They just come to the chiropractor, they

4    all get the highest levels -- as if everybody who walked in the

5    door there needed this upper-level examination, the time spent

6    with them, et cetera.

7              THE COURT:  Do you say, for example, that in the

8    case of all those people, 186 people, whatever that number is,

9    there was not a high risk of mortality, there was not an

10   extensive diagnosis, there was not a comprehensive patient

11   history, and there was not an interaction that lasted 60

12   minutes in all of those?  Is that what you're saying?

13             MR. KING:  Absolutely.  That's what the medical

14   records say.  That's what the medical records say, and that's

15   what we've alleged --

16             THE COURT:  And where do you allege that?

17             MR. KING:  Give me one second, your Honor.

18             I think the first place I would indicate to the

19   Court is page 16, paragraph 89, which I touched on earlier.

20             THE COURT:  Paragraph 89.

21             MR. KING:  Page 16.

22             THE COURT:  Okay.

23             I look at paragraph 89, you know, that looks like

24   something I could call negligence.  You know, they didn't

25   examine the person properly, they don't tell you the location

PDF created with pdfFactory trial version www.pdffactory.com

```
 1    of the vehicle.  Why does 89 show that there's fraud as opposed
 2    to carelessness?
 3              MR. KING:  I think in combination with the chart
 4    evidence and the allegations that begin at 122 and continue
 5    thereafter throughout --
 6              THE COURT:  Paragraph 122.
 7              MR. KING:  Yeah, 122 and then continue, that's the
 8    beginning of the new exemplar form, all of these --
 9              THE COURT:  You know, here's what we've been
10    discussing.  Right now you have told me this:  You have said
11    that in none of the people in Exhibit A who are in that Exhibit
12    A was there a risk of high mortality or morbidity, was there an
13    extensive diagnosis done, was there an interaction of 60
14    minutes or more, and so on.  And that's what I'm looking for in
15    this complaint.  You tell me in the complaint what it is that
16    code represents, but it doesn't say is that that's not what
17    happened in these cases.  At least I don't find it yet.
18              MR. KING:  Well, I think in paragraph 89, you just
19    asked the question, well, why is that just not negligence?  The
20    CPT codes that they're following these cases specifically
21    require that they do the things that you call negligence.  I
22    call it -- I call it sufficient inference of fraud in light of
23    the fact that we're talking about -- almost 99 percent of the
24    people in the complaint at the outliers are people that were
25    just discharged.
```

1          THE COURT:  What this says at paragraph 89 is the

2     record doesn't show the mechanism of injury, the location in

3     vehicle, anything about prior medical history.  That seems to

4     address the question that there should be a history,

5     preexisting condition, that, again, seems to reflect not a good

6     history taking, physical composition, I don't know what that

7     is, damage to the vehicle, I don't know whether -- you know, if

8     a person were to come in, if the doctor were to ask how much

9     damage happened to the vehicle -- I'm not sure the physician

10    would ask that question.

11          I guess what I'm saying to you is:  When I look at

12    this, look at paragraph 89.  I can't tell whether they're

13    talking about fraud or somebody who just keeps poor records.

14    And what I expect to see, frankly, is what we just discussed,

15    that none of those people in that list had any of the things

16    that would justify the 89.  They didn't have -- the 99204 and

17    99205, they didn't have a high risk of mortality, they didn't

18    have these extensive histories taken, they didn't have

19    extensive analyses and so on.  That's what I don't see.

20          MR. KING:  With all due respect, your Honor, I

21    think after the last time that we were here, one of the things

22    that we had cited or one of the things that we had discussed on

23    the record -- if I can just go back to that -- your Honor said,

24    for example, one of the allegations you have says no one has

25    a -- the person had no previous injury and, in fact, the person

```
1    did have a previous injury.  I understand that.  That was the

2    Court.  And then later I said, specific instances earlier you

3    had cited an instance where the medical documentation generated

4    by First Spine referred to a prior -- no prior similar medical

5    condition, and that would be an example of the Court found

6    satisfaction in terms of, well, what was wrong here?  And the

7    Court answered:  Yes.

8              Now, in the -- in the complaint, we've expanded the

9    exemplar claims, I think, to around 90 or a hundred.

10             THE COURT:  Well, you've added more people.

11             MR. KING:  Not more people, more allegations of the

12   type that I discussed the first time in June with the Court and

13   the Court found that that was at least a sufficient allegation

14   with specificity of one type of thing that we're discussing

15   here.

16             THE COURT:  What did I say?  Didn't I say that you

17   have to tell me what was really wrong with the person?  If you

18   say that somebody got treated for a lumbar spine as if he had

19   been a severed spine -- excuse me, he had a strain and he was

20   treated for as if he had a severed spine, then I understand

21   what the fraud is.  I don't --

22             MR. KING:  I think that's exactly what -- I think

23   that's exactly what -- these people were -- I think that's

24   exactly what it is here.  I think --

25             THE COURT:  I know, but you're adding all this
```

```
 1    now.  The point is, I don't see this in the complaint.  I don't
 2    see in the complaint the notion that these people who are
 3    listed on that chart that you gave me did not have high
 4    mortality.  It may be that they did not have a risk of high
 5    mortality or morbidity, they did not have these examinations
 6    that you say are necessary, but I don't see that alleged.
 7    Maybe there's an inference in here, but I don't see the
 8    allegation.  Rule 9 says you have to state it with
 9    particularity, what's wrong with this?  As I said, when you --
10    like at 89, I can see that something is missing from their
11    medical file.
12              Now, I can assume that that is sloppiness, but I
13    don't necessarily know that it is fraud.
14              MR. KING:  Well, okay.  I guess if at this stage in
15    the procedural posture we allege, and we allege that it's
16    supported by a medical expert, that the CPT code in connection
17    with Joe Smith was wrong and it was -- and we are specific,
18    when -- the time, place, and content, when that medical bill
19    was issued, where it was issued from, and what the content is
20    in there --
21              THE COURT:  You don't tell me what's wrong with
22    him.  You say it's excessive or that it was more than what was
23    necessary, and I say why?  What's the problem?  You tell me
24    what it says, but you don't tell me why it's fraudulent.
25              MR. KING:  Well, I think, your Honor, if -- I guess
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1    if we weren't talking about CPT codes and we were talking about

 2    widgets and you got a bill for a widget and that's not the

 3    widget that was delivered or warranted as medically necessary

 4    under the facts, then that would be back to your original

 5    discussion with my brothers, that those -- all of this case

 6    comes down to medical bills that were submitted, right, and if

 7    there were -- if someone gets 15 hot pack treatments --

 8              THE COURT:  All right.  Let me interrupt and tell

 9    you what my problem is.  Your adversaries say this is a

10    question -- this is a matter of opinion.  Their expert says

11    these people -- all the people who got the 99204 codes rightly

12    were listed because our opinion is they deserved the treatment

13    that 99204 calls for.  You say they didn't.

14              Now, what I'm trying to understand is why isn't

15    that a difference of medical opinion as opposed to fraud?

16              And what the complaint should allege is that is

17    fraudulent because none of those people were at risk for

18    mortality or high morbidity, none of them got x-rays or the

19    extensive treatment, and none of them were in the office for 60

20    minutes or more.  That kind of thing.

21              MR. KING:  I think that -- I think that is what we

22    say in the complaint, and I haven't committed all 800

23    paragraphs of the complaint to my memory, but I think that

24    the --

25              THE COURT:  Can you just find those?
```

1          MR. KING:  Well, for instance, one of the things

2     that we have alleged here at page 60 would be -- and I think

3     the question becomes at some point what's the quantum at this

4     procedural posture?  This is --

5          THE COURT:  Well, I can tell you what the quantum

6     is.  You've got to explain to me why this is fraud and not

7     something else.

8          The problem is you've got a lot of people here, and

9     you say all of these people were overtreated or the company was

10    overbilled for these people.

11         Now, if you have one person -- it would be easier

12    to do this.  You could say Mr. Khim or -- what's Mr. Khim's

13    last name?

14         MR. KING:  Roth.

15         THE COURT:  Mr. Khim came in and he had a splinter

16    and they treated him as if he were going to die.  I mean, they

17    billed for him as if he were going to die, that we had to put

18    him on life support system, blood transfusion, and so on.  And

19    he had a splinter.  Now, I can see what's fraudulent about

20    that.  The guy had a splinter, he was treated as if he were

21    going to die.

22         But what you say is you've got 186 people, all of

23    whom were treated as if they were going to die, and it was just

24    false.  And I don't know what's false about this because I

25    don't know maybe they were going to die.

```
 1              MR. KING:  Okay.  Well, your Honor, I think in your
 2    example if -- what we say in here is they all had minor lumbar
 3    sprain or strain.  Just all had the same thing apparently, and
 4    they were treated as if they were going to die.
 5              THE COURT:  Where do you say that?  Minor sprains,
 6    where do you say that?
 7              (Discussion off the record.)
 8              THE COURT:  You've got my splinter somewhere in
 9    this complaint.
10              MR. KING:  No, I think --
11              THE COURT:  No, no, minor sprain.
12              MR. KING:  I think the point is, even in the
13    Court's sort of analogy, the splinter, if I said splinter and
14    they treated like they were going to die, it's just -- I don't
15    think there's much difference between what we're saying here,
16    it's just maybe degree.
17              THE COURT:  So what is it you say about these
18    people in Exhibit A?
19              MR. KING:  Well, at paragraph 85 -- and I'll get
20    back to 122 -- at paragraph 85 on page 14 --
21                        (Pause.)
22              MR. KING:  -- of the complaint --
23              THE COURT:  Yes, I'm looking at it.
24              MR. KING:  You sort of go down the laundry list of
25    what all these patients have.  And I would be -- I would submit
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1    to the Court that soft-tissue injury standing alone is your

 2    splinter.  In the world of neuromuscular meds -- all of these

 3    people had minor strain/sprain, generally no other medical

 4    intervention, et cetera, and they were all treated -- not only

 5    on the CPT code analysis, but in terms of all the modalities.

 6    I think that our expert opined in connection with the motions

 7    that we first argued before your Honor last summer or two

 8    summers ago that all of these people, given the medical

 9    documentation and the diagnoses of soft tissue strain or

10    sprain, would have gotten along better without medical

11    interception and in less time than they actually went for

12    alleged treatment with the defendants and bills were generated

13    in connection therewith.

14             And I think that -- I guess that's the splinter in

15    your example.

16             Going back to the exemplar claims and beginning at

17    paragraph 122 -- and we lay these out at Exhibit I to our

18    second opposition to the motion to dismiss.  We've got

19    multiple, multiple examples specifically pled from the patient

20    files that I think boil down one way or another to the

21    following categories -- and I don't know that the Court wants

22    me to go through and read every paragraph, but where you have

23    the false medical histories in the medical documentation, and

24    those are alleged with specificity beginning on 122 and going

25    through --
```

```
 1              THE COURT:  122 alleges false medical histories?
 2              MR. KING:  Beginning at that point.  122 actually
 3      does.  It talks about in connection with that particular
 4      claim.  126 talks about billing where my client received
 5      billing and the patient testified that she never saw the
 6      chiropractor.  Other categories that are contained in that
 7      section patients almost invariably, and I don't know that I set
 8      this forth generally, but specifically with regard to certain
 9      claims here at the back of the complaint, almost invariably
10      everybody who goes to that clinic is found to be disabled,
11      totally disabled generally for a period of time, and then
12      almost without fail partially disabled until they're
13      discharged.  And time after time after time, and as we've
14      alleged at least at 212, the patient would have no lost wage
15      claim form and no history of any disability other than the sort
16      of generic template-based medical that was by the defendants
17      and submitted to our client pursuant to the PIP statute.
18              Instances in here where not only is the medical
19      history false, but the mechanism or the accident so the
20      mechanism of injury is -- seems to be divorced from reality,
21      where we've got people with police reports and other emergency
22      reports that indicate no injury, and then we have people
23      treated days or weeks later at the clinic -- and these are
24      alleged with specificity -- and received the highest level
25      CPT E and M codes.
```

1          We've got instances in here where we've got

2     emergency room records where the people that actually went to

3     the emergency room and contradict the medical records of First

4     Spine; i.e., no head trauma, no head contact at the emergency

5     room right after the alleged incident, and then head trauma in

6     the medical reports from First Spine.

7          Similarly, this was noted in our medical expert

8     affidavit originally, time and time --

9          THE COURT:  Let me interrupt you just a minute.

10    You spent a lot of time on the allegations and fraud with

11    particularity.  You have a 93A claim in this case, and the 93A

12    claim talks about an unfair and deceptive act or practice

13    without sort of requiring this 9(b) particularity, does it?

14         MR. KING:  It does not require.

15         THE COURT:  What's wrong with just letting the case

16    go forward on the 93A claim and not having to deal with these

17    fraud claims?

18         MR. KING:  Well, I think my clients have been

19    defrauded, and I think we have set forth --

20         THE COURT:  But what relief are you going to get

21    from the RICO statute, from the civil conspiracy statute, and

22    all the rest that you're not going to get from 93A?

23         MR. KING:  Well, I think, frankly, there's a

24    possibility of quintuple damages under the precedent of this

25    court, not your Honor, but the U.S. district Court of

PDF created with pdfFactory trial version www.pdffactory.com

1    Massachusetts with those combinations.

2              THE COURT:  You mean you get five times -- what's

3    quintuple, five times the actual damages in RICO?

4              MR. KING:  Right.  Judge Young had awarded that in

5    another racketeering case in which my firm was involved, where

6    it was -- obviously, I don't set forth those arguments out in

7    the complaint, but I think the issue is that RICO serves a

8    different purpose and policy purpose than Chapter 93A to a

9    certain extent, and in that case we were successful.

10             And I think that this -- I think that what we've

11   got here is medical records that were just -- there was a mill,

12   as we've set forth, and they all gave the same treatment.  And

13   what we say is those medical records -- and I think your Honor

14   hit on it exactly at the top of this hearing -- those medical

15   records are representations of something, and although they

16   wanted to say, na, they're just a suggestion --

17             THE COURT:  I'm past that.  I believe the medical

18   records represent a representation that what was billed for was

19   medically necessary.  I don't have any problem with that

20   whatsoever.

21             MR. KING:  Okay.  And what we've said is it

22   wasn't -- these weren't medically necessary for these reasons,

23   and these are folks that came in with a splinter, soft-tissue

24   injury, all the same splinter, and they all received life

25   threatening health care for months, three four times a week for

1    three months.

2              THE COURT:  It would have been easier, I guess, for

3    me to understand if the allegation was they got treated for

4    life saving and this is a treatment they should have had.  They

5    should have taken something and taken that splinter out and it

6    would have cost X.

7              MR. KING:  But, your Honor, I think at this point

8    in the proceedings, I think that there is some area left for

9    discovery and a finder of fact.  I think there will be --

10             THE COURT:  If you are in a position --

11             MR. KING:  We're saying in all cases --

12             THE COURT:  If you're in a position to know that

13   the treatment was excessive, don't you have some sense about

14   what should have been the treatment?

15             MR. KING:  Well, I think -- for instance, your

16   Honor cited the hot pack.  We're saying it's excessive if it's

17   beyond whatever our number was in the complaint.  That's based

18   on the medical experts.  The flip side of that, there was 165

19   people that got that, the others we're not claiming that that's

20   an indicia of fraud with respect to those 25 people.  But in

21   every single -- in connection with every patient in the

22   complaint -- there's only 196, I say only, luckily perhaps, but

23   of the 196 people, I think there's only six people that don't

24   fall into every overlapped category.  So we're not talking

25   about, well, maybe it was just negligent that they, you know,

PDF created with pdfFactory trial version www.pdffactory.com

```
 1   miscoded, they had 99204 and it was a slip of the pen or
 2   something like this.  It was that and the overutilization of
 3   treatment.
 4              THE COURT:  All right.  Let me ask you, you have
 5   RICO conspiracy, civil conspiracy, why do you need all that?
 6   Even if you get quintuple damages, do you get quintuple
 7   damages -- this is all the same case.  Your claim that people
 8   went to these clinics, they received more treatment than was
 9   medically necessary, the defendants knew all that, billed your
10   company for that, and violated the RICO statute, committed
11   fraud and can I just understand what is it the conspiracy
12   brings you, let's say you got the substantive RICO counts?
13              MR. KING:  I agree with your Honor.  The most --
14   you know, the most that my client could request pursuant to the
15   prayers for relief in the second amended complaint would be
16   quintuple damages, attorney's fees, and costs.  So if that
17   answers the Court's question.  So there would be nothing gained
18   by -- if we're allowed to go forward on the substantive RICO
19   count and the 93A claim, in terms of dollar damages, there's
20   nothing more to be gained.  Although I would say that in terms
21   of the conspiracy count --
22              THE COURT:  Common law conspiracy count.
23              MR. KING:  Excuse me?
24              THE COURT:  The common law, Massachusetts civil
25   conspiracy.
```

PDF created with pdfFactory trial version www.pdffactory.com

1           MR. KING:  Right.  If the RICO conspiracy count

2    stays, I think that the substantive Massachusetts conspiracy

3    could be out.  But, I mean, I'm saying that as I stand here,

4    but I'm concerned with joint and several liability, and I don't

5    know how that would shake out if, let's say, your Honor allowed

6    the RICO conspiracy to move forward and then there was some --

7    at a later date there was some issue that came out on a summary

8    judgment and then we -- and we lost the opportunity to pursue

9    the common law conspiracy.

10          And I'm not -- unfortunately, perhaps my brother

11   has a thought, but I'm not prepared to just concede that

12   there's no set of facts where that could become relevant,

13   especially where it concerns joint and several liability with

14   respect to the various players in this case.

15          THE COURT:  Well, you need -- this is a classic

16   case where everything is pleaded and I can't determine the

17   necessity for pleading all of this.  If you plead the

18   substantive RICO, you have to prove as to each defendant that

19   person violated the RICO statute or that entity violated the

20   RICO statute.

21          MR. KING:  Let's say this, your Honor:  Let's say

22   if all the counts go forward and it goes to the jury, for

23   whatever reason the jury decides that, you know, mail fraud

24   just isn't there, I mean, it's almost one of those scenarios

25   you couldn't foresee because if -- but --

```
1            THE COURT:  But if mail fraud is not there, you
2   don't have substantive RICO.  Maybe you have a conspiracy to
3   commit mail fraud and you don't have actual mail fraud.
4            MR. KING:  Or maybe you have a conspiracy to commit
5   common law fraud in that case.
6            I mean, I think there is a set of facts where I'm
7   loathed or I think I'd be remiss to my client if I just said,
8   well, that's just surplusage and just cull it from the
9   complaint.  Obviously, I'll be bound by the Court's decision
10  with respect to its substantive analysis of whether we've met
11  what I feel is still a minimal burden under Connolly v.
12  Gibson.  And if what we've set forth in our complaint taken as
13  true today is if any set of facts is proven will he be able to
14  make out this substantive RICO count?  And I think the idea,
15  the mail fraud, that's a non-starter because all of these
16  things are alleged to be mailings.  This is a case that's
17  conducted through the mail.
18            And so the question becomes if they submit medical
19  bills and records that have implicit and, in this case,
20  explicit assertions or representations that it's medically
21  necessary and we've set forth time and time again time, place,
22  and content, why was it medically necessary?  I think that's --
23  I think that's sufficient on all the counts.
24            THE COURT:  Okay.
25            Do you the defendants want to say anything else?
```

PDF created with pdfFactory trial version www.pdffactory.com

1          MR. CONROY:  Not at this time, your Honor.

2          THE COURT:  All right.  I'm going to take a short

3    recess and see where I stand on all of this.

4          (Recess taken.)

5          THE COURT:  The amended complaint has over 700

6    allegations, separate paragraphs containing allegations.  The

7    first observation I make is that that it has that number of

8    allegations doesn't mean that the complaint meets the

9    requirement for alleging fraud.  All of the counts of this

10   complaint that are at issue under the present motion relate to

11   the question of whether the plaintiffs have sufficiently

12   alleged fraud, and the requirement under the rule, Rule 9(b),

13   is that in all of averments of fraud or mistake, the

14   circumstances constituting fraud or mistake shall be stated

15   with particularity.

16          There is a great number of allegations in this

17   complaint which could be taken to be allegations of

18   carelessness, sloppiness, or even allegations of coincidental

19   treatment.  However, I take account of the fact that I am

20   reviewing this complaint pursuant to a motion under

21   Rule 12(b)(6) in which I must accept as true all well-pleaded

22   factual allegations in the complaint and draw all reasonable

23   inferences in favor of the plaintiff.  And I should grant the

24   motion to dismiss only if it is clear that no relief can be

25   granted under any set of facts that could be proved consistent

1    with the allegations.

2              Now, it's important that the allegations, if they

3    are to be accepted as true, be well-pleaded, and under

4    Rule 9(b), that means pleaded with particularity.

5              I've looked at this complaint carefully, and I find

6    that there is reason to deny this motion as to all counts on

7    the basis of the allegations beginning with paragraph 85, and I

8    point to 85 in the first bulleted statement under that

9    complaint, under that paragraph.

10             Paragraph 85 says the patients who are listed in

11   Exhibit A complain only of soft tissue injury.  Paragraph 97

12   says that the defendants upcoded these patients to code 99205

13   or 99204.  There are a number of patients who are listed at

14   99205, under that code, and under that code, under AMA

15   standards, the patient must have a high risk of mortality,

16   morbidity, and/or complications, extensive diagnoses, and

17   review of complex data.  The defendants were required to obtain

18   comprehensive patient histories, conduct comprehensive

19   examinations, and evaluate the patient face to face for

20   approximately 60 minutes.

21             Taking as true that the patients on Exhibit A have

22   soft tissue injuries and were treated as if they were at risk

23   for death or serious complications and coded as such, I believe

24   that the allegations are sufficient at least with respect to

25   those claims to withstand the present motions.

PDF created with pdfFactory trial version www.pdffactory.com

1          I don't make any comment with respect to remaining

2     allegations of fraud, but I have to review the complaint as a

3     whole and determine whether relief could be granted on these

4     complaints consistent with the allegations and if those

5     allegations prove to be true, the allegations about upcoding

6     people with soft tissue injuries, then the plaintiffs would be

7     entitled to relief under each of those counts, each of the

8     counts that are at issue; namely, Counts I, II, III, V, and VI.

9          I expect that I'm going to have occasion to revisit

10    some of these counts, but for now I'm going to let this

11    complaint proceed on all of these counts, I through VII, and

12    I'll, if necessary, revisit this at some later time in the

13    proceeding.

14          Particularly even if the plaintiffs don't make any

15    further -- or rather, defendants don't make any further

16    motions, I would like to revisit with the plaintiffs the two

17    conspiracy counts, the common law conspiracy, the RICO

18    conspiracy, and the counts that allege a RICO conspiracy in

19    which the plaintiff is an innocent -- what's it called, an

20    innocent victim?

21          So at some point, as I say, I want to look at the

22    complaint again.

23          For the time being, however, the motion to dismiss

24    is denied as to all counts.

25          I'm going to have my clerk set this case up for a

```
 1    scheduling conference so we can schedule this case through at

 2    least to any further dispositive motions and perhaps trial,

 3    because I think the best way to move this case is to get it to

 4    trial as quickly as possible.  And so I want to do that.

 5                 Are there any questions?

 6                 All right.  Do you have any question, sir?

 7                 MR. CONROY:  Just in terms of timing on filing

 8    answers and --

 9                 THE COURT:  Doesn't the rule require that the

10    answer be filed within ten days after this ruling?

11                 MR. CONROY:  If we can request 30 days.

12                 THE COURT:  All right.  Is there any problem with

13    an answer in 30 days?

14                 MR. KING:  No, your Honor.  Previously the parties

15    had submitted an agreed-upon discovery schedule with the Court,

16    I would like to resubmit that in --

17                 THE COURT:  I think we have to have a new

18    scheduling conference, because we have a new complaint, and

19    we'll just go over it again.

20                 So you have 30 days.  So the answer will be filed

21    not later than December 13th.  And then shortly after that,

22    we'll have a scheduling conference so we can schedule all the

23    events that are to take place in this case.

24                 All right.  Thank you.

25                 (Court adjourned at 5:11 p.m.)
```

PDF created with pdfFactory trial version www.pdffactory.com

1                    - - - - - - -

2                    CERTIFICATION

3            I certify that the foregoing is a correct

4     transcript of the record of proceedings in the above-entitled

5     matter to the best of my skill and ability.

6

7

8

9     /s/ Debra M. Joyce                    _____

10    Debra M. Joyce,  RMR, CRR            Date
      Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25