UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
-----------------------------------------------------------------------------x

| | |
|---|---|
| ENCOMPASS INSURANCE COMPANY OF MASSACHUSETTS, | C.A. NO 05-11693 RCL |
| Plaintiff, | |
| v. | |
| JOSEPH D. GIAMPA, FREDERICK T. GIAMPA, ADVANCED SPINE CENTERS, INC. d/b/a FIRST SPINE & REHAB, FUTURE MANAGEMENT CORPORATION, EDWARD KENNEDY, BRIAN CULLINEY and JENNIFER McCONNELL, | |
| Defendants. | |

-----------------------------------------------------------------------------x

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

Procedural Background……………………………………………………………...……..1

Standard of Review…..……………………………………………………………………3

Argument……………………………………………………………………………………7

   I.  Plaintiff's Proposed Amended Complaint is futile as the new allegations
       do not meet the requisite element of a "pattern of racketeering"…..…………….7

       1.  The alleged acts of attempted murder, murder for hire and
           obstruction of justice lack relatedness and therefore cannot be
           prosecuted in this action….…………………………………………….…….7

           a.  Distinguishing the 'Purpose' of the New Predicate Acts…………..……...8

   II. Plaintiff has no standing to bring the claim because it did not suffer injury or
       harm to its business or property as a result of the alleged acts……………….……11

   III. Defendants would be unduly prejudiced by severe delay and increased
        expense of litigating unrelated criminal issues should plaintiff's
        amended complaint be allowed…………………………………………………..14

   IV. The proposed amendment should not be allowed, in any event, against Jennifer
       McConnell because she unequivocally abandoned the alleged enterprise and
       conspiracy…………………………………………………………………..……..15

Conclusion………..……………………………………………………………………..17

## **TABLE OF AUTHORITIES**

*Cases*                                                                 *Page*

*Aldridge v. Lily-Tulip*, 953 F.2d 587 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Baldassari v. Public Finance Trust*, 369 Mass. 33 (1975) . . . . . . . . . . . . . . .12

*Boston Police Superior Officers Federation et al v. Jordan et al*,
    1984 U.S. Dist. Lexis 19036 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Callan v. State Chemical Manufacturing Co.*,
    584 F. Supp. 619 (E.D. Pa. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Campana v, Eller et al*, 1983 U.S. Dist. LEXIS 11591(1983) . . . . . . . . . . . . .15

*Capasso v. Cigna Ins. Co.*, 765 F. Supp. 839 (S.D.N.Y. 1991) . . . . . . . . . . . 13

*Castellucci v. U.S. Fidelity and Guaranty Company*, 372 Mass 288 (1977) . . .14

*Doe v. Roe*, 756 F. Supp. 353 (N.D. Ill. 1991) . . . . . . . . . . . . . . . . . . . . . . . .13

*Foman v. Davis*, 371 U.S. 178, 182 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Gamboa v. Velez*, 457 F.3d 703, 709 n.2 (7th Cir. 2006) . . . . . . . . . . . . . . . . . 9

*Grunewald v. United States, 353 U.S. 391 (1957)* . . . . . . . . . . . . . . . . . . . . .8

*H. J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239* (1989) . . . . . .6, 7, 10

*Lemelson v. Wang Laboratories, Inc.*, 874 F. Supp. 430 (Mass. D. 1994) . . . . .13

*Lerman v. Chuckleberry Publishing, Inc.*, 521 F. Supp. 228 (1981) . . . . . . . . . .6

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) . . . . . . . . . . . . .10

*Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1024 (7th Cir. 1992) . . . . . . . . . 9

*Morrison v. Syntex Laboratories, Inc.*, 101 F.R.D. 743 (D.D.C. 1984) . . . . . . . 11

*Parker v. Broadcast Music Co., 30 F.R.S 151 (D.C.N.Y. 1962)*. . . . . . . . . . . . . .15

*Perlmutter v. Shatzer*, 102 F.R.D. 245, 247 (D. Mass. 1984) . . . . . . . . .6, 11, 13, 14

*Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979) . . . . . . . . . . . . . .. . . . . . . . . . . 11

*Sedima, S.P.R.L. vs. Imrex. Co., Inc., et al.*,
    473 U.S. 479, 495 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..10,11,12

*Simon v. Eastern Kentucy Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976) . . . . . . . .10

*Soto-Negron v. Taber Partners I*, 339 F.3d 35, 38 (1st Cir. 2003). . . . . . . . . . . . . . . .8

*Steinberg vs. Hartford Variable Life Insurance Co et al*
    1986 U.S. Dist LEXIS (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Structural Systems, Inc v. Sulfaro et al,* 692 F. Supp. 34, 35 (1988) . . . . . . . . . . . . . .6, 13

*United States v. Brennan*, 832 F. Supp. 435, 444 (D. Mass. 1991) . . . . . . . . . . . . . . .8

*United States v. Gypsum*, 438 U.S. 422 (1978)……………………………………17

*United States v. Pappathanasi*, 383 F. Supp. 2d 289(D. Mass. 2005) . . . . . . . . .. . . . . 9

*United States v. Shaw*, 106 F. Supp. 2d 103, 123 (D. Mass. 2000)…………………..17

*United States v. Twitty*, 72 F.3d 228, 233 (1st Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . .8

*Van Schaick v. Church of Scientology of California, Inc.*,

535 F. Supp. 1125, 1137 (D. Mass. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

Defendants Joseph D. Giampa, Frederick T. Giampa, Future Management Corporation, Advanced Spine Centers, Inc. d/b/a First Spine & Rehab, Future Management Business Trust, Edward Kennedy, Brian Culliney, D.C. and Jennifer McConnell, D.C. (hereinafter "Defendants") submit the following Memorandum of Law in Opposition to Plaintiff's Motion for Leave to File Third Amended Complaint.

**PROCEDURAL BACKGROUND**

Plaintiff filed its original Complaint in this matter almost three (3) years ago on August 16, 2005. In essence, Plaintiff's original Complaint alleged that Defendants had, between 1998 and 2004, defrauded Plaintiff by billing it for excessive chiropractic treatment in connection with 176 separate automobile insurance claims. Among the remedies sought by Plaintiff was reimbursement of all monies it had paid Defendant First Spine in connection with the 176 automobile insurance claims, an amount that Plaintiff calculated to be $625,386.

Since that time, in response to various motions to dismiss, Plaintiff has amended its Complaint twice; once on September 30, 2005, and again on July 5, 2006. Though clearly more voluminous and arguably more detailed than the original Complaint, Plaintiff's Second Amended Complaint, which is now before the Court, alleges the same excessive treatment in connection with the same 176 automobile insurance claims that characterized the original Complaint.

Based upon Plaintiff's Second Amended Complaint and the surviving counterclaims filed by Defendants, the parties have filed and argued numerous motions before the court, conducted extensive paper and deposition discovery, and consulted with expert witnesses. Indeed, prior to the current stay of discovery, the deadline for initial

5

expert reports was June 30, 2008, the deadline for fact discovery was August 31, 2008, and the deadline for expert discovery was September 30, 2008.

On June 25, 2008, Plaintiff filed its Motion for Leave to File Third Amended Complaint by which Plaintiff seeks to add "serious and unusual" allegations of attempted murder, murder for hire, and obstruction of justice against each of the defendants based upon an alleged link between one of the individual defendants and claimed physical attacks on Plaintiff's former counsel during the fall of 2007.

## STANDARD OF REVIEW

Whether to grant a motion to supplement the pleadings pursuant to Rule 15(d), like a Rule 15(a) motion to amend, is left to the discretion of the Court, which should deny the motion where the proposed amendment would be futile or would cause undue prejudice, delay, or trial inconvenience to the nonmoving parties. *Perlmutter v. Shatzer*, 102 F.R.D. 245, 247 (D. Mass. 1984) *citing Foman v. Davis*, 371 U.S. 178, 182 (1962).

## ARGUMENT

I. **Plaintiff's proposed Amended Complaint is futile as the new allegations do not meet the requisite element of a "pattern of racketeering."**

   *1. The alleged acts of attempted murder, murder for hire, and obstruction of justice lack relatedness and therefore cannot be prosecuted in this action.*

In order to satisfy the "pattern" prong of 18 U.S.C. § 1962(c), Plaintiff must demonstrate not only the existence of two or more predicate acts, but also that they are related and pose at least a threat of continued criminal activity. *H.J., Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 237 (1989).

In order to satisfy the "relatedness" test, Plaintiff must show that the predicate acts have "the same or similar purpose, results, participants, victims, or methods of

commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." H.J., 492 U.S. at 240.

Plainly read, the Second Amended Complaint alleges insurance fraud perpetrated by the submission of chiropractic bills for medically unnecessary treatment. In fact, each and every predicate act alleged by Plaintiff in its Second Amended Complaint is mail fraud in the form of mailing invoices for, or records of, chiropractic services.

In stark contrast, the proposed amendment seeks to allege predicate acts of physical violence resulting in personal injuries to Plaintiff's former counsel, Richard King. As between the two, there are no similarities in purpose, results, participants, victims, or methods of commission.

*(a) Distinguishing the 'Purpose' of the Proposed New Predicate Acts*

Despite Plaintiff's bald assertion that the "attacks" were committed "[i]n order to protect, facilitate and maintain the fraudulent billing scheme described in the Third Amended Complaint, and in furtherance of the conspiracy among all of the defendants" (see proposed Third Amended Complaint, ¶ 425), no fair reading of the proposed Third Amended Complaint, giving Plaintiff every fair inference, leads to the conclusion that the purpose of the attacks was to "protect, facilitate and maintain the fraudulent billing scheme."

The Second Amended Complaint is several hundred paragraphs rife with exemplar claims of alleged overutilization and upcoding. Tens of thousands of pages of medical records have been exchanged in discovery to date, and are being reviewed by the parties' respective experts so that they might soon render their expert opinions on the propriety of the care rendered.

The argument that the assault on Mr. King was intended to protect or advance the alleged insurance fraud is entirely devoid of merit. Plaintiff is fully aware of the alleged fraudulent scheme, and has been since at least August of 2005[1].

With respect to the alleged attacks being in furtherance of the conspiracy, it is axiomatic that a conspiracy ends when the design to commit substantive misconduct ends; it does not continue beyond that point "merely because the conspirators take steps to bury their traces, in order to avoid detection and punishment after the central criminal purpose has been accomplished." *Grunewald v. United States*, 353 U.S. 391, 405 (1957). *See* *also* *United States v. Brennan*, 832 F. Supp. 435, 444 (D. Mass. 1991)("Acts of covering up alone may be insufficient to prove the continuation of an otherwise completed conspiracy"). This is not to say that acts of concealment are never undertaken "in furtherance" of an ongoing conspiracy. However, "a vital distinction must be made between acts of concealment done in furtherance of the *main* criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime." *Gruenwald*, 353 U.S. at 405. "Only the former constitute overt acts in furtherance of a single, continuing conspiracy." *Brennan*, 832 F. Supp. at 444.

As indicated by the First Circuit, acts of concealment extend the life of a conspiracy only "if the proof shows an express original agreement among the conspirators to continue to act in concert in order to cover up their crime." *United States v. Twitty*, 72 F.3d 228, 233 (1st Cir. 1995)(emphasis added)(internal quotations omitted). In reaching this conclusion, the First Circuit reasoned that:

---

[1] It is noteworthy that in the two prior amendments to the Plaintiff's Complaint (September 30, 3005 and July 05, 2006), no additional new predicate acts were alleged despite the passage of nearly 1 year.

8

> Grunewald [ ] laid down special requirements of proof resting upon a distinct policy concern, namely, that 'every conspiracy is by its very nature secret' that 'every conspiracy will inevitably be followed by actions taken to cover the conspirators' traces' and that if these facts were enough for a conspiracy to conceal, then the statute of limitations and other safeguards would be virtually wiped out. For this reason, it held that <u>even egregious and organized acts of concealment were not sufficient, unless agreed to as part of the original conspiratorial plan</u>.

*Twitty*, 72 F.3d at 233 quoting *Grunewald*, 353 U.S. at 402 (emphasis added). See also *United States v. Pappathanasi*, 383 F. Supp. 2d 289, 293-294 (D. Mass. 2005)("This absent allegation in the Superceding Indictment suggests that the grand jury did not intend to allege that an agreement to cover-up was part of the original conspiracy.").[2]

A separate, but similar rule applies to acts intended to conceal a substantive civil Rico violation. "Acts to conceal the underlying wrongdoing in a RICO suit do not carry with them the threat of future harm and generally do not extend the duration of the underlying scheme." *Gamboa v. Velez*, 457 F.3d 703, 709 n.2 (7th Cir. 2006). See also *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1024 (7th Cir. 1992)(alleged cover-up whereby the defendants lied under oath in depositions and in response to requests for admissions "[did] nothing to extend the duration of the underlying diversion scheme" alleged to violate RICO); *Aldridge v. Lily-Tulip*, 953 F.2d 587, 593-94 ("There are no allegations which would allow us to conclude that Lily's act of taking their employees' vacation time and subsequent acts to conceal that wrongdoing was a scheme which 'projects into the future with the threat of repetition.'")(*quoting H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 241 (1989)).

---

[2] In *Pappanathanasi*, the defendants were executives of West Lynn Creamery ("WLC") charged with conspiring with Dunkin Donuts franchisees to use a WLC rebate plan to help the franchisees evade taxes. Though the government alleged that WLC ultimately concealed certain records from the IRS, it did not allege that the original conspiratorial plan included an agreement that WLC would, if necessary, conceal records from the IRS regarding its rebate plan. Id. at 292-293

9

There is no reasonable interpretation of the proposed Third Amended Complaint that would suffice to permit plaintiff to successfully argue that the new allegations were committed in furtherance of the alleged conspiracy or enterprise in this matter.

**II. Plaintiff has no standing to bring the claims alleged in the proposed amendment because it did not suffer injury or harm to its business or property as a result of the alleged acts.**

If a defendant engages in a pattern of racketeering activity in a manner forbidden by 18 U.S.C § 1962 (a) - (c), and the racketeering activities injure the plaintiff **in his business or property**, a plaintiff has a claim under 18 U.S.C § 1964 (c). <u>Sedima, S.P.R.L. vs. Imrex. Co., Inc., et al.</u>, 473 U.S. 479, 495 (1985)(emphasis added).  In <u>Sedima</u>, the Supreme Court wrote that in order to state a claim against a defendant under 18 U.S.C. § 1961, a plaintiff must allege that a defendant or defendants engaged in: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. <u>Id</u>. at 496; *see also*, <u>Setinberg vs. Hartford Variable Life Insurance Co, Shearson/American Express Inc</u>., 1986 U.S. Dist LEXIS (1986).  Additionally, a RICO plaintiff only has standing, and can recover, to the extent that he has been injured in his business or property by the conduct constituting the violation.  <u>Sedima</u>, 473 U.S. at 496.

One of three irreducible constitutional minimums of standing provides that "the injury has to be related to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-561 (1992) *quoting* <u>Simon v. Eastern Kentucky Welfare Rights Org.</u>, 426 U.S. 26, 41-42 (1976).  Injuries to persons are generally deemed distinct from injury to property by both federal and Massachusetts law.  Absent a clear statement to the contrary by Congress, it would be inappropriate to infer either that it intended to include

personal injury as well as property injury within the ambit of the RICO statute or that it understood property injury to include injury to persons. There is no such indication in the RICO statute. *Morrison v. Syntex Laboratories, Inc.*, 101 F.R.D. 743 (D.D.C. 1984); *Van Schaick v. Church of Scientology of California, Inc.*, 535 F. Supp. 1125, 1137 (D. Mass. 1982); *Callan v. State Chemical Manufacturing Co.*, 584 F. Supp. 619, 623 (E.D. Pa. 1984).

If Congress had intended that the rights and remedies established by RICO be available in every personal injury action involving financial loss, it could easily have enacted a statute referring to "injury" generally or have referred expressly to injury to "persons" in addition to injury to "business or property." As the Supreme Court stated in interpreting the identical "business or property" language in the Clayton Act, "Congress must have intended to exclude some class of injuries by the phrase 'business or property.'" *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979). As the Supreme Court also said with regard to the Clayton Act, in language equally applicable here, "the phrase 'business or property' . . . retains restrictive significance. It would, for example, exclude personal injuries suffered. *E.g., Hamman v. United States*, 267 F. Supp. 420, 432 (Mont. 1967)." *Id*.

Contrary to Plaintiff's contention, the conclusion that injury to "business or property" does not include injury to "persons" is not qualified by the Supreme Court's decision in *Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985). *Sedima* held that no distinct "racketeering injury" is necessary to maintain a RICO action if a pattern of racketeering activity has injured a plaintiff in his business or property. *Id*. at 496. In *Sedima* the majority recognized and reiterated that a "plaintiff has standing if, and can

11

only recover to the extent that, he has been injured in his business or property. . . ." <u>Id</u>. The majority did not discuss the meaning of "business or property." The four dissenting Justices stated, however, that, "the statute permits recovery only for injury to business or property. It therefore excludes recovery for personal injuries." <u>Id</u>. at 500 (Marshall, J., dissenting). Thus, at a minimum, <u>Sedima</u> does not indicate that the statute applies in cases, such as this, involving only personal injury.

This conclusion is reinforced by the relevant decisions of the courts of the Commonwealth of Massachusetts. The Massachusetts Supreme Judicial Court, interpreting the state's consumer protection law which creates a cause of action for loss of "money or property," has found that "'property' means the kind of property that is purchased or leased . . ." <u>Baldassari v. Public Finance Trust</u>, 369 Mass. 33, 45, 337 N.E.2d 701 (1975).

Applied to the case at bar, it is patently clear that Plaintiff, Encompass Insurance Company, has no standing to raise the proposed averments in its Amended Complaint.  In the entire proposed supplement, Plaintiff does not allege, nor can it allege, any injury or harm to its own business as a result of the newly alleged predicate offenses, namely attempted murder, murder for hire, and obstruction of justice.   As the Amended Complaint reads, the only injury sustained was to that of Plaintiff's former lead counsel, Mr. King, an employee of Smith & Brink, P.C.  Should a viable civil claim exists on the basis of those allegations, it belongs to Mr. King, not to Encompass Insurance Company.

Plaintiff's proposed Third Amended Complaint alleges damages relating to the new allegations as "any and all expenses and fees incurred by Encompass due to the vicious attacks and attempted murder of its former lead counsel." (See Proposed Third

12

Amended Complaint, ¶ 452). The obvious implication is that the "expenses and fees" are the attorney's fees associated with bringing successor counsel into the case.

As a general rule, attorney's fees cannot be deemed a RICO injury. *Capasso v. Cigna Ins. Co.*, 765 F. Supp. 839 (S.D.N.Y. 1991); *Doe v. Roe*, 756 F. Supp. 353 (N.D. Ill. 1991), aff'd., 958 F.2d 763 (7th Cir. 1992).

The exception to the rule exists where litigation or the threat of litigation is an "integral component of the racketeering scheme". *Lemelson v. Wang Laboratories, Inc.*, 874 F. Supp. 430 (D. Mass. 1994).

In *Lemelson*, Judge Stearns limited the application of the proposed precedent to instances "[w]here, as here, the institution of a lawsuit is alleged to be an instrument of racketeering activity, I hold that the costs incurred in investigating and defending that litigation are a sufficient RICO injury[.]" Id. at 433.

Applying these principles to the instant action it is clear that the "damages" claimed by Plaintiff are insufficient to establish a sufficient RICO injury.

### III. **Defendants would be unduly prejudiced by severe delay and increased expense of litigating unrelated criminal issues should Plaintiff's Proposed Amended Complaint be allowed.**

The trend in the First Circuit is to preclude the supplement of pleadings if there is substantial risk of delay, prejudice or trial inconvenience to the nonmoving party. See e.g., *Structural Systems, Inc v. Sulfaro et al*, 692 F. Supp. 34, 35 (1988), *Perlmutter v. Shatzer*, 102 F.R.D. 245, 247 (D. Mass. 1984); *Boston Police Superior Officers Federation et al v. Jordan et al*, 1984 U.S. Dist. Lexis 19036 (1984). Although liberality is the rule in permitting supplemental pleadings, a liberal amendment policy does not justify overriding the rights of a party who would be prejudiced by the last minute

13

allowance of such a motion.  *Castellucci v. U.S. Fidelity and Guaranty Company*, 372 Mass 288, 292.

  In the current action, the extent to which defendants would be prejudiced if the motion were allowed far exceeds any prejudice to plaintiff if its motion were denied. First, in November 2007, after two years of actively litigating this matter, this Court yielded to Plaintiff's pleas and stayed this case for eight (8) months.  Now, in the final stage before trial, despite the fact that extensive written discovery has been served and responded to, multitudinous and lengthy depositions have been conducted, witnesses have been consulted and experts have been retained, and with fact and expert discovery scheduled to conclude on August 31, 2008, and September 30, 2008, respectively, Plaintiff now requests that this Court drastically alter the nature of this civil case to include allegations of violent criminal conduct.

  Allowing Plaintiff's motion would not only require the parties to re-convene numerous previously concluded depositions, but would also require the deposition of a laundry list of additional witnesses not previously considered, including Richard King, those hired to provide him with private security, and potentially members of law enforcement.  Additionally, the defendants' ability to investigate and defend against the new allegations would likely be limited by the law enforcement privilege (likely resulting in a series of motions to quash and protective orders) and Fifth Amendment issues.  It is therefore difficult to image the conclusion of this case, which is essentially trial-ready, occurring any time in the near future should Plaintiff's motion be allowed.  This undue delay alone, when other parties are prepared to proceed to a determination of the action in its current form, justifies denial of a leave to file a supplemental pleading.  *Campana v,*

*Eller et al*, 1983 U.S. Dist. LEXIS 11591, 10 (1983) *citing Parker v. Broadcast Music Co., 30 F.R.S 151 (D.C.N.Y. 1962).*

Moreover, it is beyond inevitable that the allegations of the proposed amendment would unfairly prejudice the defendants in the eyes any jury; a harsh consequence given the fact that Plaintiff seeks to introduce its claims of attempted murder, murder for hire and obstruction of justice against all of the defendants based upon the alleged conduct of a single, individual defendant.

Conversely, there would be absolutely no prejudice to Plaintiff if the Court were to deny its motion. While it is unclear whether Plaintiff is entitled to any recovery under the theories advanced in the proposed amendment, what Plaintiff seems to seek is the cost incurred by it in retaining successor counsel. However, should Plaintiff succeed in proving either of its already existing RICO claims, it will be entitled to recovery of its reasonable attorney's fees as a matter of statute. Thus, denying Plaintiff's motion deprives Plaintiff of nothing, while avoiding substantial prejudice to the defendants and an inestimable delay in this proceeding.

**IV. The proposed amendment should not be allowed, in any event, against Jennifer McConnell because she unequivocally abandoned the alleged enterprise and conspiracy.**

Even if Plaintiff could properly advance its proposed amendment at this time, which it cannot, the allegations of the proposed amendment could not properly be directed at Jennifer McConnell.

During May 2006, Ms. McConnell resigned from her position with the defendant, Future Management, and changed careers. See Affidavit of Jennifer L. McConnell, ¶ 2. During her employment with Future Management, Ms. McConnell was a treating

15

chiropractor practicing primarily out of the offices of the defendant, Advanced Spine Centers, Inc. d/b/a First Spine & Rehab. Id.

Immediately upon her resignation from Future Management, Ms. McConnell joined Parexel International as a Senior Drug Safety Specialist. Id. at 3. As a Senior Drug Safety Specialist, Ms. McConnell's primary job responsibilities involve monitoring and reporting the experience of significant medical events by participants in drug and medical device trials. Id. Ms. McConnell's responsibilities as a Senior Drug Safety Specialist do not include practicing chiropractic medicine of any kind, nor do they include the billing of insurance companies. Id.

Since leaving Future Management in May 2006, Ms. McConnell has not engaged in the professional practice of chiropractic medicine, nor does she have any present intention to engage in such practice in the future. Id. at 4. Indeed, Ms. McConnell has allowed her license to practice chiropractic medicine to expire. Id. at 5. Moreover, when Ms. McConnell resigned from Future Management she severed all ties with Future Management and First Spine, and since that time has had almost no contact with the other individual defendants regarding matters other than this litigation.

By resigning from Future Management, ceasing to engage in the professional practice of chiropractic medicine, and cutting off almost all contact with the remaining defendants, Ms. McConnell has clearly withdrawn from or abandoned any enterprise or conspiracy alleged by Plaintiff. As the Supreme Court stated in *United States v. Gypsum*, 438 U.S. 422, 464-65 (1978), "[a]ffirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach co-conspirators

have generally been regarded as sufficient to establish withdrawal or abandonment."

Moreover,

> courts have recognized that a defendant can withdraw from a business conspiracy (a conspiracy carried out through the regular activities of an otherwise legitimate business enterprise) by severing his ties to the business … [where] employment at the business was essential to the defendant's involvement in the alleged conspiracy and [ ] the defendant no longer maintained any ties with the business.

*United States v. Shaw*, 106 F. Supp. 2d 103, 123 (D. Mass. 2000).

Plaintiff has not, and cannot allege, that Ms. McConnell was in any way involved in, or even knew about, the claimed attacks upon Mr. King. Likewise, Plaintiff has not, and cannot allege that Ms. McConnell continued to participate in an insurance fraud scheme revolving around excessive treatment at a chiropractic clinic where Ms. McConnell has not worked in over two years, during which time Ms. McConnell has not even engaged in the professional practice of chiropractic medicine.

**CONCLUSION**

For the foregoing reasons, the Defendants respectfully pray that the Court deny Plaintiff's Motion for Leave to File a Third Amended Complaint.

| | |
|---|---|
| Respectfully Submitted, | Respectfully Submitted |
| *Joseph D. Giampa, Frederick T. Giampa, Edward Kennedy, Advanced Spine Centers, Inc. d/b/a First Spine, and Future Management Corporation* | *Brian Culliney and Jennifer McConnell* By their Attorney, |
| | /s/ Thomas M. Ciampa |
| By their Attorneys, | _____ |
| | Thomas M. Ciampa (BBO#566898) |
| /s/ Matthew J. Conroy | Ciampa & Associates |
| _____ | 20 Park Plaza, Suite 804 |
| Mathew J. Conroy (BBO# 566928) | Boston, MA 02116 |
| Erica L. Endyke (BBO# 665238) | (617) 742-5955 |
| Matthew J. Conroy and Associates, P.C. | |
| 114 Waltham Street | |
| Lexington, MA 02421 | |
| (781) 862-8060 | |